UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

———————————————————————

MESA POWER GROUP, LLC.                         )
                                       Petitioner,       )
                                                                   )
                                                                   )   Case No. 16-cv-1101
              - against -                                 )
                                                                   )
GOVERNMENT OF CANADA,                     )
                                                                   )
                                    Respondent.        )
                                                                   )
———————————————————————   )

## MESA POWER GROUP, LLC'S MOTION TO VACATE AWARD
## AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

Mesa Power Group, LLC ("Mesa Power") petitions and moves this Court for an order

vacating an Award that was issued by two members of a three-member tribunal (the "Majority" or

the "Tribunal Majority")[1] in favor of Respondent, the Government of Canada ("Canada"), in an

arbitration rendered pursuant to the North American Free Trade Agreement ("NAFTA") involving

the unfairness and abuse of the renewable energy regulatory process by the Government of

Ontario.

As set forth below in the accompanying Memorandum of Points and Authorities in Support,

the Majority's Award suffers from several fatal deficiencies under the Federal Arbitration Act

("FAA") and the court's inherent authority and thus should be vacated.

---

[1] The authentic signed original Majority Award and the Dissenting Opinion was delivered to the Petitioner on April 5, 2016 pursuant to Article 32 of the UNCITRAL Arbitration Rules. The Original Majority Award is attached as Ex. 1. The Concurring Award and Dissenting Opinion of Judge Brower delivered to the Petitioner on April 5, 2016 is attached as Ex. 2. On June 1, 2016, the arbitral tribunal issued corrections to the award to address errors in the original Award. The administering institution notified the parties on June 6, 2016, and an authentic signed copy of the rectified revised award was communicated under UNCITRAL Article 32 on June 8, 2016. The Revised Award is attached as Ex. 3. Citations herein are to the original Majority Award and not to the Revised Award.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Pursuant to Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, Petitioner Mesa Power moves this Court to vacate the Majority Award ("the Award") made in the NAFTA Chapter Eleven arbitration between the Petitioner and Respondent, the Government of Canada (Canada).  Based on well-settled principles of U.S. arbitration law and precedent, this Court should vacate the Award because the Majority of the arbitral tribunal ("the Tribunal Majority") exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was never made; engaged in misconduct; engaged in misbehavior and acted in manifest disregard of the law. In addition, the Petitioner moves this Court to remand the Award to a new arbitral tribunal.

Specifically, the Tribunal Majority rendered an Award so antithetical to basic international law principles that this Award constituted an usurpation of power and manifest disregard of the governing arbitration rules and the express terms of the Treaty.  This, in an arbitration in which the dissenting member of the Tribunal found Ontario's conduct to be "grotesque."

Petitioner Mesa Power was contending that a political subdivision of the Government of Canada, the Province of Ontario ("Ontario"),[2] had acted, *inter alia*, in violation of the fair and equitable treatment requirements of NAFTA and the requirement to provide treatment to the Petitioner as favourable as that provided by the government to local Canadian investments and to the investments and investors of other foreign states.

First, despite the fact that the governing rules required that Tribunal to treat each party to

---

[2] Under the NAFTA, the Government of Canada is responsible for the measures of the Province of Ontario pursuant to NAFTA Article 105. NAFTA Chapter One is set out as Ex. 8, NAFTA Chapter Ten is set out as Ex. 7, and NAFTA Chapter Eleven is set out as Ex. 5 herein.

the dispute equally, the Tribunal Majority, in adjudicating the fair and equitable treatment claim, applied a standard of a "great deal of deference" to the actions of one disputing party but not to the other.  This standard, akin to the deference provided to administrative factual findings, has no place in an international investor-state tribunal in which a responding government's behavior is tested against international law standards, not against domestic standards of deference.  Despite acknowledging the correct standard for examining a NAFTA Party's conduct for violations of fair and equitable treatment, the Majority nevertheless applied a deferential standard so extreme it effectively applied a near-impossible of burden of proof in violation of the governing rules of the arbitration and the terms of reference. In treating the disputing parties unequally and without due process, the Tribunal grossly overstepped its jurisdictional authority which was expressly conveyed by the NAFTA to the Tribunal.

Second, in adjudicating whether Ontario had provided treatment to Mesa Power as favorable as that provided to other local Canadian or foreign investors (or to their investments), the Tribunal Majority interpreted a limited exception that only applied to "governmental procurement" as applying to any kind of procurement in broadest form, including a situation where the government never received the energy and where the energy was not purchased by the government, but individual citizen ratepayers.  In short, the Tribunal capriciously took the phrase "procurement by a Party or a state enterprise" to mean only "procurement." Instead of actually interpreting the essential term "procurement by a Party or a state enterprise" which was before it, the Tribunal Majority intentionally disregarded express terms of the Treaty.  By so doing, the Majority failed to examine Canada's conduct against the international standards set out in the NAFTA. These failures and egregious errors do not constitute mere misinterpretations of the law. They constitute intentional acts in excess of the Tribunal's powers, arbitral misconduct and a

manifest a disregard of the law. They require vacating of the Award and remanding this claim to a new tribunal.

## II.   **BACKGROUND**

The North American Free Trade Agreement ("NAFTA") came into force on January 1, 1994 between its three members, the United States, Canada and Mexico. Through the passage of the NAFTA Implementation Act[3] on December 8, 1993, Congress approved NAFTA and provided for a series of domestic laws to effectuate and enforce NAFTA's provisions. 2 Pub. L. No. 103-182, 107 Stat. 2057 (1993), codified at 19 U.S.C. §§ 3301-3473. NAFTA is divided into chapters, with each chapter primarily discussing a different subject – for example, Chapter Two deals with General Definitions, Chapter Ten deals with Government Procurement, and Chapter Eleven covers the protection of Investment. The U.S., Canada, and Mexico enacted NAFTA, and Chapter Eleven in particular, to "ensure a predictable commercial framework for business planning and investment" and to "increase substantially investment opportunities in the territories of the Parties."[4]

In broad terms, NAFTA Chapter Eleven was meant to accomplish two goals. First, it was meant to provide foreign investors with specific, substantive legal protections, such as national treatment, most favoured nation treatment, protection against performance requirements and fair and equitable treatment. Second, it allows a foreign investor to file an arbitration claim if it believes a NAFTA signatory has breached these substantive protections.

NAFTA Article 1115 provides that Chapter Eleven "establishes a mechanism for the settlement of investment disputes that assures both equal treatment among investors of the Parties in accordance with the principle of international reciprocity and due process before an impartial

---

[3] Pub. L. No. 103-182, 107 Stat. 2057 (1993), codified at 19 U.S.C. §§ 3301-3473.

tribunal." Claims can be brought under NAFTA Article 1116 by an investor for a breach of an obligation of Section A of Chapter Eleven. A three-person Tribunal is established under Article 1120 after the submission of a claim pursuant to one of three different arbitration rules selected by the Investor. Once constituted, the NAFTA Tribunal must decide the claim pursuant to NAFTA Article 1131 in accordance with the NAFTA and the applicable rules of international law.

