UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____

MESA POWER GROUP, LLC.       )
               Petitioner,      )
                                    )   Case No. 1:16-cv-01101-JDB
    - against -       )

GOVERNMENT OF CANADA,     )
              Respondent.      )
_____

**REPLY TO CANADA'S RESPONSE TO**
**MESA POWER'S NOTICE OF SUPPLEMENTAL AUTHORITY**

The Government of Canada ("Canada") has responded (DE 33) to Mesa Power Group, LLC's ("Mesa Power") Notice of Supplemental Authority (DE 32) by arguing that the Court should ignore Mesa Power's notice because it is really a supplemental brief filed without leave of this Court. Response ¶ 102. Canada is wrong and, if anything, it is Canada who has filed an improper brief.

First, Mesa Power's notice was procedurally proper. In support of its flawed argument regarding the procedural propriety of Mesa Power's filing, Canada cites *Sanders v. District of Columbia*, 2014 U.S. Dist. LEXIS 156954, *2 (D.D.C. No. 6, 2014), which, in turn, cites Federal Rule of Appellate Procedure 28(j). *Sanders* (and the corresponding rule of *appellate* procedure that it cites) do not help Canada. In fact, in *Sanders*, the court recognized that "[n]either the Federal Rules of Civil Procedure nor the Local Rules of this Court provide for the filing of supplemental authorities**. In practice, however, this Court has allowed notices of supplemental authority to be filed without leave of court**, provided that such notices are limited." *Id.* (emphasis added). *Sanders* involved a 10-page brief that included different sub-

headings as well as well as substantial argument.  *See* Supplemental Authority filed on November 3, 2014, Case No. 1:06-cv-01411-PLF (DE 125).  Yet, even then, the *Sanders* court refused to strike the brief, but instead allowed a response brief of similar length.

Here, Mesa Power's Notice of Supplemental Authority is limited in content and in scope. Mesa Power spent two paragraphs giving context to the *Windstream* NAFTA decision, in which, unlike the *Mesa Power* tribunal, the NAFTA tribunal gave no deference to Canada's actions, and upon which Mesa Power relies as a supplemental authority.  The remainder of the 4-page filing summarizes and cites the key parts of the 152-page *Windstream* decision.  There was no new argument presented, and Mesa Power's filing was limited to bringing the *Windstream* decision to this Court's attention.

This is especially important when there is a case authority that is directly relevant to the issue being determined.  In this circumstance, Canada was a party to the *Windstream* September 27, 2016 decision. Canada was aware of this important authority, considering the very same energy regulatory program as in *Mesa Power*, before it filed its October 24, 2016 brief but chose not to disclose its existence to the Court. In comparison, Mesa Power only became aware of this important decision after the time for its briefings had lapsed.

There is nothing procedurally improper about Mesa Power's Notice of Supplemental Authority.  As noted by the *Sanders* case cited by Canada, there is no rule of procedure prohibiting Mesa Power's filing of a supplemental authority, and Mesa Power's filing was limited to brining the *Windstream* decision to the Court's attention, which as *Sanders* notes, the courts in this District have allowed.

Indeed, if anything, it is Canada that goes too far.  Canada does not limit its arguments to the procedural propriety of Mesa Power's filing.  Instead, it also substantively addresses the

*Windstream* decision by arguing that: (1) that the *Windstream* decision is not an "authority" to be relied on because arbitral "decisions from NAFTA tribunals are not binding on any other tribunal" (Response ¶ 5); and (2) the *Windstream* tribunal actually gave deference to Canada's actions (Response ¶¶ 8-10). Thus, Canada certainly is not harmed by Mesa Power's filing – having already responded in detail to Mesa Power's Notice of Supplemental Authority.

On the merits, Canada's arguments are wrong. First, Canada itself has relied on and cited multiple NAFTA arbitral awards in this proceeding that it (incorrectly) contends support its position. *See, e.g.*, Canada Opposition to Motion to Vacate (DE 22), at 29 (citing *Mondev International* NAFTA award)*, id.* at 30 (citing S.*D. Myers*, *Waste Management*, as well as several other NAFTA awards). Canada has also argued (again incorrectly) that "there is a plethora of NAFTA Chapter Eleven Cases where tribunals have extended deference to State actions." *Id.* at 30. The irony of Canada's position in its Response is that suddenly NAFTA awards are not an "authority" to be relied on despite Canada's own reliance on them in this proceeding.

Indeed, the award that is at issue here also concluded, contrary to the arguments that Canada now presents to this Court, that:

> 222. The Tribunal is not bound by the decisions of other arbitral tribunals. At the same time however, the Tribunal does believe that it should pay due respect to such decisions. Unless there are reasons to the contrary, the Tribunal will adopt the approaches established in a series of consistent cases comparable to the case at hand, subject, of course, to the specifics of the NAFTA and to the circumstances of the actual case. By doing so, the Tribunal believes it will meet its duty to contribute to the harmonious development of investment law and thereby to meet the legitimate expectations of the community of States and investors towards legal certainty and the rule of law.   *Mesa Power* Award ¶ 222.