## A.    THE FACTS

In 2009, the Canadian province of Ontario launched a renewable power Feed-In-Tariff Program (the "FIT Program"). Investors from around the world were invited to make substantial investments in Ontario in the production of renewable energy to be directly sold to electricity ratepayers in Ontario. Ontario represented that it would award all of the available electrical transmission capacity through the FIT Program.[5]

However, there was a lack of transparency and candor on Ontario's part with respect to its administration of the renewable energy program. The Petitioner, Mesa Power, made extensive and expensive investments to secure real property and to ensure a supply of Ontario-content wind turbines to be compliant with the FIT Program rules. At the same time that it was inducing investors, such as Mesa Power under the FIT Program, Ontario had made a secret deal with two Korean companies, Samsung C & T Corporation and its joint venture partner, Korean Electric Company (collectively, the "Korean Consortium"), the Green Energy Investment Agreement ("GEIA"), granting them preferential transmission access to the very same limited Ontario electrical transmission grid necessary to obtain contracts and for special governmental access. The Korean Consortium was not required to meet any of the readiness criteria required of the FIT

_____

[4] These are included within the objectives of the NAFTA set out in Article 102(1)(c). Ex. 8.
[5] Investor (Mesa) Reply Memorial ¶ 338, available at https://pcacases.com/web/view/51.

applicants. The GEIA reduced the transmission available to investors in the FIT Program, even though both were producing the same thing, the same way, and achieving the same environmental result.  The GEIA effectively usurped the FIT Program, leaving the FIT Program and the investors that made investments subject to the whims of the Korean Consortium, which was able to obtain any transmission access it desired, which could effectively ruin any FIT applicant's ability to obtain a contract under the FIT Program.[6]

After incurring losses in excess of $156 million dollars, the Petitioner commenced an investor state arbitration under NAFTA Chapter Eleven in 2011[7] governed by the 1976 UNCITRAL Arbitration Rules.[8] These procedural rules along with the NAFTA itself governed the arbitration pursuant to NAFTA Article 1120(2).[9]

Mesa Power's claims in the arbitration arose out of what it contended was Canada's imposition of capricious, sudden, arbitrary and discriminatory changes to the FIT Program.  Mesa filed claims against Canada for violation of the fair and equitable treatment requirement in NAFTA Article 1105;[10] failure to provide the Petitioner with treatment as favourable as that provided to Canadian investors under Article 1102[11] and to investors and investments owned by non-Canadians under NAFTA Article 1103;[12] and for the prohibited imposition of local content

---

[6] Id., pgs. 1-32.
[7] NAFTA, Chapter Eleven, Ex. 5.
[8] 1976 UNCITRAL Arbitration Rules, United Nations Commission on International Trade Law (UNCITRAL), UNCITRAL Arbitration Rules, (1976) UN General Assembly Resolution 31/98. Ex. 6.
[9] NAFTA Article 1120(2) provides: "The applicable arbitration rules shall govern the arbitration except to the extent modified by this Section."
[10] NAFTA Article 1105(1) provides: "Each Party shall accord to investments of investors of another Party treatment in accordance with international law, including fair and equitable treatment and full protection and security."
[11] NAFTA Article 1102 provides: "1. Each Party shall accord to investors of another Party treatment no less favorable than that it accords, in like circumstances, to its own investors with respect to the establishment, acquisition, expansion, management, conduct, operation, and sale or other disposition of investments."
[12] NAFTA Article 1103 provides: "1. Each Party shall accord to investors of another Party treatment no less favorable than that it accords, in like circumstances, to investors of any other Party or of a non-Party with respect to the establishment, acquisition, expansion, management, conduct, operation and sale or other disposition of investments."

requirements under Article 1106 .[13]

Article 1108 of the NAFTA provides an exception to claims for violations of NAFTA Articles 1102 and 1103. Specifically, Article 1108(7) provides: "Articles 1102 [National Treatment], 1103 [Most Favored Nation Treatment], and 1107 do not apply to: (a) procurement by a Party or a state enterprise." Article 1108(8) provides a similar exclusion from the local content prohibition in Article 1106. Accordingly, if the Tribunal determined that the FIT Program constituted "procurement by a Party or a State enterprise", then three of four NAFTA obligations invoked by Mesa Power would not apply; specifically Articles 1102 (national treatment), 1103 (most favored nation treatment), and by extension, 1106 (minimum local content).

As part of its brief to the Tribunal, Mesa explained that the FIT Program did not involve "procurement by a Party or a state enterprise" because the FIT Program did not fall within the definition of "procurement" found in NAFTA Chapter Ten.[14] Neither the Government of Ontario nor the Ontario Power Authority ever received possession of the electricity generated under the FIT Program. All of the power supplied under the FIT Program was instantly sold to private individual ratepayers in Ontario through the Ontario transmission grid.[15] Specifically, the definition of "procurement" in NAFTA Article 1001(5) provides that "Procurement does **not** include:…(e) ….government provision of goods and services to persons or state, provincial and regional governments." In sum, Mesa explained, "what defines a procurement is the government

---

[13] NAFTA Article 1106 provides: "1. No Party may impose or enforce any of the following requirements, or enforce any commitment or undertaking, in connection with the establishment, acquisition, expansion, management, conduct or operation of an investment of an investor of a Party or of a non-Party in its territory: ….(c) To purchase, use or accord a preference to goods produced or services provided in its territory, or to purchase goods or services from persons in its territory . . . ."

[14] Investor (Mesa) Memorial, pgs. 120-21, available at https://pcacases.com/web/view/51.

[15] Investor (Mesa) Reply Memorial pgs. 9-10, 13-14, 19, 52, 56-57, 63-64, 69, available at https://pcacases.com/web/view/51. See also Investor's Post Hearing Brief, pgs. 5-6, 79, Ex. 4.

obtaining goods and services for its **own** use, not for provision to others."[16]

Mesa further explained that the generation and supply of electricity through the FIT Program did not constitute "procurement by a Party or a state enterprise" because "[n]one of the energy that would have been produced by Mesa under the FIT Program would have been available for a purpose other than commercial resale."[17]

Canada countered by arguing that the FIT Program and GEIA constituted procurement under the NAFTA and thus Canada was exempt under the NAFTA from Articles 1102, 1103 and 1106 obligations.[18]  Canada argued that in "NAFTA Chapter 11, the NAFTA Parties carved out for themselves significant policy space with respect to the use of their procurement powers. In particular, they decided to exclude procurement from the coverage of certain of the significant obligations contained in Chapter 11."[19]  Further, Canada argued that the term "procurement" covers "all measures constituting or involving the lease or purchase of goods or services for any purpose, regardless of whether the government ultimately paid the cost, and regardless of whether the government retained possession of the end product."[20]  Canada also contended that the FIT Program constitutes procurement because it involved the purchase of electricity for Canadian residents.[21]

### B.    THE AWARD

With respect to Mesa Power's claim for a violation of Article 1105, the Majority recognized that the standard that must be applied by a tribunal to determine whether there has been a violation the fair and equitable treatment obligation under NAFTA Article 1105  is one of

---

[16] Id. ¶ 449 (emphasis added).
[17] Id. ¶ 456.
[18] Canada Counter Memorial, pg. 119, available at https://pcacases.com/web/view/51.
[19] Id. ¶ 309.
[20] Id. ¶ 314.

"arbitrariness; 'gross' unfairness; discrimination; 'complete' lack of transparency and candor in an administrative process; lack of due process 'leading to an outcome which offends judicial propriety'; and 'manifest failure' of natural justice in judicial proceedings."[22]

Notwithstanding, the Majority found that Canada had not acted in breach of Article 1105 because its behavior was entitled to review pursuant to a lesser standard of a "good level of deference to the manner in which a state regulates its internal affairs."[23]

According to the Majority, this supposed deference obligation required it to "determine whether Canada's conclusion of the GEIA lacked a justification, and whether there was a reasonable relationship between the justification supplied and the terms of the GEIA."[24]  Applying that standard, the Majority concluded that Canada's actions did not violate Article 1105 because Canada's preferential treatment to the Korean Consortium had a justification and the justification was reasonable in light of the terms of the GEIA.[25]  In doing so, the Majority failed to analyze the arbitrariness, fairness, discrimination, transparency, candor, or due process of Canada's entering into and implementation of the GEIA, which the Majority earlier had recognized were the touchstones of analyzing an Article 1105 violation.

With respect to Mesa Power's claims for a violation of Articles 1102, 1103 and 1106, the Majority determined that the FIT Program constituted "procurement by a Party or a state enterprise" and thus the Article 1108 exception barred Mesa Power's claims for violations of Articles 1102, 1103 and 1106.  The Majority held that "it makes no difference . . .whether one

_____

[21] Id., pgs. 122-24.
[22] Award ¶¶ 501, 502, Ex. 1.
[23] Id. ¶ 505; see also id. ¶ 553 ("In reviewing this alleged breach, the Tribunal must bear in mind **the deference** which NAFTA Chapter 11 tribunals owe a state when it comes to assessing how to regulate and manage its affairs. **This deference** notably applies to the decision to enter into investment agreements…") (emphasis added).
[24] Id. ¶ 579.
[25] Id.

focuses upon the single word '*procurement*' or the phrase '*procurement by a Party or a state enterprise.*'[26]   Accordingly, the Majority dismissed Mesa Power's claims under Articles 1102, 1103 and 1106 of the NAFTA.[27]   In addition, the Award required that Mesa Power: pay 100% of the arbitration costs of CAD $1,116,000 and pay 30% of Canada's representation costs for an additional CAD $1,832,701.[28]

### C.   JUDGE BROWER'S DISSENTING OPINION

Judge Charles Brower rendered a concurring opinion and dissent in this arbitration (the "Dissenting Opinion").  Judge Brower is a highly distinguished international lawyer, who was a former longtime American judge on the US-Iran Claims Settlement Tribunal. He is widely considered to be one of the preeminent authorities on international arbitration,[29] He is the former President of the American Society of International Law.