The *Windstream* award thus is an "authority" that is appropriately relied upon by this Court in this proceeding.

3

After addressing the perceived procedural issues, Canada incorrectly argues that the *Windstream* decision applied a deference standard to Canada's actions because, it argues, the tribunal allegedly "deferred to the decisions of the domestic regulators, accepting that their actions were 'at least in part driven by a genuine policy concern.'"  Response ¶ 10 (citing *Windstream* ¶ 376).

Canada misreads the *Windstream* award.  As in *Mesa Power*, Canada pled deference in the *Windstream* case. The *Windstream* tribunal specifically rejected the type of deference that Canada now seeks to be upheld here in the *Mesa Power* Award.  Indeed, the *Windstream* tribunal held the NAFTA Article 1105 must be assessed against the particular facts in the case.  The *Windstream* tribunal stated:

> 360. Similarly, the Mondev tribunal observed:
>
> "When a tribunal is faced with the claim by a foreign investor that the investment has been unfairly or inequitably treated or not accorded full protection and security, it is bound to pass upon that claim on the facts and by application of any governing treaty provisions. A judgment of what is fair and equitable cannot be reached in the abstract; it must depend on the facts of the particular case. It is part of the essential business of courts and tribunals to make judgments such as these. In doing so, the general principles referred to in Article 1105(1) and similar provisions must inevitably be interpreted and applied to the particular facts…."
>
> 361. The Tribunal underwrites all of these observations, including in particular the Mondev tribunal's observation that "[a] judgment of what is fair and equitable cannot be reached in the abstract; it must depend on the facts of the particular case." The Mondev tribunal rightly stressed that "[i]t is part of the essential business of courts and tribunals to make judgments such as these;" and that "[i]n doing so, the general principles referred to in Article 1105(1) and similar provisions must inevitably be interpreted and applied to the particular facts."
>
> 362. In other words, just as the proof of the pudding is in the eating (and not in its description), the ultimate test of correctness of an interpretation is not in its description in other words, but in its application on the facts.  *Windstream* Award ¶¶ 361-362.

In its Response, Canada seeks to confuse the concept of deference with a thorough analysis of the facts to determine if there is a breach of the NAFTA. The *Windstream* tribunal found that Canada's decision to impose a moratorium based on a "lack of science" that was "at least in part driven by a genuine policy concern", as well as, among other things, the impact of offshore wind on electricity costs in Ontario, did not breach NAFTA Article 1105 (*Windstream* ¶ 376), when the tribunal was unable "to find, on the basis of the evidence before it, that these concerns were the predominant reason for the moratorium." *Windstream* ¶ 376. Notwithstanding, the tribunal went on to conclude that Canada's actions in the period following the moratorium, when Canada "did little to address the legal and contractual limbo in which Windstream found itself after the imposition of the moratorium," did violate NAFTA Article 1105. *Windstream* ¶ 379.

That was not a tribunal affording a government deference. Instead, it was a tribunal assessing the facts in light of the applicable standard contained in NAFTA Article 1105, which the Majority in the Mesa Power arbitration failed to do based upon the deference standard on which Canada wrongly insisted. Indeed, in assessing the facts before it, the *Windstream* tribunal concluded there had been a breach when it found that, for example, the government "did relatively little to address the scientific uncertainty surrounding offshore wind that it had relied upon as the main publicly cited reason for the moratorium" (*Windstream* ¶ 378) and failed to "promptly complet[e] the required scientific research" in the period after the moratorium. *Windstream* ¶ 379.

The *Windstream* tribunal would not have so held had it given Canada the deference that it requested. If, as Canada erroneously suggests, the *Windstream* tribunal deferred to Canada on its decision relating to domestic authorities, no breach could have been found by the tribunal. Yet,

the *Windstream* tribunal found a breach of NAFTA Article 1105. In coming to that conclusion it specifically looked at the conduct and decisions of Canada's domestic regulators. This was something that the majority in the *Mesa Power* arbitration simply refused to do. The *Windstream* tribunal afforded no deference to Canada.

Dated: January 19, 2017.

Respectfully submitted,

s/ Eric L. Lewis
Eric L. Lewis
Tara J. Plochocki
**Lewis Baach PLLC**
1899 Pennsylvania Ave NW #600,
Washington, DC 20006
Phone:(202) 833-8901
Eric.Lewis@lewisbaach.com
Tara.Plochocki@lewisbaach.com

Edward M. Mullins
M. Cristina Cárdenas
**Astigarraga Davis Mullins & Grossman, P.A.**
1001 Brickell Bay Drive, 9th Floor
Miami, FL  33131
Telephone No.  (305) 372-8282
emullins@astidavis.com
ccardenas@astidavis.com
*Admitted pro hac vice*

Barry Appleton
**Appleton & Associates**
77 Bloor St. W, Suite 1800, Toronto, Ontario
M5S 1M2
Telephone No.  416.966.8800
bappleton@appletonlaw.com
*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the District Court for the District of Columbia by using the CM/ECF system on January 19, 2017. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

s/      Eric L. Lewis
Eric L. Lewis