With respect to Mesa Power's Article 1105 claim, Judge Brower found that the Majority applied the incorrect standard of review of a State's behavior in a NAFTA arbitration.[30]   Judge Brower opposed the idea that a Tribunal should give deference to a government measure simply because the measure was taken by a government:

> 17. **This misconduct cannot be excused, as the Award does, by noting that a sovereign is to be given a certain degree of deference** and, in particular, that "Article 1105 does not provide a guarantee against regulatory change." Of course "[a] State may amend its laws and regulations as it deems appropriate in light of changing circumstances . . . [and] the FIT Program had undergone several amendments."  Of course "the FIT Rules expressly stipulate that they may be reviewed and amended." There is an acceptable range of potential change that the Province could lawfully effect, particularly to the extent that that right was expressly reserved within the confines of the FIT Program. That is far different,

---

[26] Id.  ¶ 421.
[27] The Majority also dismissed Mesa Power's 1106 claim, finding that it lacked jurisdiction over the claim.  Award ¶ 335, Ex. 1.
[28] Award ¶ 706, Ex. 1.
[29] Biography available at http://www.20essexst.com/member/charles-brower (last visited May 24, 2016).
[30] See id. ¶ 17.

however, from contracting outside the FIT Program with a third party, in this case the Korean Consortium, to withdraw 500 MW from the MW target at which the other FIT applicants were aiming. It is not permissible under Article 1105 that the FIT Rules be "reviewed and amended" to accommodate what essentially was a Province-authorized intruder into the FIT Program. A jockey must ride one horse at a time.[31]

In that regard, Judge Brower found that there was a NAFTA Article 1105 violation because Ontario "torpedoed" the FIT Program through its preferential secret deal with the Korean Consortium.[32] Judge Brower explained that this misconduct could not be "excused, as the Award does, by noting that a sovereign is to be given a certain degree of deference."[33] Judge Brower noted that the Majority itself recognized that criticism of the FIT Program:

> It is ironic that the Award, in the end states that, "While reaching [its] conclusion, the Tribunal nevertheless notes that at least some criticism may be levelled at Ontario's decision to run two renewable energy programs in parallel without clearly articulating the relationship of the two and without spelling out their interaction in the event of shifts in demand and supply and other changes in the energy market. In the event, this choice and the manner in which it was implemented created certain problems, and might well have been handled differently. But judged in all the circumstances, this is not criticism that reaches the threshold of a violation of Canada's international obligations." I say it did breach Article 1105.[34]

As a result of these failures, Judge Brower found that the Majority allowed Canada to escape liability for behavior the he believed clearly failed to meet the fair and equitable treatment standard under international law and that were "grotesque."[35]

In relation to the procurement exception, Judge Brower found that the FIT Program did not constitute "procurement by a Party or a state enterprise." Indeed, he found that the Majority deleted key words from the NAFTA treaty in its analysis regarding whether the FIT Program

---

[31] Dissenting Opinion ¶17, Ex. 2 (footnotes removed, emphasis added).
[32] Id. ¶ 4.
[33] Id. ¶ 17.
[34] Id. ¶ 23 (footnotes removed).
[35] Id. ¶ 4.

constituted a government procurement program.[36]   Specifically, Judge Brower found that Articles

1108(7)(a) and (8)(b) of the NAFTA together immunize "'procurement by a Party or a state

enterprise' – not just 'procurement' alone."[37]   As a result, he concluded: "I disagree with the

Award's view that "it makes no difference . . whether one focuses upon the single word

'*procurement*' or the phrase '*procurement by a Party or a state enterprise.*'"[38] He also concluded

that the Majority failed to take into account the definition of "procurement" found in Chapter Ten

of the Treaty. [39]   As noted, NAFTA Chapter Ten provides that "Procurement does <u>not</u>

include:….government provision of goods and services <u>to persons</u> or state, provincial and regional

governments."[40]   In this regard, Judge Brower noted:

> Of course it is true that the various Chapters of NAFTA are somewhat like separate
> treaties on discrete subjects. Nevertheless, the Parties have placed them in a single
> treaty with a comprehensive title, and one cannot correctly "focus on" one Article
> of one Chapter alone. In that respect I recall that the "context" of a treaty as defined
> in Article 31 of the VCLT includes "the text," meaning the entire text of the treaty,
> "including its preamble and annexes." Given that wider approach dictated by the
> VCLT, it is indeed relevant that other Articles of NAFTA define "procurement by a
> Party or a state enterprise" (or equivalent phrases) compatibly with what I have
> indicated is the "ordinary meaning" of the phrase.[41]

## III.   <u>ARGUMENT</u>

Chapter 1 of Title 9 of the U.S. Code provides the statutory grounds for vacatur of an

arbitral award.  Specifically, pursuant to Section 10 of the FAA, an award may be vacated for, *inter*

*alia*, arbitrator misbehavior that prejudiced a party's rights or excess of authority.  9 U.S.C. §10.

The Majority's Award here should be vacated pursuant to subsections (3) and (4) of 9 U.S.C. §10:

-   Misbehavior -- "the arbitrators were guilty of misconduct in refusing to postpone the

---

[36] Dissenting Opinion ¶ 28, Ex. 2.
[37] <u>Id.</u> ¶ 27.
[38] <u>Id.</u> ¶ 32.
[39] <u>Id.</u> ¶ 32.
[40] NAFTA Art. 1001(5), Ex. 7 (emphasis added).
[41] <u>Id.</u> ¶ 32 (The term VCLT refers to the Vienna Convention on the Law of Treaties which codifies the international law rules of Treaty interpretation.).

hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced" (9 U.S.C. §10(3)); and

- Excess of Powers -- "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made" (9 U.S.C. §10(4)).

In addition, the Award should be vacated because it was rendered in manifest disregard of the law.

**A.   The Majority's Award Should be Vacated Because it Did Not Treat the Parties with Equality as Required by the Tribunal's Terms of Reference**

1.   **The Majority Exceeded its Authority Meriting Vacatur of the Award Pursuant to 9 U.S.C. §10(a)(4) by Giving "A Good Deal of Deference" to Canada's Actions, Rendering the Arbitral Proceedings Fundamentally Unfair in Violation of the NAFTA Treaty and UNCITRAL Rules Requiring Equal Treatment of the Parties**

9 U.S.C. §10(a)(4) authorizes a U.S. court to vacate an award "[w]here the *arbitrators exceeded their powers, or so imperfectly executed them* that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4) (emphasis added).

A paramount question for reviewing courts pursuant to Section 10(a)(4) is whether the arbitral panel has acted within the bounds of its authority.  Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC, 2007 WL 2241592, *5 (2d Cir. 2007).  In Porzig, the Second Circuit overturned a district court decision that had affirmed an award where the award resolved issues that neither party had agreed to arbitrate, noting that the "Panel [] was plainly without jurisdiction to order" the relief granted in such a situation.  Id.

Other courts have vacated awards under similar circumstances.  See, e.g., PMA Capital Ins. Co. v. Platinum Underwriters Bermuda, Ltd., 659 F. Supp. 2d 631, 638-39 (E.D. Pa. 2009), aff'd, 400 Fed. Appx. 654 (3d Cir. 2010) (arbitrators exceeded authority by, in essence, eliminating contractual provision in order to award damages that the counter party would otherwise not be

entitled to); Raymond James Fin. Servs., Inc. v. Bishop, 596 F.3d 183, 189-90 (4th Cir. 2010) (arbitrators' damages award vacated when the award compensated the employee for his termination, which was inconsistent with the essence of a terminable at will contract); Long Island R. Co. v. Long Island R.R. Police Benevolent Ass'n, 131 Lab. Cas. P 11449 (S.D.N.Y. 1995) (arbitrator exceeded authority by fashioning a remedy that was inconsistent with the issues submitted to him).[42]

Courts also have held that an arbitral panel has exceeded its powers when it violated required arbitral procedures. See In re A.H. Robins Co., Inc., 221 B.R. 169, 174 (E.D. Va. 1998) (arbitrator exceeded authority by ignoring the burden of proof of a claimant); Chem-Met Co. v. Metaland Int'l, Inc., CIV.A. 96-02548(TAF), 1998 WL 35272368, at *4 (D.D.C. 1998) (arbitrator exceeded authority by failing to hold an evidentiary hearing when requested by one of the parties).[43]

A tribunal's award also is subject to be being vacated when the award "exceed[s] the terms of [their] reference." DDI Seamless Cylinder Int'l, Inc. v. Gen. Fire Extinguisher Corp., 14 F.3d 1163, 1166 (7th Cir. 1994).

---

[42] See also Antietam Indus., Inc. v. Morgan Keegan & Co., Inc., 6:12-CV-1250-ORL-36, 2013 WL 1213059, at *9 (M.D. Fla. 2013) (arbitrator exceeded authority in awarding fees when that issue was not submitted to the arbitrator); InterChem Asia 2000 Pte. Ltd. v. Oceana Petrochemicals AG, 373 F. Supp. 2d 340, 355-56 (S.D.N.Y. 2005) (arbitrator exceeded authority by imposing fees against an attorney); Davey v. First Command Fin. Servs., Inc., 3:11-CV-1510-G, 2012 WL 277968, at *4 (N.D. Tex. 2012) (award vacated when arbitrator granted punitive damages in violation of contractual clause which prohibited them); NCR Corp. v. Sac-Co., Inc., 43 F.3d 1076, 1080 (6th Cir.1995) (vacating award that awarded punitive damages to non-parties); Barbier v. Shearson Lehman Hutton Inc., 948 F.2d 117, 122 (2d Cir. 1991) (vacating award of punitive damages where not recognized under applicable state law where arbitration agreement had choice-of-law provision); Klay v. United Healthgroup, Inc. 376 F.3d 1092, 1112, fn 20 (11th Cir. 2004) ("If a dispute is nonarbitrable, then an arbitrator necessarily exceeds his powers in adjudicating it"); Davis v. Prudential Securities, Inc., 59 F.3d 1186, 1195 (11th Cir. 1995) (vacating award of attorneys' fees, when that issue was not submitted to the arbitrators for determination).

[43] See also Houston Lighting & Power Co. v. Int'l Broth. of Elec. Workers, Local Union No. 66, 71 F.3d 179, 184 (5th Cir. 1995) (vacating award because arbitrator exceeded authority by evaluating employee qualifications when the parties' agreement granted that authority to the company); Home Indem. Co. v. Affiliated Food Distribs., Inc., 96 CIV. 9707 (RO), 1997 WL 773712, at *6 (S.D.N.Y. 1997) (arbitrator exceeded authority by issuing an award that addresses obligation of a non-party to the arbitration); N.J. Bldg. Const. Laborers Dist. Council v. Brencorp, Inc., 196 L.R.R.M.

The Majority exceeded its powers by (1) failing to act within its proper jurisdiction by acting outside of the limitations imposed on its jurisdiction under the Treaty; and by failing to recognize the standard that must be applied by a Tribunal to determine a violation of Article 1105.

### a.   Failing To Act Within Its Proper Jurisdiction

While the Tribunal has a broad authority, the Tribunal's authority and powers are circumscribed by the terms of the NAFTA.  NAFTA Article 1115 provides that Chapter Eleven "establishes a mechanism for the settlement of investment disputes that assures both **equal treatment** among investors of the Parties in accordance with the principle of international reciprocity and due process before an impartial tribunal."  (emphasis added).  Providing "equal treatment" to the parties could never mean giving a "good deal of deference" to one party's action or giving its actions a presumption of correctness.

Moreover, the 1976 UNCITRAL Rules, which were selected by the Petitioner to govern this arbitration pursuant to NAFTA Article 1120, explicitly provide in Article 15 that "[s]ubject to these Rules, the arbitral tribunal may conduct the arbitration in such manner as it considers appropriate, provided **that the parties are treated with equality** and that at any stage of the proceedings each party is given a full opportunity of presenting his case." (Emphasis added).[44] While the Tribunal had a wide conveyance of authority, this authority was always limited in that the Tribunal never had authority to treat the disputing parties in an unequal manner. Giving deference to one party over another party (procedurally or substantively) could never be consistent with Article 15 of the UNCITRAL Arbitration Rules that both parties be treated with equality.

Pursuant to Article 1121(1)(a) of the NAFTA, Mesa Power gave its consent to the

_____

(BNA) 2085 (D.N.J. 2013) (vacating award when petitioner objected to the arbitrator's jurisdiction, but the arbitrator decided on its own jurisdiction rather than submitting the issue to the courts).

arbitration "in accordance with the procedures set out in this [NAFTA] Agreement."  Thus to the extent that the Tribunal failed to comply with the procedures set out in the NAFTA, the Tribunal was acting outside of the consent establishing the jurisdiction for the arbitration and thus exceeded its powers.

### b.      Failing To Recognize The Standard Under Article 1105

In its Award, the Majority recognized that the standard that must be applied by a Tribunal to determine whether there has been a violation of the Article 1105 minimum standard of treatment of fair and equitable treatment is one of "arbitrariness; 'gross' unfairness; discrimination; 'complete' lack of transparency and candor in an administrative process; lack of due process 'leading to an outcome which offends judicial propriety'; and 'manifest failure' of natural justice in judicial proceedings."[45]  Notwithstanding, the Majority did not apply this standard of proof when analyzing Canada's acts in relation to the Korean Consortium.  Instead, it used a different, lesser standard, relying on the principle that "international law requires tribunals to give a **good level of deference** to the manner in which a state regulates its internal affairs."[46]

The standard erroneously applied by the Majority is akin to the rational basis review applied to government acts when determining whether acts are constitutional in the United States.  Heller v. Doe by Doe, 509 U.S. 312, 319-20 (1993) (rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices… [A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run afoul of the Equal Protection Clause if there is a

_____

[44] UNCITRAL Arbitration Rules, Ex. 6.
[45] Award ¶¶ 501, 502, Ex. 1.

rational relationship between the disparity of treatment and some legitimate governmental purpose."). Few, if any, government acts fail rational basis review.

It is also akin to the presumption of correctness given to a U.S. agency's actions, <u>Standard Mfg. Co. Inc. v. U.S.</u>, 25 Cl. Ct. 1, 48-49 (1991) (a presumption of administrative correctness attaches to an agency's decision, disputing "party bears the burden of **overcoming the deference due a qualified government agency official presumed to have performed his or her job**") (emphasis added), or factual findings on appeal. <u>Bell v. Lynbaugh</u>, 663 F. Supp, 405 (E.D. Tex. 1987) (factual findings of a state trial and appellate court are "presumed to be correct" if fairly supported by the record and this "presumption of correctness requires that federal courts accord a '**high measure of deference**' to the state court's factual findings"). Providing a "high measure" or a "good deal" of deference, which equates with a presumption of correctness, is far from "require[d]" by "international law" but is completely alien to, and in violation of, the NAFTA.

The Tribunal here was <u>not</u> tasked with examining the constitutionality or validity of Canada's governmental actions within the framework of its national legislation under a rational basis review. Mesa Power tasked the Tribunal with determining whether Canada violated *international law* in the exercise of its governmental functions before an *international tribunal*. In such standards, by their very nature, the government should not receive any deference at all.

By concluding that Canada's actions were entitled to a presumption of validity and correctness, the Majority also effectively increased Mesa Power's burden of proof, placing on Mesa Power the burden of overcoming the initial high deference given to Canada's actions. By giving a "good deal of deference" to Canada's actions, the Majority concluded that there was a

———————————————

[46] <u>Id.</u> ¶ 505 (emphasis added); <u>see also id.</u> ¶ 553 ("In reviewing this alleged breach, the Tribunal must bear in mind **the deference** which NAFTA Chapter 11 tribunals owe a state when it comes to assessing how to regulate and manage its

presumption of correctness given to the sovereign's action – something that is not found in international law and runs counter to the UNCITRAL Rules' requirement that the parties be treated with equality. There can be no equality when one party is treated better than the other or given deference. Such a standard is not derived from the content of the NAFTA, nor could such an approach arise from an understanding of its language, object, and purpose of the Treaty (set out in Article 102 and its Preamble), nor from the purpose of the dispute resolution process underway which is set out in NAFTA Article 1115.

Furthermore, at no point prior to the issuance of the Tribunal's award was Mesa Power aware from the Tribunal that Mesa had to meet any burden different from Canada in this arbitration. A non-disclosed differential burden of proof imposed upon one of the disputing parties to the dispute is fundamentally inconsistent with the Tribunal's requirement to treat the parties with *equality* under Article 15 of the UNCITRAL Arbitration Rules. It is also incompatible *ab initio* with NAFTA Article 1115's requirement that a Tribunal provide due process to the parties in a Chapter Eleven arbitration. The Tribunal was required by the terms of the NAFTA and the UNCITRAL Arbitration Rules, which form the basis for the Tribunal's authority, to treat the parties with equality and due process at all times. When the Tribunal failed to provide due process and equality to the two disputing parties by imposing a differential burden of proof, the Tribunal exceeded the jurisdiction conferred upon it by the NAFTA Treaty.

The equality of treatment of the parties is a fundamental component of any arbitration, and, moreover, is required by the governing UNCITRAL Rules. Indeed, Article 15 of the UNCITRAL Arbitration Rules has been referred to as the 'heart' of the UNCITRAL Rules. David D. Caron et al, The UNCITRAL Arbitration Rules: A Commentary 26-28 (2006) (violation of the principle of

_____

affairs. **This deference** notably applies to the decision to enter into investment agreements…") (emphasis added).

equality established by this rule "may lead to the non-enforcement of the award.").[47]

In the NAFTA arbitration of <u>Pope and Talbot</u>, Canada argued that it was permitted to withhold documents without any justification beyond a simple certification that they were a state secret.  In holding that Canada was not allowed to withhold the documents, as that would constitute an "unfairly advantaged position," the tribunal concluded:  "In the specific context of a NAFTA arbitration where the parties have agreed to operate by UNCITRAL Rules, **it is an overriding principle (Article 15) that the parties be treated with equality**."[48]  <u>See also</u> <u>Foremost Tehran Inc. and the Islamic Republic of Iran</u>, Case Nos. 37 and 231, Order of Sept. 15 1983, quoted in The UNCITRAL Arbitration Rules: A Commentary, 70 (2d Ed. 2013) ("Article 15 of the [1983] Tribunal Rules requires that the Tribunal treat the parties **equally**.  **This is a fundamental principle of justice**.  In the circumstances of these cases, the delicate balance of equality would be tipped if one party were permitted to present an extensive Memorial and additional exhibits, without providing an opportunity for the other party to file a memorial in response").  Commentators have likewise found.[49]

Similar to having only one party being allowed to do an extensive memorial, here, Canada was given a procedural advantage by having its behavior given a presumption of correctness due to

---

[47] The authors continue that "the principle of equality has been closely tied with the requirement 'that at any stage of the proceedings each party is given a full opportunity of presenting his cases.' Denial of such an opportunity may lead to the non-enforcement of the award."  Canada likely will argue that Mesa was given an opportunity to present its case as, for example, no evidence was excluded.  However, by providing Canada a presumption of correctness, Mesa was not given a fair opportunity to present its case because the burden placed upon Mesa was impossibly high to meet.

[48] <u>Pope & Talbot Inc. v. Government of Canada</u>, Decision by Tribunal ¶ 1.5 (September 6, 2000) (emphasis added).

[49] <u>See</u> David D. Caron & Lee M. Caplan, The UNCITRAL Arbitration Rules:  A Commentary, 69 (2d Ed. 2013) ("The requirement of equality and the parties' right to present their case do limit the power of the Tribunal to conduct the arbitration in such manner as it considers appropriate.  The power is to be used not only to **protect those rights of the parties**, but also to investigate and determine the matter subject to arbitration in a just, efficient, and expeditious manner") (emphasis added); Nigel Blackaby and Constantine Partasides with Alan Redfern and Martin Hunter, Redfern and Hunter on International Arbitration, Fifth Edition (OUP, 2009) at 6.10-6.13 ("The concept of treating the parties with equality is fundamental in all civilized systems of civil justice. The provision in the UNCITRAL Rules to the effect that the arbitral tribunal may conduct the arbitration in such manner as it considers appropriate is qualified by the proviso that it must treat the parties equally").

the great deal of deference given it. Indeed, the Majority's conclusion that Canada's actions were entitled to a high level of deference runs counter to the holding of other international tribunals, including tribunals on which the Chair of the Tribunal here has served. As demonstrated by those decisions, deference or a "margin of appreciation" is a concept foreign to international investment law. See, e.g., Glamis Gold v. United States, (UNCITRAL) Award, June 8, 2009, ¶ 617 ("**The Tribunal disagrees that domestic deference in national court systems is necessarily applicable to international tribunals**") (emphasis added); Chemtura v. Canada, (UNCITRAL) Award, August 2, 2010, ¶ 123 (the Chemtura tribunal, which included both Judge Brower and the Chair Prof. Kaufmann-Kohler, concluded that the determination of whether fair and equitable treatment had been violated must be assessed *on the facts* without deference to the specialized knowledge of the local government; "This is not an abstract assessment circumscribed by a legal doctrine about the margin of appreciation of specialized regulatory agencies. It is an assessment that must be conducted in concreto"); The Loewen Group, Inc and Raymond L. Loewen v United States of America, ICSID Case No. ARB(AF)/98/3 (ICSID Additional Facility /NAFTA), 5 January 2001, ¶ 51 ("we do not accept the Respondent's submission that NAFTA is to be understood in accordance with the principle that treaties are to be interpreted in deference to the sovereignty of states"); Ethyl Corp. v Canada, UNCITRAL/NAFTA, 24 June 1998, ¶ 55 ("The erstwhile notion that 'in case of doubt a limitation of sovereignty must be construed restrictively' has long since been displaced by Articles 31 and 32 of the Vienna Convention."); Eureko B.V. v Republic of Poland, Partial Award ¶ 258 (19 August 2005) ("to presume that sovereign rights override the rights of a foreign investor could be seen as a reversion to a doctrine that has been displaced by contemporary customary international law").

By failing to afford the parties equal treatment, disregarding its own governing procedural

rules and the express terms of the NAFTA Treaty which provide the Tribunal with the powers to act, thus rendering the arbitration proceedings fundamentally unfair, the Majority violated 9 U.S.C. § 10(a)(4) because it so imperfectly executed its powers that a mutual, final, and definite award upon the subject matter submitted was not made.  This warrants vacatur of the Award.  Robins, 221 B.R. 169 at 174 (arbitrator exceeded authority by ignoring the burden of proof of a claimant).

2. **The Majority Engaged in Misconduct so Severe it Merits Vacatur Pursuant to 9 U.S.C. §10(a)(3) Because it Denied Mesa a Fundamentally Fair Hearing by Treating the Parties so Unequally that Mesa's Rights Have Been Prejudiced**

9 U.S.C. §10(a)(3) provides that an award can be vacated when "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of **any other misbehavior by which the rights of any party have been prejudiced**." (Emphasis added).

As explained above, the Majority ignored UNCITRAL Article 15 which required it to treat the parties equally but gave a high level of deference to Canada's decision-making.  It thus incorrectly increased Mesa's burden of proof with respect to the NAFTA Article 1105 claim.  In doing so, the Majority, in turn, engaged in "misbehavior by which the rights of any party have been prejudiced."

Courts have vacated arbitral awards pursuant to section 10(a)(3) under similar circumstances.  See, e.g., Gulf Coast Indus. Workers Union v. Exxon Co., USA, 70 F.3d 847, 850 (5th Cir. 1995) (vacating award under 10(a)(3) when award was premised on failure to present evidence which the arbitrator excluded); Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union No. 506 v. E.D. Clapp Corp., 551 F. Supp. 570, 578 (N.D.N.Y. 1982), aff'd sub nom. Teamsters, Chauffers v. Ed Clapp Corp., 742 F.2d 1441 (2d Cir. 1983) (vacating award under 10(a)(3) when arbitrator closed hearings and did not give party the opportunity to complete its

21

presentation of proof); Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc., 607 F.2d 649, 653 (5th Cir. 1979) (award vacated under 10(a)(3) when arbitrators had ex-parte communications with one of the parties which was used as basis for award); Home Indem. Co. v. Affiliated Food Distributors, Inc., 96 CIV. 9707 (RO), 1997 WL 773712, at *4 (S.D.N.Y. 1997) (vacating award under §10(a)(3) where arbitrator ordered the posting of security and deprived party of discovery if security was not posted).

Accordingly, the Award should be vacated on this additional ground.

**B.** **The Majority's Award Should be Vacated Because it Failed to Take Into Account the Plain Language of the NAFTA Treaty Regarding Government Procurement**

**1.** **The Majority Exceeded its Authority Meriting Vacatur Pursuant to 9 U.S.C. §10(a)(4) Because it Failed to Take Into Account the Plain Language of the Treaty Regarding Procurement "by a Party or a State Enterprise"**

The Majority disregarded NAFTA terms found in NAFTA Article 1108 and in fact disregarded the plain language of the Treaty.

NAFTA Article 1108 provides that "Articles 1102, 1103 and 1107 do not apply to: (a) Procurement by a Party or a State enterprise" and that "Article 1106(1)(b) … do not apply to procurement by a party or a State Enterprise."  Art. 1108(7)-(8).  The Majority disregarded the phrase "by a Party or a State enterprise" to decide on the applicability of this clause, deciding that the term was superfluous as it simply identified who was doing the procuring.[50]

Under the terms of the NAFTA, the Tribunal was required to apply the "applicable rules of international law."  NAFTA, Art. 1131 ("A Tribunal established under this Section shall decide the

---

[50] Award ¶ 421 ("The Tribunal notes that, in its view, it makes no difference to the analysis above whether one focuses upon the single word '*procurement*' or the phrase '*procurement by a Party or a state enterprise.*' The words '… *by a Party or a state enterprise*' identify the entities involved, but do not change the nature of the activity itself – which in this context assumes a State Party or state enterprise in any event.").

issues in dispute in accordance with this Agreement and applicable rules of international law").

That includes Article 31 of the Vienna Convention on the Law of Treaties ("VCLT"), which

provides that "[a] treaty shall be interpreted in good faith in accordance with the ordinary meaning

to be given to the terms of the treaty in their context and in the light of its object and purpose."

   In concluding that it did not need to analyze the treaty's complete term of "procurement by

a Party or a State enterprise," the Majority ignored a term of art, given that "government

procurement" is generally recognized as the "act of obtaining goods or services *for* a public

agency."[51]   Indeed, the Majority also ignored the definition of procurement found in NAFTA

Chapter Ten, which provides that "Procurement does <u>not</u> include: . . . government provision of

goods and services <u>to persons</u> or state, provincial and regional governments."[52]In reaching its

conclusion that the FIT Program constituted government procurement, the Majority ignored the

very cases it relied upon for the definition of "procurement."   For example, in <u>ADF v. United</u>

<u>States</u>, Case No. ARB(AF)/00/1, the tribunal specifically found that "'[p]rocurement' is not

defined in NAFTA Chapter Eleven; but it is defined in NAFTA Chapter 10."   In <u>ADF</u>, the tribunal

explained that "[p]rocurement includes procurement by such methods as purchase, lease or rental,

with or without an option to buy.   Procurement does *not* include: (a) non-contractual agreements or

any form of government assistance, including cooperative agreements, grants, loans, equity

infusions, fiscal incentives, **and government provision of goods and services to persons or**

---

[51] Procurement Definition, available at: http://www.businessdictionary.com/definition/government-procurement.html (emphasis added; last visited May 24, 2016); see also http://www.sice.oas.org/dictionary/GP_e.asp ("The formal process through which official government agencies obtain goods and services, including construction services or public works….In GATT language, government procurement means the process by which a government obtains the use of or acquires goods or services, or any combination thereof, for governmental purposes and not with a view to commercial sale or resale, or use in the production or supply of goods or services for commercial sale or resale");
http://www.definitions.net/definition/government%20procurement ("Government procurement, also called public tendering or public procurement, is the procurement of goods and services on behalf of a public authority, such as a government agency").
[52] NAFTA Art. 1001(5) (emphasis added).  Ex.7.

**state, provincial and regional governments**." *ADF* ¶ 161 (emphasis added).  Thus in *ADF* the tribunal interpreted "procurement by a Party or a State enterprise" synonymously with the definition of government procurement found in Chapter Ten.  The only difference found by the tribunal was that Chapter Ten only applied to government entities listed in the annexes to Chapter Ten.  Id. ¶ 167.  The Majority departed from this explicit NAFTA definition.

The Majority thus exceeded its authority – the Tribunal was tasked with interpreting and applying the NAFTA agreement and its terms as a whole, not selective provisions or words in a manner that violated international law and the express terms of the treaty.  Specifically, the NAFTA mandates that the Parties "interpret and apply the provisions of this Agreement in light of its objectives … and in accordance with applicable rules of international law."  NAFTA, Art. 102(2).  One of these applicable rules of international law is the Vienna Convention, which provides that "a treaty shall be interpreted in good faith in accordance with the ordinary meaning to be given to the terms of the treaty in their context and in the light of its object and purpose.  VCLT, Art. 31.

Rather than doing this, the Majority disregarded terms in the Treaty in a way that eroded the object and purpose of the NAFTA.

The U.S. Supreme Court has held that when an "arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." In that situation, an arbitration decision may be vacated under §10(a)(4) of the FAA on the ground that the arbitrator "exceeded [his] powers," for the task of an arbitrator is to interpret and enforce a contract, not to make public policy." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671-72, 130 S. Ct. 1758, 1767, 176 L. Ed. 2d 605 (2010) (internal citations omitted) (vacatur appropriate when arbitral "panel simply imposed its own

conception of sound policy").

Consistent with that holding, U.S. courts have held that an arbitrator's ignoring of express terms in an agreement or ignoring the essence of an agreement are grounds for the award to be vacated because in doing so, they have exceeded their authority.  See, e.g., Raymond James Fin. Servs., Inc. v. Bishop, 596 F.3d 183, 189-90 (4th Cir. 2010) (arbitrators' damages award vacated when the award compensated the employee for his termination, which was inconsistent with the essence of a terminable at will contract); PMA Cap. Ins. Co. v. Platinum Underwriters Bermuda, Ltd., 659 F. Supp. 2d 631, 638-39 (E.D. Pa. 2009) (arbitrators exceeded authority by, in essence, eliminating contractual provision in order to award damages that the counter party would otherwise not be entitled to), aff'd, 400 Fed. Appx. 654 (3d Cir. 2010); Davey v. First Command Fin. Servs., Inc., 3:11-CV-1510-G, 2012 WL 277968, at *4 (N.D. Tex. 2012) (award vacated when arbitrator granted punitive damages in violation of contractual clause prohibiting them).

In Alken-Ziegler, Inc. v. United Auto., Aerospace & Agric. Implement Workers of Am., for example, the court reversed a lower court decision that had upheld an award where the tribunal based its decision not on the express terms of the contract, but rather on "his own brand of industrial justice."  134 Fed. Appx. 866, 868 (6th Cir. 2005).  In doing so, the court held:

> While deferential, our review is "not toothless" when an arbitrator's award disregards the explicit provisions of the contract. We must vacate an award if it is based upon "'general considerations of fairness and equity' instead of the exact terms of the agreement."  In this labor contract, the phrase "actually working" is unambiguous-an employee must work on January 1 to be eligible for vacation pay. The arbitrator never gave any explanation as to why the phrase "actually working" was ambiguous. He simply concluded that the provision's harsh effects on employees warranted a finding of ambiguity. By his own admission, he found that the provision was not met by the employees. ("... but for the employer's actions, the employees *would have become* entitled to the benefit."). His "resorting to a reference to reasonableness" in his written opinion constituted a complete disregard for the contract provisions. The arbitrator's responsibility was to enforce the labor contract as written. He did not. The result was the imposition of "his own brand of industrial justice." As such, the arbitration award cannot stand.

Here, the Majority's ruling has led to an irrational interpretation of the NAFTA – that the state can discriminate against investors when it invites them to provide services for its citizens (such as through the FIT Program), but it cannot discriminate against suppliers when it invites them to provide goods or services for certain of its state entities.  See NAFTA, Art. 1003 ("(1) With respect to measures covered by this Chapter [government procurement], each Party **shall** accord to goods of another Party, to the suppliers of such goods and to service suppliers of another party, treatment no less favorable than the most favorable treatment that the Party accords to: (a) its own goods and suppliers; and (b) goods and suppliers of another party.   (2) With respect to measures covered by this Chapter, no Party may: (a) treat a locally established supplier less favorably than another locally established supplier on the basis of degree of foreign affiliation or ownership; or (b) discriminate against a locally established supplier on the basis that the goods or services offered by that supplier for the particular procurement are goods or services of another Party") (emphasis added).

Under such circumstances, vacatur is appropriate.  See e.g., Missouri River Servs., Inc. v. Omaha Tribe, 267 F.3d 848, 855 (8th Cir. 2001) ("[t]he arbitrator did not interpret the contract, [s]he rewrote it"; "The arbitrator 'may interpret ambiguous language,' but he may not, however, 'disregard or modify unambiguous contract provisions.'   In other words, '[i]f the arbitrator 'interprets unambiguous language in any way different from its plain meaning, [the arbitrator] amends or alters the agreement and acts without authority'") (internal citations omitted).

> **2.**      **The Majority Engaged in Misconduct so Severe it Merits Vacatur Pursuant to 9 U.S.C. §10(a)(3) Because it Denied Mesa a Fundamentally Fair Hearing by Ignoring Key Language of the NAFTA Treaty Such That Mesa's Rights Have Been Prejudiced**

As explained above, the Majority disregarded NAFTA terms found in NAFTA Article

1108 and in fact disregarded the plain language of the Treaty. In disregarding the NAFTA terms, which it has been tasked with interpreting, the Majority engaged in "misbehavior by which the rights of any party have been prejudiced." Hoteles Condado Beach, La Concha & Convention Ctr. v. Union de Tronquistas Local 901, 763 F.2d 34, 41 (1st Cir. 1985) (affirming lower court decision vacating award where, among other things, arbitrator's award materially altered the clear language of the contract at issue; "although [the arbitrator] may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions") (internal citations omitted).

Accordingly, this provides another ground by which the Award can be vacated.

**C. The Award Should be Vacated Because it Was Rendered in Manifest Disregard of the Law**

In addition to the statutory grounds for vacatur provided in the FAA, an award can also be vacated if it was rendered in manifest disregard of the law.

To establish manifest disregard of the law, a party must show that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case. LaPrade v. Kidder, Peabody & Co., Inc., 246 F.3d 702, 706 (D.C. Cir. 2001). Both of these requirements are met here.

**1. The Majority Manifestly Disregarded the Law When it Decided that the Government's Actions Were Entitled to a Great Deal of Deference in Violation of its Obligation to Treat the Parties with Equality under the NAFTA**

The Majority manifestly disregarded the applicable burden of proof for a finding of an Article 1105 violation since (1) it knew of the governing legal principle required since they cited it (Award ¶ 501); (2) it refused to apply it or ignored it altogether, instead applying a standard of "deference" (Award ¶ 505) found nowhere in the NAFTA and in violation of their obligation to

treat the parties with equality pursuant to UNCITRAL Art. 15; and (3) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case since the Majority itself announced the standard that had been established in *Waste Management* (Award ¶ 501).

In Square Plus, for example, Square Plus argued that the award must be vacated because, among other things, the arbitrator applied an erroneous burden of proof in determining that Square Plus had not produced sufficient evidence of theft. The court agreed and vacated the award because it was rendered in manifest disregard of the law. In so doing, the court held that the arbitrator had manifestly disregarded the terms of the contract at issue, instead requiring a showing of "absolute proof":

> Square Plus correctly argues, however, that the arbitration award must be vacated because of the arbitrator's "manifest disregard of the law" regarding Square Plus's burden of proof….The arbitrator erred in subjecting Square Plus to such a stringent burden of proof. Freycinet was not being criminally prosecuted for theft in this case. Rather, the issue before the arbitrator was simply whether, under the terms of the collective bargaining agreement, Square Plus had just cause to discharge Freycinet. Under these circumstances, Square Plus need not introduce "absolute proof" that Freycinet misappropriated customer funds. Just cause for Freycinet's discharge will be established if Square Plus can show, by a preponderance of the evidence, that he committed the thefts alleged.

Square Plus Operating Corp. v. Local Union No. 917, 90 CIV. 1713 (LJF), 1992 WL 116610, at *1 (S.D.N.Y. May 15, 1992) (internal citations omitted).

Here, as noted, Article 15 of the UNCITRAL Arbitration Rules required the Tribunal to treat Mesa with equality with the other disputing party. Yet, by giving Canada's actions deference, the Majority violated the principle of equality that has long been recognized as the touchstone of a UNCITRAL arbitration. See, e.g., The Loewen Group, Inc and Raymond L. Loewen v United States of America, ICSID Case No. ARB(AF)/98/3 (NAFTA), Decision on Hearing of Respondent's Objection to Competence and Jurisdiction, 5 January 2001, para. 51 ("Guided by

these objectives and principles, we do not accept the Respondent's submission that NAFTA is to be understood in accordance with the principle that treaties are to be interpreted in deference to the sovereignty of states."); Ethyl Corp. v. Canada, UNCITRAL/NAFTA, (UNCITRAL) Award on Jurisdiction, 24 June 1998, ¶ 55 ("The erstwhile notion that 'in case of doubt a limitation of sovereignty must be construed restrictively' has long since been displaced by Articles 31 and 32 of the Vienna Convention."); Eureko B.V. v. Republic of Poland, (UNCITRAL) Partial Award, 19 August 2005, ¶ 258 ("This Tribunal feels bound to add that reliance by the Tribunal in *SGS v. Pakistan* on the maxim *in dubio mitius* so as effectively to presume that sovereign rights override the rights of a foreign investor could be seen as a reversion to a doctrine that has been displaced by contemporary customary international law, particularly as that law has been reshaped by the conclusion of more than 2000 essentially concordant bilateral investment treaties").

As in Square Plus, the Majority here similarly manifestly disregarded the applicable burden of proof.  Accordingly, the Award is subject to vacatur because it was rendered in manifest disregard of the law.

2.    **The Majority Manifestly Disregarded the Law when it Departed from the NAFTA's Definition of Procurement by a Party of a State Enterprise**

The Majority manifestly disregarded the law when it departed from NAFTA's definition of "procurement by a Party or a state enterprise" in the NAFTA in Article 1108, and in doing so, manifestly disregarded the terms of the NAFTA, which it was obliged to follow.  By not interpreting the NAFTA agreement and this term as a whole, and instead interpreting selective words in the phrase "procurement by a Party or a state enterprise" in a manner that violated international law, the Tribunal manifestly disregarded the actual terms of the Treaty.

Here, it is undisputed that the Majority (1) knew of the governing legal principle contained

in NAFTA Article 1108 since they cited that Article;[53] 2) ignored and/or refused to apply the language of the Treaty since the Majority concluded that "it makes no difference to the analysis above whether one focuses upon the single word 'procurement' or the phrase 'procurement by a Party or a state enterprise'";[54] and 3) the language ignored by the Majority is well defined, explicit and clearly applicable in this case.

In doing so, the Majority failed to address Mesa Power's contentions as to the merits of its Article 1102 (National Treatment) and Article 1103 (Most Favored Nation) claims because it found that the procurement exception under Article 1108 applied.  Had the Majority not ignored express language in NAFTA Article 1108, the Tribunal would have had to address the merits of Mesa Power's claims, including analyzing whether the favorable treatment Ontario offered to the Korean Consortium and other Canadian entities, was a violation of its international obligations under the NAFTA.

The "paramount point to be remembered in … arbitration is that the power and authority of an arbitrator is totally derived from the … agreement and that he violates his obligation to the parties if he substitutes 'his own brand of industrial justice' for what has been agreed to by the parties in that contract. If the language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement."  Poland Spring Corp. v. United Food & Comm. Workers Int'l Union, 314 F.3d 29 (1st Cir. 2002); S.D. Warren Co. v. United Paperworkers Int'l Union, 845 F.2d 3, 8 (1st Cir. 1988) ("[W]e cannot enforce the award in this case because in it 'the arbitrator [has] ignore[d] the plain language of the contract' and because the award fails to draw its 'essence' therefrom and 'simply reflect[s] the arbitrator's own notions of industrial justice.'"); Coast Trading Co. v. Pac. Molasses Co., 681 F.2d 1195, 1198 (9th Cir.

---

[53] Award ¶ 421, Ex. 1.

1982) (award was simply "contrary to remedies provided in the contract and [therefore] beyond the authority of the arbitrators under the submission").[55]

Here, the language of the NAFTA Treaty is clear. Yet, the Majority ignored key language of the Treaty. In doing so, they in essence re-wrote the Treaty, and in doing so, manifestly disregarded the treaty terms. Accordingly, the award is subject to vacatur because it was rendered in manifest disregard of the law. Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n, AFL-CIO, 889 F.2d 599, 604 (5th Cir. 1989) (arbitral action contrary to express contractual provisions will not be respected; labor award vacated where arbitrator was without authority, under the bargaining agreement, to reinstate employee); see also Missouri River Servs., 267 F.3d at 855 (award did not draw its essence from the contract where tribunal 'disregard[ed] or modif[ied] unambiguous contract provisions'"); Boise Cascade Corp. v. Paper Allied-Indus., Chem. & Energy Workers (PACE), Local 7-0159, 309 F.3d 1075, 1087 (8th Cir. 2002) (the "arbitrator's decision did not consider the parties' intent, that it contravenes that intent, and that 'additional facts exist that strongly indicate that the arbitrator did not premise his award on the contract, notwithstanding his words to the contrary.' In these circumstances, we do not merely disagree with the arbitrator's decision; rather, we find that his award fails to draw its essence from the parties'

_____

[54] Id.
[55] See also George A. Hormel & Co. v. United Food & Commercial Workers, Local 9, AFL-CIO, 879 F.2d 347, 351 (8th Cir. 1989) ("[W]here a decision does not account for essential clauses and does not give a reason for the failure to mention essential clauses, the award has been vacated because such shortcomings are an indication that the arbitrator has not interpreted the specific contract at issue'"; "We believe that where an arbitrator fails to discuss a probative contract term and at the same time offers no clear basis for how he construed the contract to reach his decision without such consideration, there arises a strong possibility that the award was not based on the contract"); Champion Int'l Corp. v. United Paperworkers Int'l Union, 168 F.3d 725, 731 (4th Cir. 1999) (arbitrator's failure to address certain contractual provisions was "evidence of a basic abdication of [his] duty to apply the contract that governs the grievance"); Clinchfield Coal Co. v. District 28, United Mine Workers, 720 F.2d 1365, 1369 (4th Cir.1983) ("Where, as here, the arbitrator fails to discuss critical contract terminology, which terminology might reasonably require an opposite result, the award cannot be considered to draw its essence from the contract"); Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 204 (2d Cir. 1998) ("[W]here a reviewing court is inclined to find that arbitrators manifestly disregarded

agreement").

In remanding arbitration awards, U.S. courts have the power to determine whether to remand to the original arbitrators or to new arbitrators.[56] In considering the propriety of a district court's order remanding a dispute to a new arbitrator, the Sixth Circuit emphasized that "district courts are usually afforded broad discretion in fashioning appropriate relief," and that discretion includes the power to appoint new arbitrators.[57] Importantly, the Sixth Circuit rejected the appellant's argument that "remand to a new arbitrator is appropriate only where an arbitrator's actions compromise the appearance of impartiality," as well as the argument that "remanding to a new arbitrator produce[d] an unneeded inefficiency, because the former arbitrator [was] already familiar with the merits of the case."[58] Similarly, the Southern District of New York held that "[a]lthough not explicit in the FAA, it is within this Court's discretion to remand a matter to the same arbitration panel or a new one."[59]

---------------------

the law or the evidence and that an explanation, if given, would have strained credulity, the absence of explanation may reinforce the reviewing court's confidence that the arbitrators engaged in manifest disregard.").

[56] Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas, 915 F.2d 1017, 1020 (5th Cir. 1990) (discussing the district court's power to "nullif[y] the decision of an arbitration panel . . . [and] remand[] the case to a different arbitration panel"); Grand Rapids Die Casting Corp. v. Local Union No. 159, United Auto., Aerospace and Agr. Implement Workers of Am., UAW, 684 F.2d 413, 416 (6th Cir. 1982) ("We suggest to the District Court that remand should be to a different arbitrator."); Hart v. Overseas Nat'l Airways, Inc., 541 F.2d 386, 393-94 (3d Cir. 1976) ("If after such review the district court finds no bias on the part of the referee as would affect liability and that the proceedings before the referee were otherwise full and fair, there would seem to be no barrier to affirming the referee's liability finding and remanding only for the computation of damages. In the event, however, that a defect in the proceedings or bias on the part of the referee is found by the district court, the district court should formulate an appropriate remedy to provide for the resolution of the parties' differences by arbitration, including, if necessary, a procedure whereby a new arbitrator is selected."); Erving v. Va. Squires Basketball Club, 468 F.2d 1064 (2d Cir. 1972) (holding that district court judge properly appointed neutral arbitrator to replace designated arbitrator).

[57] Aircraft Braking Systems Corp. v. Local 856, Int'l Union, United Auto., Aerospace and Agr. Implement Workers, UAW, 97 F.3d 155, 162-63 (6th Cir. 1996) (citations omitted).

[58] Id.

[59] Matter of Arbitration Between Tempo Shain Corp. v. Bertek, Inc., No. 96 Civ. 3354 (LAP), 1997 WL 580775, at 2 (S.D.N.Y. Sept. 17, 1997) (discussing numerous other state and federal cases on this issue); see also In re A.H. Robins Co., Inc., 230 B.R. 82, 87 (E.D. Va. 1999) ("[T]he Court's decision as to whether to remand a matter to the same arbitrator or a new one is within the Court's discretion.").

## <u>CONCLUSION</u>

For the foregoing reasons, Mesa Power respectfully requests that the Court vacate the Award and remand the matter for further arbitration proceedings before a newly-constituted tribunal.  Pursuant to LCvR 7(f), Petitioner Mesa Power requests oral argument.

Dated: June 13, 2016                          Respectfully submitted,

MESA POWER GROUP LLC


By:    s/ Eric. L. Lewis
Eric L. Lewis D.C. Bar No. 394643
**Lewis Baach PLLC**
1899 Pennsylvania Ave NW, Suite 600
Washington, D.C.  20006
Telephone No. 202 833 8900
Eric.Lewis@lewisbaach.com

and

| | |
|---|---|
| Edward M. Mullins | Barry Appleton, DC BAR #458636 |
| **Astigarrga Davis Mullins & Grossman, P.A.** | **Appleton & Associates** |
| 1001 Brickell Bay Drive, 9th Floor | 77 Bloor St. W, Suite 1800, Toronto, Ontario |
| Miami, FL  33131 | M5S 1M2 |
| Telephone No.  (305) 372-8282 | Telephone No.  416.966.8800 |
| emullins@astidavis.com | bappleton@appletonlaw.com |
| *Motion for pro hac vice to be filed* | *Motion for pro hac vice to be filed* |

*Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the District Court for the District of Columbia by using the CM/ECF system on June 13, 2016. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I will mail the foregoing document by International First-Class Mail and FedEx, postage prepaid and signature required, and by Certified E-Mail within 3 calendar days to the following non-CM/ECF participants:


Ms. Sylvie Tabet
Counsel for the Government of Canada
Trade Law Bureau
Global Affairs Canada
125 Sussex Drive
Ottawa, Ontario,
K1A 0G2
Canada
Email: sylvie.tabet@international.gc.ca;
shane.spelliscy@international.gc.ca;

Government of Canada
Deputy Attorney General of Canada
Office of the Deputy Attorney
General of Canada
284 Wellington Street
Ottawa, Ontario
K1A 0H8
Canada