### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

MESA POWER GROUP, LLC,

          Petitioner,

        vs.

GOVERNMENT OF CANADA,

          Respondent.

_____/

Civil Action
No. 1:16-cv-1101

Washington, DC
June 1, 2017

2:08 p.m.

### TRANSCRIPT OF MOTIONS HEARING
### BEFORE THE HONORABLE JOHN D. BATES
### UNITED STATES DISTRICT COURT JUDGE

<u>**APPEARANCES:**</u>

For the Petitioner:    **TARA JORDAN PLOCHOCKI**
    Lewis, Baach, Kaufmann, Middlemiss
    1899 Pennsylvania Avenue, NW
    Suite 600
    Washington, DC 20006


    **EDWARD M. MULLINS**
    Reed Smith LLP
    1001 Brickell Bay Drive, 9th Floor
    Miami, FL 33131


    **BARRY APPLETON**
    **SEAN STEPHENSON**
    Appleton & Associates
    77 Bloor Street West, Suite 1800
    Toronto, Ontario M5S 1M2
    Canada

Proceedings recorded by realtime stenographic shorthand;
transcript produced by computer-aided transcription.

**<u>APPEARANCES CONTINUED:</u>**


For the Respondent:     **EDWARD GEORGE BALDWIN**
                        **GRAHAM ROBERT CRONOGUE**
                        Baker & McKenzie, LLP
                        815 Connecticut Avenue NW
                        Washington, DC 20006


                        **SHANE SPELLISCY**
                        Global Affairs Canada
                        Trade Law Bureau
                        125 Sussex Drive
                        Ottawa, Ontario K1A 0G2
                        Canada


Court Reporter:         **Jeff M. Hook, CSR, RPR**
                        Official Court Reporter
                        U.S. District & Bankruptcy Courts
                        333 Constitution Avenue, NW
                        Room 4700-C
                        Washington, DC  20001

**P R O C E E D I N G S**

1

2     **DEPUTY CLERK:**  Your Honor, we have civil action

3  16-1101, Mesa Power Group, LLC versus the Government of

4  Canada.  I would ask that counsel please approach the

5  lecturn, identify yourself and those at your respective

6  tables, please.

7     **MS. PLOCHOCKI:**  Good afternoon, your Honor.  My

8  name is Tara Plochocki.  I'm a partner with Lewis, Baach,

9  Kaufmann & Middlemiss here in D.C.  I have with me

10  Mr. Edward Mullins of Reed Smith Miami; Mr. Barry Appleton

11  of Appleton & Associates, Toronto, Canada; and Mr. Sean

12  Stephenson also of Appleton & Associates.  Additionally we

13  have Mr. Cole Robertson, the Chief Operating Officer of Mesa

14  Power Group here with us today.  Thank you.

15     **THE COURT:**  Welcome to you all.

16     **MR. BALDWIN:**  Good afternoon, your Honor.  My name

17  is Edward Baldwin here on behalf of the Government of

18  Canada.  At the table with me is Shane Spelliscy who works

19  for the Department of Justice in Canada, and Graham Cronogue

20  who's my colleague.  Thank you.

21     **THE COURT:**  Good afternoon to you as well.

22     Alright.  We're here on I guess basically the

23  motion to vacate the award.  But there's also a request to

24  confirm the award.  So those are cross-motions, in effect

25  similar to cross-motions for summary judgment in other

1    settings, but dealing with this arbitration matter on the

2    tribunal's decision.  I think I told you 30 to 40 minutes,

3    so keep that in mind.  I think we should hear from Mesa

4    Power first.

5              **MR. MULLINS:**  Good afternoon, your Honor.

6              **THE COURT:**  Good afternoon.

7              **MR. MULLINS:**  We reserve 10 minutes for rebuttal.

8              **THE COURT:**  Sure.

9              **MR. MULLINS:**  We are here as your Honor pointed

10   out on cross-petitions.  We believe the arbitration award

11   should be vacated for fundamental errors in the

12   administration of how the arbitration was done, and by the

13   majority ignoring key language and rejecting key language of

14   the arbitration treaty.

15             On the first issue, we believe that we were

16   fundamentally prejudiced because what the tribunal did was

17   transformed the burden of proof under Article 1105, which is

18   fair and equitable treatment, into an impenetrable wall by

19   giving undue deference in a manner that never has been

20   applied in that manner.  Because it was so --

21             **THE COURT:**  Do you now concede that deference is

22   given in similar arbitration settings?

23             **MR. MULLINS:**  Your Honor, deference has never been

24   applied in this manner.  And I have some blow ups that I can

25   show you how I can get there.  But the answer is that there

1    are awards that recognize that there is some deference given

2    to how governments regulate.  The difference here is that

3    the tribunal went beyond that.  This tribunal basically said

4    if there's a rational basis for what they did, for what

5    Canada did, we're going to not look at whether or not

6    there's a violation of 1105 on the key issue of the GEIA as

7    it applies to the FIT program -- which I think we briefed

8    and I can explain all that.  But I think the Court's aware

9    of that program.

10            And as Judge Brower said, that is not appropriate

11   in the dissent, and we'll go through that language.  There

12   is that rational basis language, your Honor, and Canada even

13   cited the Chevron case as the kind of deference you give to

14   administrative findings in --

15           **THE COURT:**  Do you think the deference given here

16   is the equivalent of Chevron deference in an administrative

17   law case in the United States court systems?

18           **MR. MULLINS:**  I think that's exactly what it is,

19   your Honor.  I think that's exactly what it is.

20           **THE COURT:**  On what issue do you think the

21   tribunal provided that impermissible deference?

22           **MR. MULLINS:**  Sure.  I've put up here, your Honor,

23   the portion of the award that I think is critical to it.

24   Throughout the award, the panel talks about the deference

25   that awards have talked about.  And Mr. Appleton can talk

1     about those decisions to the extent the Court wants to get

2     into the actual awards.

3             But we're not aware of any tribunal that give the

4     kind of deference that you're talking about and would

5     essentially stop the tribunal from adjudicating the issue,

6     the key issue, as to whether or not the GEIA violated the

7     1105 because the way it was administrated and taking the 500

8     megawatts out.

9             And if you look, your Honor, after setting forth

10    our arguments of what the issues were with that -- and

11    that's in the previous paragraphs what you're seeing here,

12    at 579 the majority says, "Be that as it may, these are

13    all policy considerations" --

14            **THE COURT:**  You're not going to read the whole

15    thing, are you?

16            **MR. MULLINS:**  I am not.  I want to point out some

17    key language here.  "Be that as it may, these are all policy

18    considerations and questions that were for the Government of

19    Ontario alone."

20            This is -- in other words, we're not going to

21    question at all what Ontario has done.  Secondly, they go on

22    to say that, "Rather" -- let me point to right here.

23            **THE COURT:**  I see where it is.

24            **MR. MULLINS:**  "Rather, it is for the tribunal to

25    examine whether, as the claimant alleges, the beneficial

1    treatment was granted to the Korean consortium arbitrarily

2    or another way conveying 1105."  But here's the key

3    language, "In particular, the tribunal must determine

4    whether Canada's conclusion of the GEIA lacked the

5    justification and whether there was a reasonable

6    relationship between the justification supplied and the

7    terms of the GEIA."  And then it goes on to say there was no

8    reasonable relationship.

9         Reasonableness --

10        **THE COURT:**  So what issue is it that you think

11   they gave what you think is an impermissible deference?

12        **MR. MULLINS:**  The issue is whether or not -- they

13   essentially refused to look at whether or not the operation

14   of the GEIA, entry of the GEIA, and then allowing it to go

15   into the province where our client was in was actually a

16   violation of 1105 and met the four of 1105.

17        **THE COURT:**  But one of the hurdles you have of

18   course is that it's 190 pages of refusal to consider.

19        **MR. MULLINS:**  I appreciate that, your Honor.  It's

20   not refusal to consider.  This situation -- we're not saying

21   it's refusal to consider.  On this argument, the argument is

22   it was a burden of proof that was beyond what was required

23   of us and was a standard as you just said -- you asked me,

24   it was similar to a Chevron type standard which has no

25   place internationally.

1          **THE COURT:**  So what's the deference that's

2    permissible and what's the deference that's impermissible?

3          **MR. MULLINS:**  The deference that's permissible,

4    your Honor, is that they leeway as to showing -- as to what

5    a -- to formally regulate.  And that's a good question.  Let

6    me show you for example in the NAFTA itself, if you give me

7    a second.  For example, your Honor, the NAFTA itself shows

8    what kind of deference that you can provide.

9          For example, in the formalities, for example you

10   could -- they say well, you can allow for special

11   formalities, you know, the pink paper type idea.  But all of

12   that has to be gauged by -- and I quote it here, "Provided

13   that such formalities do not materially impair the

14   protections afforded by a party to investors of another

15   party, and investments and investors of another party

16   pursuant to this chapter."

17         In other words, NAFTA clearly says that any

18   deference we're giving you has to be gauged by the standards

19   of 1105.  They don't trump 1105.  It's essentially what the

20   tribunal did here by giving this presumption that we're not

21   going to look at whether or not this is a good idea and test

22   it with 1105, because that's exactly what you're not allowed

23   to do.  And the language is even more clear --

24         **THE COURT:**  The parties to NAFTA seem to disagree

25   with you.

1          **MR. MULLINS:**  I'm sorry?

2          **THE COURT:**  The parties to NAFTA seem to disagree

3     with you, not only Canada but also the United States.

4          **MR. MULLINS:**  Your Honor, we don't believe that

5     any party to the NAFTA has taken the position -- and I don't

6     think United States has taken the position, that the

7     deference that should be provided is the reasonable

8     relationship test which is what they said in FIT 579.  I

9     don't believe there's any authority for that.  I don't think

10    that's what United States wants.

11         Essentially what they're saying, they're saying as

12    a matter of international law, that anybody who invests in a

13    foreign country, we're going to look at this as a reasonable

14    relationship test, okay, and apply the Chevron type analysis

15    to it.  What would be the purpose of NAFTA or any investment

16    treaty of that kind of standard.

17         We don't believe that any tribunal until this one

18    has applied it in that manner, we just don't believe it.

19    And we've cited cases, your Honor, a number of cases where

20    you can vacate an award under 10(a)(3) where the deference

21    that's given -- or scratch that, not the deference, but a

22    procedure is given that violates the fairness of the

23    parties.

24         And I will point out -- we skipped over this part,

25    but it's clear that the NAFTA and the UNCITRAL rules we

1   agreed with all require equality of the parties and we have

2   to be treated equally.  And I can point those out to your

3   Honor.

4            Just first, the parties agreed to arbitration as

5   is set forth in their agreement.  And then under 1120 of the

6   NAFTA, what the parties agreed to is to comply with the

7   governing rules.  Here both sides agreed to the UNCITRAL

8   rules, that's 1120, and then the applicable arbitration

9   rules that would govern the arbitration.  So this is

10  mandated, the tribunal must follow the applicable rules.

11           And if you look at first the NAFTA itself, both

12  parties under 1115 shall be treated with the principle of

13  international reciprocity and due process.  And then the

14  UNCITRAL rule which we agreed to, the arbitration rule, 15-1

15  says the parties must be treated equally.

16           **THE COURT:**  I understand that.  But I'm still

17  having a little bit of trouble identifying precisely what it

18  is you think.  You try to transform it into a burden of

19  proof issue, but is there a factual assertion or issue that

20  you think undue deference was given to Canada on?

21           **MR. MULLINS:**  Yes, your Honor.  Again I go back to

22  579 where if you read the award -- and up to this point --

23  up to I guess it's 571 to 578 --

24           **THE COURT:**  But this is just sort of a general

25  statement of what the tribunal is doing.  When it actually

1    applied any deference, what did it apply it to?

2              **MR. MULLINS:**  That's the point that I was getting

3    at.  This is where they start talking about the fact that

4    they entered into the GEIA, and the fact that the GEIA took

5    it -- basically that the Korean consortium was allowed to

6    jump into the FIT program.  And I think when you look at the

7    stark comparison, you look at the award when they use the

8    reasonable relationship test and what did Judge Brower say

9    in dissent which I think is a clear statement of what it

10   says.

11             He initially starts out -- and it's the same

12   conduct, the fact that you were able to come in and jump

13   ahead of the line and able to take out this limited

14   capacity -- in other words, the limited capacity of power

15   that's going to be available as renewable energy, we don't

16   have an unlimited capacity.  And so he says, "This

17   misconduct cannot be excused as award does by noting that

18   a sovereign is given a certain degree of deference."  He

19   rejects this idea that we're not going to look at this just

20   because we're going to give them the benefit of the doubt.

21             **THE COURT:**  What misconduct?

22             **MR. MULLINS:**  The misconduct, your Honor, as he

23   says in the dissent is entering into the GEIA and then

24   applying it in the manner such that -- as he says, that this

25   is far different from contracting outside the FIT program

1    and allowing a third party to withdraw 500 megawatts and

2    then take it out of commission and not allow our client to

3    get a contract.

4            And what's very, very critical, your Honor, is

5    Canada's own expert recognized -- and it's in this sentence,

6    he quotes it in detail, that had the Korean consortium not

7    been allowed to jump ahead of the line and go into our area

8    and take our megawatts, we would have gotten a contract.

9    That, your Honor, they didn't look at because they gave a

10   presumption of correctness.  They gave this deference.  They

11   gave this rational relationship idea, your Honor, to that

12   critical fact.

13           That's the one -- that issue they didn't look at

14   because it gave Canada the benefit of the doubt.  That's the

15   one -- when you look at the facts and go through it, they

16   don't go back and say we're not going to look at this, we're

17   not going to examine this under 1105 because we're going to

18   give them a reasonable relationship test.  Is there a

19   reasonable relationship that they're trying to do, and to

20   heck with the investors, to heck with the FIT.  And that's

21   what Judge Brower says you're not allowed to do.

22           **THE COURT:**  Well, Judge Brower may believe that

23   the majority is reaching the wrong conclusion.  His role as

24   part of the tribunal in assessing what the right conclusion

25   is is different than my role as a judge with the arbitration

1     results before me.

2              **MR. MULLINS:**  You're a hundred percent right.

3              **THE COURT:**  I'm not in his shoes.  I'm not making

4     the same kind of assessment as to what the right

5     interpretation for example is.  That's not my role.

6              **MR. MULLINS:**  You're a hundred percent correct.

7     And we're not asking you to do that.  But if you look at the

8     Square Plus case we gave you, and what happened there was

9     the tribunal -- essentially it was an employer-employee

10    situation.  And the employee could not be fired because --

11    unless he violated the rule of conduct.

12              The tribunal -- I think it was just one arbitrator

13    if I'm not mistaken, says you know what, we're going to

14    require you to prove it beyond a reasonable doubt.  The

15    award's vacated.  Southern District of New York case.

16    Because that's not the standard.  And that's what happened

17    here.  We're not asking -- it's a matter of equality.  And

18    so when you go into equality, it should be --

19              **THE COURT:**  Well, the parties were treated

20    equally.

21              **MR. MULLINS:**  They were not treated equally, your

22    Honor, if one party gets a reasonable relationship

23    deference.

24              **THE COURT:**  But there's deference acknowledged in

25    these arbitrations.  You're just saying that the particular

1      deference here was more than should be permitted.

2                  **MR. MULLINS:**  To an extent where essentially it's

3      not becomes equality.

4                  **THE COURT:**  More should be permitted.

5                  **MR. MULLINS:**  It no longer becomes equality, and

6      it's very similar to --

7                  **THE COURT:**  But to say that the tribunal reached

8      the wrong decision on deference isn't to say that they

9      operated outside the bounds of their authority.

10                 **MR. MULLINS:**  It's not -- your Honor, it does to

11     the extent where they cede their authority, because as just

12     like in the Square Plus case where they basically do it

13     beyond a reasonable doubt.  So it's not -- the Square Plus

14     court is not saying I'm not going to come to the conclusion

15     whether or not this employee should be terminated.  I'm not

16     going to come to the conclusion of whether or not this

17     employee actually committed this violation.  What I am going

18     to say is you can't apply a criminal standard.

19                 **THE COURT:**  That's a little bit clearer than the

20     issue on deference which is something that two very esteemed

21     judges on the tribunal disagreed on, arbitrators disagreed

22     on -- actually three, two on one side and one on the other

23     side.

24                 **MR. MULLINS:**  And I appreciate, your Honor, the

25     majority did what they did.  I'm telling you though it's a

1    similar situation, because in the Square Plus case, no one's

2    saying you don't have a burden of proof at all so it's

3    similar.  We're not saying there's not a deference given on

4    issues of your regulation.

5            What we're saying is when you give it to such a

6    deference to such extent where you're essentially saying

7    there's a rational relationship, we're not actually going to

8    look at it -- which is exactly what happened here, then

9    you've gone to far.  And so just like in Square Plus, that's

10   the wrong standard.  We're not here I'm judging the behavior

11   as to how they judged it.  And the A.H. Robins case which we

12   all cited which was an Eastern District of Virginia case,

13   the arbitrator there essentially relieved a party of the

14   burden of proof on a fact.  It's the same idea.

15           This is a critical, critical fundamental error,

16   your Honor.  It's a critical fundamental error, because by

17   doing this they've essentially negated the whole purpose of

18   having a NAFTA arbitration, having 1105 tested.

19           Your Honor, I know -- I don't know how much time I

20   have left, but do you want to hear on the issues of

21   procurement?

22           **THE COURT:**  Sure.

23           **MR. MULLINS:**  Unless the Court has other questions

24   on this area?

25           **THE COURT:**  No, you have enough time to cover

1    that.

2            **MR. MULLINS:**  Okay, great.  I just wanted to make

3    sure I covered everything before I turn it over to my

4    esteemed colleague.  Just a second.  So on the procurement

5    point, your Honor, the issue here is that obviously what

6    we're talking about is government procurement.  There's no

7    really debate of that, what this intended here.  So now

8    we're talking about the national treatment type protections.

9    And what this does under the NAFTA treaty is that you have

10   to treat other people and other investors from other

11   countries, including a NAFTA party, the same.  You can't

12   give preferences to Canadians as evidence was shown.

13           And what happens is there are exceptions to that,

14   and one of the exceptions to that is government procurement.

15   And the way the NAFTA says these articles, with the

16   exception of procurement by a party or state enterprise --

17   and that's the exception that you see at 1108 here where it

18   says again, "Procurement by a party or state enterprise."

19   That's the language.  And so what Canada says what you're

20   trying to argue is that the tribunal essentially did look at

21   that language and they said you know what, it doesn't really

22   make a difference if it's by party or state enterprise as

23   long as it's procurement.  That's what the tribunal did.

24           We're not arguing that.  What we're saying is --

25   and we have case law that supports this, is that what the

1    tribunal did -- and you look at the award, is they took out

2    by party or state enterprise right out of the treaty.

3    Because what they say is it's superfluous.

4              **THE COURT:**  Well, that's the interpretation they

5    gave to it.  But they looked at it.  They listened to both

6    sides.  Both sides had a full opportunity to present their

7    arguments on how this should be interpreted.  The tribunal

8    ultimately didn't agree with you but agreed with Canada.

9              Why is that not the kind of interpretation that a

10   court should not disturb in an arbitration setting?

11             **MR. MULLINS:**  There is a difference, your Honor,

12   when you're interpreting a clause of a contract -- and here

13   this would be the treaty language.  There's a difference

14   there than when you write out words of a treaty.  They did

15   not interpret -- they essentially took out the words by

16   party or state enterprise and essentially --

17             **THE COURT:**  They didn't take them out, they said

18   that they didn't matter in terms of the result.

19             **MR. MULLINS:**  It's a term of art, your Honor.

20   It's government procurement, it's a term of art that they

21   rewrote.  And just for example, in the Missouri River case,

22   the Eighth Circuit reversed a court for confirming an award

23   because the arbitrator there decided, you know, I'm going to

24   change the language of this contract that has a geography

25   limitation and I'm going to change it -- there's a

1   limitation on certain activities and just take it out.

2           And the courts have said -- they cite the Oxford

3   case.  That court did not -- the Supreme Court did not

4   change the law.  The cases are very clear, when the tribunal

5   goes beyond simply interpreting language of an agreement and

6   taking out words, it goes to far.  That's what happened in

7   Missouri River.

8           **THE COURT:**  The actual language from Oxford I

9   think is if the arbitrator arguably was construing the

10  contract in that case, the treaty here.

11          **MR. MULLINS:**  And --

12          **THE COURT:**  How can you say that the arbitrators

13  here, the tribunal, was not arguably construing or

14  interpreting that language?

15          **MR. MULLINS:**  When you go back and look, your

16  Honor, that standard is the same standard that's been used

17  for years.  For example, Missouri River is relying on -- you

18  read these cases, they all quote the same quote.  I'm saying

19  there's a string of cases we cite, and we believe that they

20  apply here where when this -- when you're going -- a

21  tribunal cannot -- it's not protected from its awards if it

22  simply says you know what, I'm going to take stuff out.

23          **THE COURT:**  It's protected from mistakes though.

24          **MR. MULLINS:**  It's protected from mistakes, but

25  it's not protected from carving out the words of the

1    agreement, and here it would be the words of a treaty which

2    is what happened in Missouri River, they took out the

3    language in the PMA case.  They took out a provision that --

4    essentially it was a provision that allowed for damages,

5    they took it out.  In the Raymond James case, they basically

6    took out a provision that says that the employee could not

7    be served for at will.

8           These are all cases where the award failed to

9    draw -- the award failed to draw its essence.  This is the

10   same language you find in the Oxford case.  The question is

11   did they get the essence from the agreement or are they

12   rewriting the agreement.  In the Davie case, the panel

13   ignored punitive damages limitation.

14         THE COURT:  But how can you say that -- looking at

15   particular language, listening to both side's arguments,

16   discussing both side's arguments as the tribunal did in its

17   award and concluding that certain language is -- to use the

18   term, is superfluous given the context?  How can you say

19   that's not a pretty thorough job of interpreting the

20   language?

21         MR. MULLINS:  When you look at these cases, your

22   Honor, you see that the parties did brief these issues.

23   You'll look at these cases, it's not an issue that the

24   parties didn't argue about it.  It's an issue of whether the

25   tribunal basically rewrites the agreement.  And they take --

1    you cannot take a term of art, government procurement --

2    which I don't know there's any debate that's what this is,

3    and say we don't think it makes a difference who's procuring

4    it.  That's what's happening here.  That's the --

5          **THE COURT:**  There's a fine line between

6    interpreting the agreement and rewriting the agreement.  You

7    think this is rewriting, but it looks just as much like

8    interpreting.

9          **MR. MULLINS:**  You know, I'll give you an example,

10   your Honor.  In the Hoteles case -- it's a First Circuit

11   case, and what happens there is that the Court -- and this

12   may help you try to fashion this.  In that case, the

13   contract was not particularly clear, but there was a --

14   essentially an exemption that only applied to casino

15   employees.  And what the court -- what the tribunal did

16   rather was apply it to the claimant which then clearly was

17   wrong.

18          And both the district court and the appellate

19   court said this is wrong.  It was very interesting, when you

20   read that case, your Honor, what the Court says is look, I'm

21   not going to look at how you interpreted this clause, we're

22   not going to get there.  It's ambiguous, I don't really --

23   I'm not going to say that.  What I'm not going to let you

24   do -- which is what you did, which is what the district

25   court said you can't do and what the appellate court said

1    you can't do, is apply it to somebody the contract clearly

2    says it doesn't apply.  That's the difference between

3    interpretation and rewriting, that's the difference.  That's

4    what the First Circuit said was the difference.

5         **THE COURT:**  Are there conflicting prior awards

6    concerning whether this type of government action is

7    procurement?

8         **MR. MULLINS:**  Your Honor, the only -- and I can

9    again defer to Mr. Appleton.  I will tell you as Judge

10   Brower says -- and this is all set forth in the dissent,

11   that in the cases what the tribunals will say, you know, you

12   just look at how to carve it out.  All the cases that I'm

13   aware of where it's -- where the procurement actually

14   happened was for use by the Government.  So if you look at

15   the -- and just a second and I can get you that.

16        In the ADF case for example, it was actually for

17   the construction of a highway.  I mean, there's no doubt

18   that's actually government procurement.  In the UPS case,

19   what they were using, the customs would actually collect

20   taxes.  So this is the only situation.  There's no debate

21   here that this was not buying electricity for use by the

22   Government of Ontario.

23        And so we -- at this stage -- and again I go to

24   the dissent, what Judge Brower said is that he's -- that

25   that was -- those cases -- all the cases that we are aware

1  of the awards as you point out were cases where it was

2  actually government procurement.  And in this -- and again,

3  the question is whether or not those awards are even binding

4  on you.  There's a debate between the parties on that here.

5  They use them when they want to and then they say you can't

6  use them, we cited one.

7          But in answer to your question, we're not aware of

8  awards where the -- it was actually used for anybody.  And

9  essentially -- really, if you think about what they're

10 saying, in a lot of ways this really negates the whole -- so

11 this is almost the exception of swallowing the rule.

12 Because the way they're interpreting government procurement,

13 that term of art, by saying it doesn't make a difference if

14 the government's buying or not, it's essentially saying it's

15 procurement by anybody.

16         It makes absolutely no sense that's what that term

17 could mean.  Obviously it had to be procurement by the

18 government, because it's not the investor that's buying

19 stuff, it has to be the government.  It makes no sense.

20 Obviously when they mean it -- and if you look at -- as you

21 look at chapter 10, the treaty itself defines what

22 government procurement it.  Is says under chapter 10 that

23 procurement does not include government provision of goods

24 and services to persons.  In other words, the treaty itself

25 says government procurement does not mean we buy it and give

1    it to somebody, it means we buy it and we use it.

2    **THE COURT:** Let me take you back to step one for

3    just a second.

4    **MR. MULLINS:** Step one on?

5    **THE COURT:** And that's the choice of law.

6    **MR. MULLINS:** Oh, perfect, yes.

7    **THE COURT:** Are the grounds that you are asserting

8    for vacating this award all grounds under the FAA or are you

9    asserting any grounds under the New York convention?

10    **MR. MULLINS:** We are using we believe the

11    appropriate analysis under the it TermoRio case from the

12    D.C. Circuit and Republic of Argentina from the district

13    court is that the grounds to vacate have to be chapter one

14    of the FAA. We recognize there is a minority view from my

15    home circuit, the Eleventh Circuit, that this minority view

16    has not been adopted by this circuit. We don't believe

17    that -- we believe that not only can you -- are not bound by

18    it, but you can't follow it because the D.C. Circuit has

19    said that chapter one applies, adopted the Toys R Us case

20    from the Second Circuit, made that law very clear, and

21    that's the law of this circuit.

22    **THE COURT:** So if I applied the Eleventh Circuit

23    precedent, what would your position be?

24    **MR. MULLINS:** That would be reversible error, your

25    Honor.

1      **THE COURT:**  No, that's not what I'm asking.

2      **MR. MULLINS:**  Oh, I'm sorry.

3      **THE COURT:**  I know your position would be that it

4  was wrong, but what are the grounds for vacating the award?

5      **MR. MULLINS:**  Oh, why it's wrong.  It's wrong

6  because the New York convention's intention -- if you read

7  the New York convention, it's the grounds to -- essentially

8  what the convention is for is for awards that are rendered

9  somewhere else and the grounds for not recognizing it.  It's

10  not a convention for purposes of figuring out what awards --

11  what the grounds for vacating.  The convention is very clear

12  if you read the Toys R Us and all these other cases other

13  than the Eleventh Circuit is that the grounds to vacate the

14  award are bound by where it was rendered.

15      **THE COURT:**  You're now arguing again --

16      **MR. MULLINS:**  I apologize.

17      **THE COURT:**  -- applied.  I'm saying assume --

18      **MR. MULLINS:**  Right.

19      **THE COURT:**  -- that the Eleventh Circuit law

20  applies here.

21      **MR. MULLINS:**  Oh, okay.

22      **THE COURT:**  What grounds would you be asserting

23  for vacating the award?

24      **MR. MULLINS:**  If I assumed, probably the New York

25  convention.

1          **THE COURT:**  You haven't raised any of those

2     grounds.

3          **MR. MULLINS:**  We haven't, your Honor, because we

4     don't think they apply.  There are grounds in the New York

5     convention that are similar where the arbitrators did not

6     correctly -- I don't remember the exact language.  But

7     essentially that the arbitrators didn't follow their mandate

8     for more better words.  To be perfectly candid, we haven't

9     analyzed it under the New York convention, it doesn't apply.

10    And with all seriousness, we do think it would be reversible

11    error to follow it, because the D.C. Circuit is very clear

12    what law applies.  And that's the analysis we did.

13         To make it very clear -- and I don't know if the

14    opponents are still seriously arguing this because we really

15    think it's completely without merit.  Where this award was

16    rendered was the United States.  It doesn't make a

17    difference if it was in Miami, Florida because we're not

18    applying Florida law, we're applying federal law.  And

19    therefore, you're bound by the interpretation of federal law

20    from the D.C. Circuit, not from the Eleventh Circuit.

21         **THE COURT:**  Let me ask you one other question.

22         **MR. MULLINS:**  Sure.

23         **THE COURT:**  Is any part of your position based on

24    an assertion that you were not permitted to present your

25    case in the tribunal, that you were precluded from any

1    argument, making any argument, presenting any evidence or in

2    any way prevented from appearing and putting your case

3    forward?

4              **MR. MULLINS:**  Your Honor, I --

5              **THE COURT:**  I know you disagree with some of the

6    conclusions the tribunal reached including conclusions that

7    you feel touch on burden of proof and so forth.  But were

8    you prevented from presenting your case in any way?

9              **MR. MULLINS:**  We were to the extent that the

10   tribunal gave a standard of reasonable relationship and gave

11   a presumption of --

12             **THE COURT:**  That's just how they decided the case.

13   But in terms of presenting the case, you were permitted to

14   present all the arguments and --

15             **MR. MULLINS:**  In the context we were able to put

16   on witnesses, yes.  But I know you're talking about 10(a)(4)

17   and the standard.  And I will say -- and I commit to the

18   cases that we cited that when the tribunal uses the wrong

19   burden of proof, that falls in 10(a)(3) from its behavior.

20   It falls at 10(a)(4) when they're ceding their powers,

21   because you're not really being able to put on your case.

22   For example, the A.H. case where you're essentially

23   presuming -- there's a presumption of liability.  You're not

24   really being able to put on your case because that fact is

25   taken out.

1          So the answer to your question, your Honor, is

2     yes, to the extent that it was an insurmountable burden of

3     proof that we could not recover, because no one could beat

4     the rational relationship test.

5          **THE COURT:**  I think that answers a slightly

6     different question, but thank you.

7          **MR. MULLINS:**  I thought it was the answer to the

8     question, but I appreciate it.  I think -- I don't know how

9     much time I have, unless the Court has any questions --

10          **THE COURT:**  I think probably you should save the

11     rest of your time for rebuttal.

12          **MR. MULLINS:**  Thank you so much, your Honor.

13          **THE COURT:**  Thank you.

14          **MR. BALDWIN:**  Your Honor, as I --

15          **THE COURT:**  So start with the choice of law.  Are

16     you still contending that the Eleventh Circuit law should

17     apply?

18          **MR. BALDWIN:**  Well, we stand by what's in our

19     papers.  But we think that under any view of it, that this

20     doesn't rise anywhere near to the level.  So to be quite

21     candid with you, your Honor, we're comfortable in you

22     applying the D.C. Circuit law.  We can talk about manifest

23     disregard, because we don't think that's an element of law

24     in this circuit.  But --

25          **THE COURT:**  The Eleventh Circuit is alone among

1   the circuits in taking the view that it has taken in the

2   Industrial Risk case.

3           **MR. BALDWIN:**  That's correct to my knowledge.

4           **THE COURT:**  And you can't point me to any

5   circumstances where a federal district court in a case

6   originally filed in that federal district court actually

7   applies the precedent of a different circuit, can you?

8           **MR. BALDWIN:**  No, your Honor, I can't.

9           **THE COURT:**  That's a fairly unusual circumstance,

10  wouldn't you concede?

11          **MR. BALDWIN:**  It is an unusual circumstance.

12          **THE COURT:**  And indeed, a circumstance that you

13  don't know of any examples where it's occurred?

14          **MR. BALDWIN:**  That's correct.  That's correct,

15  your Honor.  And we are comfortable with you applying this.

16  We're not changing our position, but we're comfortable with

17  you applying the D.C. Circuit because we don't believe that

18  those rules apply to that extent.

19          And I will say that the concern we have about the

20  Eleventh Circuit versus the D.C. Circuit is one of forum

21  shopping.  It was the petitioners that wanted Miami to be

22  the seat of arbitration, they pushed for that.  And then

23  they got the seat of arbitration in Miami, and then they

24  brought the case here.  We think they did it because they

25  were trying to increase their chances of winning.  We think

1   they wanted manifest disregard.

2            And so --

3            **THE COURT:**  But they're permitted to file it here.

4            **MR. BALDWIN:**  They're permitted to file it here.

5            **THE COURT:**  You're not arguing they're not?

6            **MR. BALDWIN:**  They are permitted.

7            **THE COURT:**  You can attribute an improper motive

8   to them, but I don't really have any evidence of that.  And

9   as you've already conceded, there's no other circuit that

10  agrees with the Eleventh Circuit.  And you can point me to

11  no circumstance where a federal district court in a case

12  originally filed in that court would be charged with

13  applying the precedent of a different circuit.

14           **MR. BALDWIN:**  That's correct.

15           **THE COURT:**  Let's proceed to the merits issues and

16  not take anymore time on choice of law.

17           **MR. BALDWIN:**  Okay.  Thank you, your Honor.  When

18  I was listening to the argument from the petitioners, it

19  felt as if I was listening to an argument before the D.C.

20  Circuit.  Because instead of talking about the bases that

21  are under the FAA for vacating an award, there was a lot of

22  discussion about -- you know, they agree that deference was

23  permitted but didn't like the manner in which the tribunal

24  gave the deference.

25           They talked about not liking the tribunal's

1    interpretation of procurement.  And I think this is an

2    example of what the petitioner is really trying to do here

3    is to re-litigate this case.  In the fact sections of both

4    of their principal submissions before this court, they had

5    extensive fact sections in which they only cited the award

6    four times.  What they cited the rest of the time were their

7    own papers in the arbitration.

8         **THE COURT:**  So let's talk about deference for a

9    second.  From your perspective, since deference obviously

10   was something employed by the majority in the tribunal, what

11   issues did they apply deference to?  Where does the

12   deference show up in terms of this proceeding?  Because you

13   obviously argued to them that there should be some

14   deference.  Deference on what?

15        **MR. BALDWIN:**  Well, I think it appears in two

16   places.  It appears one time -- you know, but the -- what

17   the tribunal -- when the tribunal was talking about

18   deference, it wasn't talking about it in the context of the

19   case at large.  It certainly wasn't talking about in the

20   context of procedures.  Where it comes -- and I'm pulling it

21   up, your Honor, where I have it here.  But where it appears,

22   when the tribunal starts to talk about the minimum standard,

23   Article 1105, this is the -- under international law, it's

24   the minimum standard under customary international law or

25   other types of international law -- in this case the treaty,

1   where states are obligated to provide a certain amount of --

2   a certain standard of treatment to investors, to foreign

3   investors.

4           And that's what we're talking about here.  So it

5   wasn't done to the whole case.  And when the tribunal

6   started this Article 1105 discussion, they mentioned that

7   they have to follow this international law principle --

8   which you saw the many cases we submitted where it shows

9   that principle allowing deference.  So it was --

10          **THE COURT:**  Is it a deference on facts?  Is there

11  some deference that is being applied to what the facts are?

12          **MR. BALDWIN:**  No, there's no deference applied to

13  the facts at all, your Honor.  The deference is merely a

14  chapeau.  It covers -- it's one of the considerations that

15  the tribunal makes when it analyzes the facts under Article

16  1105.  And you'll see it, your Honor, I can --

17          **THE COURT:**  I'm still having the same problem with

18  you that I had with your adversary, and that is identifying

19  exactly what the deference applies to.  It doesn't apply to

20  facts, you're saying the tribunal didn't give deference to

21  Canada on facts that the tribunal found.

22          Does it apply to legal standards?

23          **MR. BALDWIN:**  It doesn't apply to legal standard,

24  it's a condition -- so under -- I'll try to do this again,

25  hopefully better answer your question, your Honor.  Because

1    this Article 1105 is a minimum standard.  It otherwise might

2    be referred to as fair and equitable treatment or how people

3    treat people fairly or equitably.

4          So the issue is when you look at it, one of the

5    considerations -- it's not the only consideration, but one

6    of the considerations is that states are entitled to

7    deference.  How that plays out in -- whether you call it a

8    legal standard, I would call it a consideration.  Because

9    how that plays out in the analysis is when they're looking

10    at a fact and they say well, you know, Canada did X or

11    Canada did Y, they look at that measure -- you know, measure

12    it might be called.  And then they say well, if this is the

13    measure, is this something that goes -- that breaches the

14    minimum standard.  The minimum standard is the floor

15    obviously by its name.  Did this treatment go below the

16    minimum standard.

17         **THE COURT:**  I'm not understanding.  So the example

18    you're giving where Canada says X and Mesa says Y factually,

19    you're saying that somehow the tribunal gives Canada the

20    benefit of the doubt and deference on whether it's X or Y?

21         **MR. BALDWIN:**  No, your Honor.  This has absolutely

22    zero to do with facts.  And the reason --

23         **THE COURT:**  Then what does it have to do with?

24    Not facts, not really a legal standard, but instead it's

25    what and how you does it play out here?

1      **MR. BALDWIN:**  When you're analyzing whether a fact

2   falls below that minimum standard, where you set the

3   minimum -- the minimum standard has to be set somewhere.

4   You can imagine it going up and down or whatever.  It

5   doesn't really move technically.

6          **THE COURT:**  It's a legal standard?

7          **MR. BALDWIN:**  The minimum standard is a

8   substantive provision of NAFTA, and it's an international

9   law recognized provision too.  So it's a provision of

10  minimum treatment, of minimum standard that has to be

11  afforded.  And in this case, if you look at what the minimum

12  standard is saying, what the deference is is essentially

13  applying where that bar, where the standard will be.  So in

14  a part, it's a consideration that goes into decide whether a

15  particular fact is done.

16          And I think the discussion of Chevron -- if I

17  could get back to that because I think it's useful.  This is

18  not the same thing as Chevron -- and I'll point out that the

19  arbitrators in this case were not American, and I doubt they

20  would know anything about Chevron other than perhaps where

21  they get their petroleum.  But I'll say that with regard to

22  the Chevron decision, the analog does kind of work.  Because

23  when you're determining whether there's been a violation by

24  an administrative body, you give that administrative body

25  some deference.  And if you look -- it sounded to me like

1    you had read the award, all 181 pages pretty well.  If you

2    look at what happens in the award, those are the issues.  It

3    talks about some of the -- it talks about the issues that if

4    it's a mistake or second guess or some of those words.  You

5    know, the tribunal -- in this case, I think it might

6    manifest itself in such a way that the tribunal might say

7    well, we wouldn't agree necessarily that that was a smart

8    decision.  Maybe we wouldn't have done that decision.  Maybe

9    it's a self-defeating decision by the government -- not that

10   any of that was the case here.  But a tribunal could believe

11   that and still find that that treatment doesn't go below the

12   minimum standard.  Because the deference allows the

13   government to make mistakes.

14            **THE COURT:**  To make those policy judgments even if

15   they're erroneous?

16            **MR. BALDWIN:**  Right.  And I'll point something

17   else out.  You know, given the sort of analog to Chevron and

18   some of the other doctrines we have in the United States

19   where this sort of deference to a government decision is

20   given or deference to a government actor is given in lots of

21   different cases, by incorporating this idea that the

22   petitioner is trying to argue that there shouldn't really be

23   any deference in that every decision should be judged almost

24   from the beginning, was it wise, was it smart, did it make a

25   mistake.  That would throw the whole idea of international

1    law, but it would even -- it conflicts with even what we

2    have here domestically.  It's a pretty known concept that

3    governments are given some leeway.

4            **THE COURT:**  So some leeway, some deference, but

5    I'm always looking for limiting propositions to make sure

6    that something doesn't go too far.  So where is the line

7    that can't be crossed?  Where is the line that a tribunal

8    would not give deference to the government on?  Or is it the

9    case that anything that Ontario did here wouldn't cross the

10   line of 1105?

11           **MR. BALDWIN:**  No, that's certainly not the case.

12           **THE COURT:**  Give me an example of what would cross

13   the line and wouldn't receive deference.

14           **MR. BALDWIN:**  What would cross the line would be

15   an example of if a state were to -- if somebody had built a

16   flour factory and the state brought in armed guards to seize

17   the flour factory and imprison the executives without a

18   basis to do so -- I'm giving you a more extreme example.

19           **THE COURT:**  That's an extreme example.  Now try to

20   use the context of this case and give me an example of what

21   Ontario might have chosen to do that perhaps would go beyond

22   and wouldn't be permissible boosted by deference.

23           **MR. BALDWIN:**  I'll do so, your Honor.  I think

24   that we should be reminded obviously of the purpose here,

25   which you well know, which is to decide whether or not that

1   the tribunal -- whether or not the bases under section 10 of

2   the FAA apply in terms of vacating the award, none of which

3   talk about whether or not the tribunal got the standard

4   wrong or whether they were above or below the line.  I mean,

5   I think this discussion is interesting personally to be

6   candid, but I think it doesn't serve well the purpose of

7   that.

8           Having given that proviso, I think for example had

9   Ontario -- which I know my friends here in Ontario would not

10  do.  But had Ontario given a contract to Mesa and Mesa had

11  invested a lot of money because of that contract, and had

12  Canada given repeated assurances that yes, we want you to

13  come in, we want you to build this, we want you to build

14  that, here's your contract.  Mesa spends a bunch of money,

15  foregoes other projects, and then Canada brings the armed

16  guards in, takes that away -- or not even armed guards, they

17  just -- they rip up the contract -- Ontario rips up the

18  contract and gives it to somebody, a local person --

19          **THE COURT:**  But isn't that basically what they're

20  arguing, that Ontario partially ripped up the contract by

21  giving some of the business secretly to someone else from

22  Korea?

23          **MR. BALDWIN:**  Well, your Honor, they made these

24  arguments about the secret thing before the tribunal, and

25  the tribunal rejected that.  I'm happy to have my co-counsel

1   here Shane Spelliscy, who did the case for the government,

2   come up and talk about those.  Those were their arguments.

3   They're simply making these arguments again.  They made

4   those arguments, the tribunal rejected them.  As a factual

5   matter, the tribunal rejected them.

6          **THE COURT:**  Okay, I understand that, but I'm still

7   looking for sort of this limiting proposition.  What goes

8   too far?  Is there something the government could do that

9   would go too far and wouldn't get them -- wouldn't receive

10  deference and therefore be okay?

11         **MR. BALDWIN:**  I think let me reframe that

12  question, your Honor, because they're always due the

13  deference.  Because it's not -- you don't receive the

14  deference because you did a good act or not receive the

15  deference because you did a bad act.  The deference is

16  always there.  The question is whether or not considering

17  the deference you have violated the minimum standard.

18  That's really what we're talking about here.

19         And I would say it would be the same if somebody,

20  you know, were asking you well, what does it take to show

21  that a party acted in bad faith, you know, what are the

22  requirements you would have to show that.  Well, you could

23  give some examples.  But I think it would be hard to have a

24  precise limiting proposition.

25         These are why -- this case lasted five years,

1    almost five years.  The tribunal sat.  There was a thousand

2    exhibits.  There was a five or six day hearing.  The

3    tribunal wrote this 181 page opinion in which painstakingly

4    they analyzed all these assertions, and went into not

5    talking about deference for all of them but analyzing the

6    facts and then determining whether there was a violation.

7    Each one of those they considered.

8         It's hard in the abstract to say, well, what is

9    above or below the standard.  These are the things that we

10   have judges and we have in this case tribunals for, to make

11   those determinations.  Because what's unfair and

12   inequitable, what breaches the minimum standard.  I could

13   walk in here with a stack of legal books that would fill up

14   this entire wall that were all written in the past five

15   years about what's the minimum standard.  Some tribunals

16   find some things to breach it, other tribunals don't.  It's

17   such a fact specific inquiry.

18        **THE COURT:**  I know.  But the worry here if you

19   haven't gleaned it thus far is that unless there's some

20   limiting principle, then we may be getting into a situation

21   where the deference that is accorded to Canada for its

22   policy decisions in this arena basically is going to protect

23   completely the government's procurement decisions from all

24   scrutiny.

25        **MR. BALDWIN:**  Well, your Honor, that's not the

1    case here.  That's certainly not the case with this award.

2    I've done lots of investor state awards in cases.  I've

3    never seen a tribunal do that.  I suppose it could happen.

4    And if that case is before you, I would think that you would

5    probably give thought to that if it was complete deference

6    with regard to the decisions.

7              But that's certainly not what happened here.

8    There was two discussions of deference in the award.  There

9    was one as a chapeau to the overall discussion of 1105, and

10   then there was another one which is in -- let me find it

11   here, your Honor.  There was another one which was in a

12   specific discussion that is on -- excuse me.  And as they're

13   going through, just one of the many assertions they talk

14   again about the deference afforded.  So there's a general

15   idea that there's deference, but the question is did this

16   somehow, you know, mean that they didn't analyze it?  No,

17   they analyzed it.  They looked at every decision.

18             And if you look at the factual findings of the

19   tribunal, the tribunal that listened to these witnesses and

20   sat there for days and read the witness statements and did

21   all these other things, the tribunals go through that

22   painstakingly to address all the factual determinations.

23   And what they state in many of those cases is we don't agree

24   with what they said.  They didn't agree there was a secret

25   agreement.

1          **THE COURT:**  They write that this effectively was

2    to shift the burden of proof, and that that is an area where

3    courts on some occasions have had problems with what

4    arbitrators have done.

5          **MR. BALDWIN:**  Your Honor, I think that it's a

6    complete misunderstanding of burden of proof.  I don't know

7    if they're talking about burden of proof or standard of

8    proof.  I will say as the claimant in an arbitration, they

9    have the burden of proof to prove the allegations that they

10   make.  That's their burden just as it would be here in this

11   court.  Same principle.  So they always have the burden to

12   prove.

13          If they're talking about a standard of proof --

14   which is something a little bit --

15          **THE COURT:**  I think it's more appropriate to say a

16   standard of proof rather than a burden of proof.

17          **MR. BALDWIN:**  If they're talking about a standard

18   of proof, that's not reflected in what this deference is.

19   It doesn't require them to -- it doesn't require them to --

20   you know, it doesn't change it from a preponderance to some

21   heightened standard to beyond a reasonable doubt or clear

22   and convincing.  All it does -- all this deference does is

23   when the tribunal's trying to figure out is this measure by

24   the government below or above the minimum standard --

25          **THE COURT:**  But could the tribunal have applied

1    and used as authority to apply by analogy Chevron deference

2    here, and would that be okay?  Is that the kind of deference

3    that's okay?

4              **MR. BALDWIN:**  It's similar.  It's not exact, but

5    it's similar.  But look, if a tribunal wrote that there was

6    an analog in U.S. law to Chevron or something else, I think

7    it would be an okay analog.  It's not the same thing.  But

8    because international law is separate, functions as its own,

9    there's no doubt this deference is there, there's no doubt

10   that it gets applied routinely, that the U.S. has urged it

11   applied and the U.S. has benefitted from it.

12             **THE COURT:**  Give me your best crack -- I mean,

13   Chevron is one definition of deference.  Give me your best

14   crack at what deference is in this context, define it for

15   me.  Just using the term deference doesn't seem to me to get

16   us there.  What is it?

17             **MR. BALDWIN:**  Deference in this case -- and that's

18   the only time I'll use the word deference for this.

19   Deference in this instance, in international law, is where a

20   tribunal does not second guess the wisdom of a regulatory

21   decision or the wisdom of a state action in a particular

22   thing.  It doesn't find -- it means that mistakes which

23   don't rise above the minimum standard and don't create this

24   extraordinary standard that there is for the minimum

25   standard and don't rise above that level, that those

1    mistakes don't count against the government.  That the

2    government is allowed -- to put it another way, similar to

3    doctrines here in the U.S., the government's allowed to make

4    mistakes.  The government's allowed to make unwise

5    decisions.

6            That didn't happen here, but the government's

7    allowed to do that.  And even when the government does that,

8    it doesn't go below the minimum standard.  So deference is

9    about the ability of regulators to have some space to be

10   able to make mistakes and to make misjudgments even.

11           **THE COURT:**  What about policy judgments?

12           **MR. BALDWIN:**  And policy judgments, policy

13   judgments, policy priorities, you know, some of those issues

14   they're allowed to make.  And, and in many circumstances,

15   you can foresee circumstances where this wouldn't be the

16   case, states are allowed to change their mind.  There are

17   reasons when changing their mind might actually violate the

18   treaty.  Certainly it didn't happen here, but that's where

19   the deference comes in.

20           **THE COURT:**  Alright, go ahead.

21           **MR. BALDWIN:**  With regard to this deference issue,

22   one thing that I think is very important to discuss is that

23   the petitioner never raised this issue in the proceeding.

24   Canada in its counter-memorial -- in these proceedings a

25   counter-memorial is your first substantive proceeding.  In

1    their counter-memorial, Canada raised the deference issue.

2           The petitioner had multiple opportunities in

3    written pleadings, at the hearing and including a very

4    extensive post hearing brief, they had the opportunities to

5    argue that deference shouldn't be applied in this case or

6    even to tell the tribunal how they thought it should be

7    applied, and why even if you applied it, and they didn't do

8    that.  And it's then not for this -- it's improper for them

9    to come before this court having not raised this issue and

10   pretend -- or to act as if now this court should decide the

11   deference issue when they never did.

12          I'll note that the U.S. submitted a brief in this

13   case, an amicus sort of brief in this case which they often

14   always do in NAFTA or CAFTA cases.  The U.S. asserted this

15   deference proposal as well.  They never replied or responded

16   to the U.S. assertion that deference here was paid.  I think

17   that's a factor that --

18          **THE COURT:**  Is there any difference between the

19   positions of Canada and the United States on the deference

20   question?

21          **MR. BALDWIN:**  I don't think there's any question

22   as to that interpretation -- or that deference exists

23   and how it fits in the framework of --

24          **THE COURT:**  I don't mean how it's applied because

25   the United States wouldn't be speaking to that as much, but

1     is there any difference with respect to the fact that there

2     is deference and what that deference in general terms is?

3          **MR. BALDWIN:**  No, I think it's pretty well

4     understood in international law.  And when the U.S. speaks

5     about it, it has the same -- it might use different words,

6     but the flavor of it is essentially the same as our friends

7     in Canada.

8          **THE COURT:**  Okay, you better move to procurement.

9          **MR. BALDWIN:**  Okay.

10          **THE COURT:**  I mean, in its starkest form, the

11     argument presented here is that there were seven words that

12     are the texts being interpreted here, and the tribunal

13     disregarded six of them and focused only on one word.

14          Why isn't that -- why doesn't that go beyond

15     interpretation and instead is ignoring the text?

16          **MR. BALDWIN:**  Well, your Honor, the reason why is

17     that that's not what the tribunal did.  They didn't ignore

18     it.  And you could see it actually when the petitioner had

19     it up on the board.  One of the things that counsel said

20     here for petitioner was they said that the way that the

21     tribunal interpreted government procurement made no sense.

22     That's their real argument is that there's not that issue --

23     that they didn't like the interpretation.  But that's not

24     actually what happened.

25          If we go to the tribunal's interpretation of the

1   procurement itself -- and by the way, your Honor, before we

2   get to that, I will say that even if the tribunal had left

3   off or had -- maybe if they -- they did not here, but if

4   they had failed in that interpretation, that would come

5   nowhere near to the level that they need to get these bases.

6   It's an interpretation of a provision.  They spent 24 pages

7   analyzing this procurement provision.  And what they said

8   when the --

9           **THE COURT:**  You can spend 24 pages saying we're

10  going to ignore the text of the statute, that wouldn't make

11  it permissible.

12          **MR. BALDWIN:**  Well, you'd have to say it a lot of

13  times to get to 24 pages.  No, you're right, the length of

14  it alone is not there.  But they went through a painstaking

15  part of it.  But, you know, I'll tell though that --

16  actually, I will take slight exception to that too.  Because

17  I think even if they looked at -- if a tribunal were to look

18  at a provision in a contract and say well, you know -- and

19  I'm not talking about all provisions.  But if you look at a

20  provision like this in a contract and you're deciding about

21  it, and the tribunal looks at it and says well, we think

22  these words matter more than these words or these words

23  really tell us all we need to know and these other ones

24  really don't matter, that's not what happened here.  Even if

25  that did happen, what basis of the FAA does that violate?

1    How does that rise to the level of vacating an award?  I

2    don't believe that it does.

3         But getting back to the majority award at

4    paragraph 421 that petitioner put up here.  The tribunal in

5    paragraph 421 states that, "In its view" -- this its

6    analysis, "In its view, it makes no difference to the

7    analysis above whether one focuses upon the single word

8    procurement or the phrase procurement by a party or state

9    enterprise.  The words 'by a party or state enterprise'

10   identify the entities involved" -- that's an analysis of the

11   provision, "but do not change the nature of the activity

12   itself - which in this context assumes a state party or

13   state enterprise in any event."

14        So that's a very important thing.  They did

15   actually analyze it.  What they found was that the words "by

16   a party or state enterprise" identified the entities, and

17   that it -- because this is a NAFTA case in which we're

18   talking about -- people are bringing claims against

19   government action, it identifies who those parties -- you

20   know, it identifies the entities in the procurement.

21        Another thing I'll say that I think is important,

22   your Honor -- and this is -- really as I said, I feel like

23   this is in essence going way beyond the issues of whether

24   this should be vacated.  But I will say that the phrase "by

25   a party or state enterprise," it's an "or."  So if anything,

1    it's a broadening aspect of who might be the procurer in

2    this case.  So it might be relevant the way you can look at

3    it and say -- I mean, it's not relevant because it changes

4    the complete definition.  But it is relevant as to better

5    understand or to include a state enterprise.  Because NAFTA

6    is signed by a party, right, does that mean that a state

7    enterprise would necessarily be included in this

8    procurement?  Maybe not if it didn't say "or state

9    enterprise."  People would spend years in tribunals -- years

10   before tribunals arguing those same issues.

11            So but these are all -- these all go --

12            **THE COURT:**  As opposed to the years that you all

13   have spent before a tribunal arguing similar issues.

14            **MR. BALDWIN:**  Right, they would just be different

15   issues.  There would be more issues to argue and the award

16   could have been 231 pages instead of 181 pages.  But that's

17   not the case here because you don't have those sort of

18   arguments because there's some clarity.

19            But the point is that they did exactly that.  They

20   interpreted it.  They said what they thought the words mean.

21   They said how it was understood in the context of it.  And

22   you know what, they did that after extensive, extensive

23   submissions by the parties here.  They did that by listening

24   to that, considering the arguments and this is the

25   conclusion that they came to interpreting precisely what all

1    these words mean.

2         Your Honor, I want to move just for a second to

3    the ADF case, because it was mentioned here.  And the ADF

4    case was one as well where this procurement carve out or

5    exception was applied.

6         **THE COURT:**  And there seems to be a variety of

7    perspectives on the ADF case from you, from your

8    adversaries, from the tribunal, from the dissenting opinion.

9    So go ahead.

10        **MR. BALDWIN:**  Well, let me just explain why it's

11   not procurement or why you could at least argue it's not

12   procurement in some sense or another.  And the reason it's

13   not -- or the reason you could argue it's not is it was

14   Virginia Department of Transportation, okay, putting out a

15   contract for something.  There was a determination made that

16   the Buy America First, you know, law applied to this

17   contract.  So what happened was is that the contractor,

18   okay, obviously had to comply and fit with the Buy America

19   law.  But the subcontractor did too.

20        So the ADF was not selling anything to the

21   government, not a service, not a product.  ADF was a steel

22   supplier.  ADF wasn't selling to the government.  ADF was a

23   subcontractor.  They were selling to a contractor who did to

24   the government.  One could imagine the same argument being

25   there.  Is that procurement by a party or a state

1    enterprise?  Well, the ADF tribunal found they did.  And

2    because of that, the United States avoided liability.

3           This procurement exception was designed to give

4    the free NAFTA states the ability to do things, to have this

5    freedom with regard to procurement type of activities.  And

6    the U.S. benefitted from it, and because it applied and it

7    really did apply.  Even if it didn't -- even if they were

8    wrong, it wouldn't raise to the level of vacating it by any

9    means.  But in this case, the tribunal was actually right.

10   Because you can read -- I won't go over it again, it's 28

11   pages of analysis.  But it discusses in painstaking detail

12   why this was a procurement and why it mattered.

13          And I'll note in that same section that the

14   petitioner here, they don't like the definition.  And so the

15   petitioner in this brief -- in their brief, in their

16   opposition -- or their petition to vacate put forth their

17   own definition.  They said that they didn't like the

18   tribunal's interpretation of procurement.  And instead, they

19   offered up a new one to you in the thing.  And it came from

20   businessdictionary.com.  That's the quote they used to

21   describe what they thought procurement was.  And then they

22   gave another definition from a website called

23   definitions.net.  And I can only assume definitions.com

24   didn't give them the answer they want, so they had to go to

25   definitions.net.  This is where we're at in this proceeding

1    where you're given alternative definitions of procurement

2    from websites, and that's supposed to be the basis of you

3    deciding that the tribunal -- that your definition would

4    have been different than the tribunal's.  This is an

5    interpretive issue that relates to those specific issues.

6              **THE COURT:**  If it's an interpretive issue, that's

7    the end of the matter in your view, because it's not up to

8    the Court to disturb an arbitration tribunal's resolution of

9    an interpretation.  It might be wrong, it might be right,

10   but it's not up to me to second guess that?

11             **MR. BALDWIN:**  I think that's correct, when there's

12   an interpretation --

13             **THE COURT:**  Even if I believe that Judge Brower is

14   correct, that should not win the case for Mesa?

15             **MR. BALDWIN:**  No, because it would be like the

16   dissenting opinions, we have our -- we have nine very

17   esteemed jurists on the Supreme Court.  Oftentimes five find

18   themselves on one side and four on the other.  The law is

19   what the five say it is, not what the four say it is.  Judge

20   Brower has his views.  He's certainly a distinguished

21   jurist, we don't take exception with that.

22             **THE COURT:**  I don't sit in review of many Supreme

23   Court decisions.

24             **MR. BALDWIN:**  Thank you, your Honor.  But we

25   believe that once -- if the tribunal is making that

1    interpretation, even if they are completely wrong -- and

2    they're not here.  But even if they were so completely

3    wrong, you know, they're making the interpretation, it's up

4    for them to decide.

5         Again, I'll just go back to this last thing in

6    closing, and that is when the Court is thinking about the

7    allegations that are made here which are really about

8    interpretation and not agreeing with how the tribunal

9    conducted its analysis, but even when they tried to shoehorn

10   it into other things, say it made it procedurally unfair or

11   something, you know, you have to go back to section 10 sub A

12   of the FAA and look at what the actual bases for vacating an

13   award are and see do those fit into those.  They don't.

14        And you saw the petitioner up here, you listened

15   to him and you can read the briefs, this is all through the

16   briefs where they cite -- they then -- they say look, there

17   was a violation here, and then they cite a bunch of cases.

18   They even say there were similar results in all these cases

19   or similar situations in all these cases.  Then they cite

20   cases about a person not getting a hearing when there was a

21   compelling reason for them to do so, ex parte communications

22   to a tribunal that ended up being part of the award.  These

23   are the things they cite to none of which has to do with

24   questioning whether a tribunal got it right or whether there

25   was a question of analysis or anything like that.  These

1    cases that they bring forth are completely inapposite I

2    think to what we have here.   Thank you, your Honor.

3        **THE COURT:**  Before you sit down, if you want to

4    take a crack at it, what is the bad faith that you're

5    asserting that Mesa has engaged in that would entitle you to

6    attorney's fees?  This is a matter that took the tribunal

7    190 pages or whatever it exactly is to resolve, and that the

8    parties have submitted probably 150 pages of briefs on.

9        Are you really of the view that their petition to

10   vacate the arbitration -- the tribunal's award is in bad

11   faith that would entitle you to attorney's fees even if I

12   rule in your favor?

13       **MR. BALDWIN:**  Your Honor, what's important to us

14   is that, you know, the Court apply the FAA -- you know,

15   apply the bases for vacating the award is proper.  But I

16   will tell you --

17       **THE COURT:**  But if I do that, if I do what you

18   want and rule in your favor, I then have to resolve your

19   request for attorney's fees.  Do you want to give me

20   something that you think would lead me to resolve it in your

21   favor or should I just one line deny it?

22       **MR. BALDWIN:**  No, I would certainly like to give

23   you something in our favor.  I will tell you that when we

24   reviewed the petition on this nice summer day last year, we

25   were looking at it and I was admittedly shocked.   Because

1    the arguments we have now have changed dramatically.  The

2    arguments now -- because they really had no choice, are that

3    deference was misapplied or the tribunal didn't give -- you

4    know, gave too much.  You know, it seems to be a little bit

5    unclear, but this is generally their thing.

6              In their initial petition which our opposition

7    came after, there was an argument in there that deference

8    was not a principle of international law.  They stated that

9    there was no -- they said look, deference applies in

10   domestic contexts and they mentioned -- they didn't mention

11   Chevron, but they mentioned one of the deference rules.

12             **THE COURT:**  Let's assume you're right in your

13   characterization -- well, no, in your description of that.

14   Does that add up to bad faith?

15             **MR. BALDWIN:**  Well, what it is is that the issue I

16   think that the Court should consider in determining this

17   issue of bad faith is that we have experienced counsel in

18   this case who did the arbitration and are who here -- and

19   are with us as well.  You know, this idea of deference could

20   not be more well-established as a principle in international

21   law.  To come before this court and say you should vacate an

22   award that took so long to do and subject the government of

23   Canada to extensive -- and subject Canada to this case and

24   all these arguments --

25             **THE COURT:**  Let's fine tune that, let's not take

1    anymore time on this.  Anything further?

2              **MR. BALDWIN:**  No.  Thank you, your Honor.

3              **THE COURT:**  Thank you.  A couple of minutes of

4    rebuttal.

5              **MR. MULLINS:**  Your Honor, can I split my time with

6    my esteemed colleague Mr. Appleton?

7              **THE COURT:**  Sure.  How much time do you think

8    you're splitting?

9              **MR. MULLINS:**  Well, I thought we had 10 minutes.

10             **THE COURT:**  Well, you don't have 10 minutes left

11   because you used more than 20 minutes.  But I'll give you a

12   few minutes and you can split it.

13             **MR. MULLINS:**  He's been pro hac'd in.  We'll start

14   with Mr. Appleton.

15             **MR. APPLETON:**  Thank you, your Honor.  I thought

16   we might address the question that you raised specifically

17   about trying to identify a bright line test about deference.

18   And I think maybe we might look at where deference was in

19   the record.  I think those are two issues that might be very

20   relevant to address.

21             First of all, let's look at the issue of where

22   deference was in the record.  It's in one spot.  It was

23   pleaded in by Canada in relation to the SDMyers case, a case

24   actually where I was lead counsel in as well.  And it's

25   referenced in the response pages 25 and 26 in this record.

1       And here the Court -- I can put it I guess on the Elmo.

2       It's this one up here, "The determination must be made in

3       the light of a high measure of deference, that international

4       law generally extends to the right of domestic authorities

5       to regulate matters within their own borders."  That's the

6       only reference to deference.

7               And fundamentally, what does that mean?  Because

8       we don't really disagree with what that is.  The question is

9       what is that deference, what is that test?  And what would

10      be meaningful, obviously we never would agree to a process

11      that would never allow an international arbitration panel

12      under international law -- which applies for Americans if

13      they're operating under NAFTA in Canada, the same law would

14      apply in cases in Latin America.  We would never agree to

15      something that said that anything a government says must be

16      correct, self-judged, and that a trier of fact can't assess.

17              So if we look at the NAFTA, we see right in its

18      texts what some of those bright line test are.  And I'll

19      just bring your attention to those.  My colleague started on

20      that, but he didn't get a chance to show it to you.

21              **THE COURT:**  But how did the deference go beyond

22      what is permissible deference in this case?

23              **MR. APPLETON:**  This is the permissible deference.

24      So let's look at the second -- let's look at the first one

25      here, that's the easiest one.

1          **THE COURT:**  What is it that you have up on the

2     screen?

3          **MR. APPLETON:**  This is in Exhibit 5, this is

4     Article 1111 of the NAFTA.  This talks about formalities.

5     It says that you can do whatever you want as a government

6     provided that such formalities do not materially impair the

7     protections afforded to a party, to investors of another

8     party.

9          In other words, governments can do what they want

10    and they organize the states to the extent it's not

11    otherwise inconsistent with the treaty.  Here's another

12    example in Article 1109.  Same idea, the idea of deference.

13    It says in paragraph three -- this is with respect to

14    transfers, Article 1109 at sub five is what we're

15    referencing, that you can impose the measures that you want

16    through equitable, nondiscriminatory and good faith

17    application of your law.

18          That is the nature of the deference.  The

19    deference that's here is deference is the ability to

20    organize itself subject to not otherwise being inconsistent

21    with the obligations of the NAFTA.  And those include

22    obligations for the protection of due process.  And

23    specifically in this case because of the terms of the NAFTA,

24    and under Article 1115 and the terms of the UNCITRAL rules

25    which are Exhibit 6 -- and that's article 15 of Exhibit 6,

1    you have to have due process in one and equality of the

2    disputing parties in the other.

3         And when you have a process that offends the

4    equality of the parties, that's when there's a problem.

5    Because you can do anything you want under this process, the

6    tribunal can, as long as it provides equality to the

7    disputing parties.  So the deference that is permitted is

8    deference for you to organize what you want, but it isn't a

9    question that you have to bring in your military and seize

10   somebody.  It has to be did you do a public process for the

11   procurement for example in this case or public process that

12   would be with respect to how you would allocate transmission

13   access to the grid and not fairly allow people access to the

14   rules that you announced.  That would be the definition that

15   my friend already said.

16        **THE COURT:**  Equitable and fair usually is a

17   comparative assessment, equitable compared to something else

18   or someone else, and fair in the same way.

19        How is that playing out here?  Is it treating

20   those who are in the FIT program fairly and equitably given

21   that there's this other program, the GEIA?  What is the

22   equitable treatment?

23        **MR. APPLETON:**  Well, first of all, in the UNCITRAL

24   treaties, we tend to separate comparative treatment with the

25   anti-discrimination norms, Article 1102 and 1103, rather

1    than here.  But we do look at a comparator.  Here the

2    question would be fundamentally there's a public program

3    with public assurances saying that all the available

4    transmissions are going to be made available here.  Then

5    there's a secret program taking it away from it on a sole

6    source basis that nobody knows about.  That was in the words

7    of Judge Brower completely wrong.

8           And to answer the second question you asked and

9    was raised by our friends as well, the issue that was never

10    focused on by this tribunal, the one issue where they gave

11    total deference without looking was that issue pointed out

12    by Judge Brower.  That was the critical issue raised in this

13    case.

14           So on the critical issue where we had no knowledge

15    whatsoever in advance that they were going to do this, it's

16    never been applied in this way previously -- and that's not

17    what deference means.  Deference doesn't mean anything the

18    state says is good.  Deference must have limits, and the

19    limits are you can do what you want to organize your state

20    provided that you're consistent with the terms of the

21    treaty.

22           I hope that answers your question which was the

23    bright line, because the NAFTA was designed in that way to

24    try to give that sense.  Because the standard that we're

25    talking about, the international law standard of treatment

1    in Article 1105, is not defined for the NAFTA, it's defined

2    for every treaty.  And for Americans, there are 47 treaties

3    around the world where Americans are protected from unfair,

4    inappropriate behavior, often highly discriminatory

5    behavior.  And if a government just says well, we're not

6    discriminating against Americans because they say it rather

7    than giving them the opportunity to factually assess the

8    context, and that's what Judge Brower said you had to do.

9    He said you had to actually look at the facts.  And in this

10   area, the tribunal admits they didn't go there and they

11   didn't make that, they just we think it's rational.

12              **THE COURT:**  Alright, thank you.

13              **MR. APPLETON:**  Thank you.

14              **MR. MULLINS:**  I appreciate the accommodation, your

15   Honor.  Just briefly, what I thought was very, very telling

16   was that counsel in answer to your question says well, does

17   the Chevron standard apply.  And what I didn't hear was

18   anywhere where any tribunal's ever done that.  I didn't hear

19   anybody say this is the kind of deference that we give a

20   reasonableness test.

21              **THE COURT:**  Well, they did say as I said in the

22   question that it could be by analogy, not direct

23   application.

24              **MR. MULLINS:**  Well, they cited it in fact in their

25   own memo, your Honor.  I didn't come up with this, you

1    didn't come up with this, they said akin to Chevron.   This

2    is their own memo, they said it.   And that standard becomes

3    a reasonableness standard, that's what the Chevron standard

4    is.   And that's exactly what the tribunal used,

5    reasonableness.

6          We didn't weight anything.   There's a mention of

7    deference in a throw away line of the tribunal -- I mean by

8    Canada and we briefed this.   There was no extensive

9    arguments by anybody or the tribunal questioning or briefing

10   as to that the Chevron standard was going to apply, there

11   was a presumption of correctness and the reasonableness

12   standard would apply.   The first time we came up with -- we

13   heard about that was when we got this award.   And I haven't

14   heard anybody come in here and tell you here are all these

15   awards where that standard was used.

16          That's the critical point.   Because when you look

17   at the Chevron type standard -- and we cited the Standard

18   Manufacturing case, it becomes a presumption of correctness.

19   It becomes a situation where all of a sudden findings of

20   fact are assumed correct.   And you asked the question well,

21   what exactly was the issue.   Well, the issue if you look at

22   paragraph 575, they point out the GEIA was signed and the

23   FIT program was in place where our clients were expecting to

24   be able to compete.   They point out that the old OPA that

25   was administering this thing was surprised and shocked by

1   this.   The tribunal points out in 577 that they could have

2   gotten out of the GEIA.   When they realized there was so

3   much capacity that they didn't need it, they went forward

4   anyway.   The tribunal points out at 578 that there was an

5   anchor tenant idea and it was ridiculous, because they kept

6   it secret.   It was pointless.

7           They go through all these facts -- that's up to

8   578 -- and this is my point, then at 579 -- that's my point,

9   your Honor, what they say be as it may, all that stuff,

10  those are all policy considerations but for the government

11  of Ontario alone.   That means they stop analyzing it.   They

12  means it's all presumed fine.   No tribunal's ever done that.

13  Then they go on to say it's a rational basis.   That begins

14  stopping what their job they're supposed to do in applying

15  1105 and seeing if there's a violation.   And they didn't do

16  it.   No tribunal's done that, it's inappropriate and it

17  simply was wrong here and it was a presumption of

18  correctness that's never been applied.   And we did cite

19  case, not just cases where people didn't get a chance to

20  testify.   We cited cases where the courts have vacated

21  awards when the wrong standard was basically

22  presumed liability, where you apply the wrong standard of

23  proof.   And I'll point out the Glanis Cove case which was an

24  arbitration award they pointed out where the tribunal

25  specifically says we don't apply national standards of

1    deference in international arbitration.  It's completely

2    pointless.  We're not here -- this is -- we've invested in

3    Canada.  We're taking Canada to an international tribunal to

4    judge their behavior.  We're not judging it to standards as

5    to whether or not -- if I was a Canadian citizen I'm testing

6    some administrative rule they came up with.  We're testing

7    their policies and procedures and how they handled this

8    thing and compared it to 1105.

9             And that, your Honor, is -- I haven't heard from

10   anyone, I didn't certainly hear it from counsel, tell us

11   that that somehow complied with any other award ever.  And

12   that standard was completely inapposite and was a situation

13   where arbitrators engaged in misbehavior under 10(a)(3) and

14   didn't do their job and basically ceded their powers under

15   10(a)(4).  I don't know if you need to hear anymore about

16   procurement.

17            **THE COURT:**  Well, you've got one minute, you can

18   use it how you wish.

19            **MR. MULLINS:**  I'll use one minute -- well, I want

20   to talk about fees.  There's no evidence of bad faith.  Not

21   only is the case not frivolous, we ought to win.  But just

22   on the procurement, we didn't rely on websites, we relied on

23   Article 10 of the NAFTA which defined what government

24   procurement was.  That's what we relied on here.  That's not

25   what the tribunal -- the tribunal rewrote --

1          **THE COURT:**  The tribunal didn't agree with you,

2     but they certainly took a lot of pages to discuss it.

3          **MR. MULLINS:**  They took a lot of pages.  And just

4     like these other tribunal awards where they -- well, you

5     look at where the tribunals actually talked about it.  One

6     arbitrator's deciding -- he's got to figure out what to do

7     with this one employee.  They can't rewrite the agreement.

8     As you pointed out, they can spend as much time as they

9     want, but they can't rewrite the agreement.  It's government

10    procurement, that's what it is.  Not just procurement

11    buying.

12         It doesn't make a difference who's buying it or

13    the subcontractor or the contractor, the point is are you

14    buying it for use of the government.  And chapter 10 of the

15    article of the NAFTA clearly says that buying it for use of

16    the people is not government procurement.  And that's

17    exactly what this was.  They rewrote the treaty just like

18    you're rewriting an arbitration agreement.

19         We ask that the award be vacated.  We ask that it

20    would be sent back to a tribunal that provides the right

21    standard of proof and interpret the treaty correctly.  Thank

22    you very much for your time.

23         **THE COURT:**  Thank you.

24         **MR. BALDWIN:**  Can I comment briefly?

25         **THE COURT:**  Pardon me?

1          **MR. BALDWIN:**  Can I respond briefly?

2          **THE COURT:**  I'll give you two minutes, no more.

3     Try to limit it to anything new that's been raised that you

4     didn't have a chance to respond to before.  I don't want to

5     hear the same things again.

6          **MR. BALDWIN:**  Your Honor, I appreciate that.

7     Again, I think what we heard a lot from both of the counsel

8     over there was discussions about how they disagreed with the

9     interpretation and some other things.  There was one

10    particular discussion about the tribunal's award, and there

11    was a discussion with regard to GEIA that the analysis ended

12    after 579 when there was one paragraph that was discussing

13    about how it's not the tribunal's role to act as an

14    appellate body, et cetera.  I'll point out that that section

15    continued up until page 146 to paragraph 587 and continued

16    to analyze.  And that section is full of an analysis of the

17    facts.

18         With regard to this idea that this tribunal has

19    done something that nobody ever has done before or it

20    applied deference in an unusual or a different way, so what.

21    I mean, it didn't first off.  But how does that rise to the

22    level of what the standards are under the Federal

23    Arbitration Act?  Let's say this tribunal was wrong.  Let's

24    say they did something and they gave more deference than

25    maybe people do.  I don't know how they show that.  They say

1     well, you know, nobody else has done that.  There's hundreds

2     of these awards out there almost all of which talk about

3     deference.

4          So even if the tribunal had made a mistake --

5     which it didn't, it does not rise to the level -- we have to

6     go keeping back to these bases under section 10 of the FAA.

7     Thank you.

8         **THE COURT:**  Again, the problem there is what the

9     limiting principle is.  There has to be a point at which too

10    much deference is given, agreed, more than is permitted

11    under the law?

12         **MR. BALDWIN:**  Your Honor, I actually don't agree.

13    I'll tell you why I don't.  First off, totally this

14    definitely isn't the case.

15         **THE COURT:**  So Canada can do whatever it wants in

16    these settings, and as long as the tribunal upholds it

17    that's the end of the issue, it's not for the Court to

18    second guess?

19         **MR. BALDWIN:**  No, your Honor, that's not the case.

20    If there was a case where a tribunal said look, we defer to

21    any decision that Canada did, end of award, let's all go

22    home and have a drink, okay.  That I think would present a

23    different issue.  But my point is even if that were the

24    issue, even if that were the result, what is -- what basis

25    is that?  That's the tribunal's determination.  It's the law

1    they applied.  Does it violate a procedural issue of the

2    parties?

3            THE COURT:  You started off saying that wouldn't

4    be up okay but wound up saying it would be okay.

5            MR. BALDWIN:  Well, what I mean by it would be

6    okay, in a case where the amount of deference that is

7    applied, it's hard for me to see how that could fit into a

8    basis to vacate the award unless there was something else

9    that went along with it that created this procedural

10   unfairness.  That's the tribunal's determination.  They sat

11   in that case and dealt with that case for five years.  They

12   listened to the law on both sides.

13           When you get to a manifest disregard of law for

14   example -- which is the only one I really think it might

15   sort of fit into -- which doesn't apply in this circuit,

16   it's not binding precedent in this circuit certainly.  But

17   if that were the case, even then they're not saying look, we

18   know that we shouldn't apply any deference.  We know we're

19   not allowed to, but we're going to do it anyway because we

20   feel like it.  That's not what you have here.

21           So even if they said look, we're going to apply

22   complete deference to Canada's actions, that's it.  You have

23   to remember, your Honor, the tribunal is not a random --

24   it's not like getting a random judge, some of which are

25   better than others.  Instead, a tribunal is picked by the

1    parties.  It's the parties' selections on tribunal.  So you

2    wouldn't have in this case such an egregious example,

3    because the parties picked experienced people.  They have

4    control over who's going to decide their fate just as they

5    did here.  So it's an example that would never arise.  But

6    if it did arise, I would just question whether or not it

7    would meet one of the grounds to vacate.

8              **THE COURT:**  Alright, thank you very much.  The

9    matter is submitted.  I can't promise you when this randomly

10   selected judge will decide the case, but it will be sometime

11   in the future.  Thank you.

12        (Proceedings adjourned at 3:39 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

## C E R T I F I C A T E

        I, **Jeff M. Hook, CSR, RPR,** certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


    July 21, 2017                                     

          **DATE**                          **Jeff M. Hook, CSR, RPR**

**'**

**'by [1]**   46/9

**0**

**0G2 [1]**   2/9

**1**

**10 [16]**   4/7 9/20 22/21
 22/22 26/16 26/19 26/20
 36/1 51/11 54/9 54/10
 62/13 62/15 62/23 63/14
 65/6
**1001 [1]**   1/18
**1101 [2]**   1/4 3/3
**1102 [1]**   57/25
**1103 [1]**   57/25
**1105 [20]**   4/17 5/6 6/7 7/2
 7/16 7/16 8/19 8/19 8/22
 12/17 15/18 30/23 31/6
 31/16 32/1 35/10 39/9 59/1
 61/15 62/8
**1108 [1]**   16/17
**1109 [2]**   56/12 56/14
**1111 [1]**   56/4
**1115 [2]**   10/12 56/24
**1120 [2]**   10/5 10/8
**125 [1]**   2/8
**146 [1]**   64/15
**15 [1]**   56/25
**15-1 [1]**   10/14
**150 [1]**   52/8
**16-1101 [1]**   3/3
**1800 [1]**   1/21
**181 [3]**   34/1 38/3 47/16
**1899 [1]**   1/14
**190 [2]**   7/18 52/7
**1:16-cv-1101 [1]**   1/4
**1M2 [1]**   1/22

**2**

**20 [1]**   54/11
**20001 [1]**   2/14
**20006 [2]**   1/15 2/5
**2017 [1]**   1/5
**231 [1]**   47/16
**24 [3]**   45/6 45/9 45/13
**25 [1]**   54/25
**26 [1]**   54/25
**28 [1]**   49/10
**2:08 [1]**   1/6

**3**

**30 [1]**   4/2
**33131 [1]**   1/18
**333 [1]**   2/13
**3:39 p.m [1]**   67/12

**4**

**40 [1]**   4/2
**421 [2]**   46/4 46/5
**47 [1]**   59/2
**4700-C [1]**   2/14

**5**

**500 [2]**   6/7 12/1
**571 [1]**   10/23
**575 [1]**   60/22
**577 [1]**   61/1
**578 [3]**   10/23 61/4 61/8
**579 [5]**   6/12 9/8 10/22

**6**

61/8 64/12
**587 [1]**   64/15

**6**

**600 [1]**   1/15

**7**

**77 [1]**   1/21

**8**

**815 [1]**   2/4

**9**

**9th [1]**   1/18

**A**

**a sovereign [1]**   11/8
**A.H [2]**   15/11 26/22
**ability [3]**   42/9 49/4
 56/19
**able [7]**   11/12 11/13 26/15
 26/21 26/24 42/10 60/24
**about [56]**   5/24 5/25 6/1
 6/4 11/3 16/6 16/8 19/24
 22/9 26/16 27/22 28/19
 29/20 29/22 29/25 30/8
 30/17 30/18 30/19 30/22
 31/4 33/20 34/3 34/3 36/3
 36/24 37/2 37/18 38/5
 38/15 39/14 40/7 40/13
 40/17 42/9 42/11 44/5
 45/19 45/20 46/18 51/6
 51/7 51/20 54/17 54/17
 56/4 58/6 58/25 60/13
 62/15 62/20 63/5 64/8
 64/10 64/13 65/2
**above [7]**   36/4 38/9 40/24
 41/23 41/25 46/7 68/5
**above-entitled [1]**   68/5
**absolutely [2]**   22/16 32/21
**abstract [1]**   38/8
**access [2]**   57/13 57/13
**accommodation [1]**   59/14
**accorded [1]**   38/21
**acknowledged [1]**   13/24
**act [5]**   37/14 37/15 43/10
 64/13 64/23
**acted [1]**   37/21
**action [5]**   1/3 3/2 21/6
 41/21 46/19
**actions [1]**   66/22
**activities [2]**   18/1 49/5
**activity [1]**   46/11
**actor [1]**   34/20
**actual [3]**   6/2 18/8 51/12
**actually [22]**   7/15 10/25
 14/17 14/22 15/7 21/13
 21/16 21/18 21/19 22/2
 22/8 28/6 42/17 44/18
 44/24 45/16 46/15 49/9
 54/24 59/9 63/5 65/12
**add [1]**   53/14
**Additionally [1]**   3/12
**address [3]**   39/22 54/16
 54/20
**ADF [9]**   21/16 48/3 48/3
 48/7 48/20 48/21 48/22
 48/22 49/1
**adjourned [1]**   67/12
**adjudicating [1]**   6/5
**administering [1]**   60/25

**administered [1]**   6/7
**administration [1]**   4/12
**administrative [5]**   5/14
 5/16 33/24 33/24 62/6
**admits [1]**   59/10
**admittedly [1]**   52/25
**adopted [2]**   23/16 23/19
**advance [1]**   58/15
**adversaries [1]**   48/8
**adversary [1]**   31/18
**Affairs [1]**   2/7
**afforded [4]**   8/14 33/11
 39/14 56/7
**after [4]**   6/9 47/22 53/7
 64/12
**afternoon [5]**   3/7 3/16
 3/21 4/5 4/6
**again [14]**   10/21 16/18
 21/9 21/23 22/2 24/15
 31/24 37/3 39/14 49/10
 51/5 64/5 64/7 65/8
**against [3]**   42/1 46/18
 59/6
**agree [9]**   17/8 29/22 34/7
 39/23 39/24 55/10 55/14
 63/1 65/12
**agreed [7]**   10/1 10/4 10/6
 10/7 10/14 17/8 65/10
**agreeing [1]**   51/8
**agreement [12]**   10/5 18/5
 19/1 19/11 19/12 19/25
 20/6 20/6 39/25 63/7 63/9
 63/18
**agrees [1]**   29/10
**ahead [4]**   11/13 12/7 42/20
 48/9
**aided [1]**   1/25
**akin [1]**   60/1
**all [49]**   3/15 5/8 6/13
 6/17 6/21 8/11 10/1 15/2
 15/12 18/18 19/8 21/10
 21/12 21/25 23/8 24/12
 25/10 26/14 31/13 34/1
 38/4 38/5 38/14 38/23
 39/21 39/22 40/22 40/22
 45/19 45/23 47/11 47/11
 47/12 47/25 51/15 51/18
 51/19 53/24 54/21 57/23
 58/3 60/14 60/19 61/7 61/9
 61/10 61/12 65/2 65/21
**all policy [1]**   6/13
**allegations [2]**   40/9 51/7
**alleges [1]**   6/25
**allocate [1]**   57/12
**allow [4]**   8/10 12/2 55/11
 57/13
**allowed [12]**   8/22 11/5
 12/7 12/21 19/4 42/2 42/3
 42/4 42/7 42/14 42/16
 66/19
**allowing [3]**   7/14 12/1
 31/9
**allows [1]**   34/12
**almost [4]**   22/11 34/23
 38/1 65/2
**alone [4]**   6/19 27/25 45/14
 61/11
**along [1]**   66/9
**already [2]**   29/9 57/15
**Alright [4]**   3/22 42/20
 59/12 67/8

## A

also [3]   3/12 3/23 9/3
alternative [1]   50/1
always [5]   35/5 37/12
 37/16 40/11 43/14
am [2]   6/16 14/17
ambiguous [1]   20/22
America [3]   48/16 48/18
 55/14
American [1]   33/19
Americans [4]   55/12 59/2
 59/3 59/6
amicus [1]   43/13
among [1]   27/25
amount [2]   31/1 66/6
analog [4]   33/22 34/17
 41/6 41/7
analogy [2]   41/1 59/22
analysis [12]   9/14 23/11
 25/12 32/9 46/6 46/7 46/10
 49/11 51/9 51/25 64/11
 64/16
analyze [3]   39/16 46/15
 64/16
analyzed [3]   25/9 38/4
 39/17
analyzes [1]   31/15
analyzing [4]   33/1 38/5
 45/7 61/11
anchor [1]   61/5
and how [1]   43/23
announced [1]   57/14
another [11]   7/2 8/14 8/15
 39/10 39/11 42/2 46/21
 48/12 49/22 56/7 56/11
answer [8]   4/25 22/7 27/1
 27/7 31/25 49/24 58/8
 59/16
answers [2]   27/5 58/22
anti [1]   57/25
anti-discrimination [1]
 57/25
any [32]   6/3 8/17 9/5 9/9
 9/15 9/17 11/1 20/2 23/9
 25/1 25/23 25/25 26/1 26/1
 26/2 26/8 27/9 27/19 28/4
 28/13 29/8 34/10 34/23
 43/18 43/21 44/1 46/13
 49/8 59/18 62/11 65/21
 66/18
anybody [6]   9/12 22/8
 22/15 59/19 60/9 60/14
anymore [3]   29/16 54/1
 62/15
anyone [1]   62/10
anything [11]   33/20 35/9
 46/25 48/20 51/25 54/1
 55/15 57/5 58/17 60/6 64/3
anyway [2]   61/4 66/19
anywhere [2]   27/20 59/18
apologize [1]   24/16
APPEARANCES [2]   1/11 2/1
appearing [1]   26/2
appears [3]   30/15 30/16
 30/21
appellate [3]   20/18 20/25
 64/14
APPLETON [9]   1/20 1/21
 3/10 3/11 3/12 5/25 21/9
 54/6 54/14

applicable [2]   10/8 10/10
application [2]   56/17
 59/23
applied [24]   4/20 4/24
 9/18 11/1 20/14 23/22
 24/17 31/11 31/12 40/25
 41/10 41/11 43/5 43/7 43/7
 43/24 48/5 48/16 49/6
 58/16 61/18 64/20 66/1
 66/7
applies [8]   5/7 23/19
 24/20 25/12 28/7 31/19
 53/9 55/12
apply [29]   9/14 11/1 14/18
 18/20 20/16 21/1 21/2 25/4
 25/9 27/17 28/18 30/11
 31/19 31/22 31/23 36/2
 41/1 49/7 52/14 52/15
 55/14 59/17 60/10 60/12
 61/22 61/25 66/15 66/18
 66/21
applying [9]   11/24 25/18
 25/18 27/22 28/15 28/17
 29/13 33/13 61/14
appreciate [5]   7/19 14/24
 27/8 59/14 64/6
approach [1]   3/4
appropriate [3]   5/10 23/11
 40/15
arbitrarily [1]   7/1
arbitration [24]   4/1 4/10
 4/12 4/14 4/22 10/4 10/8
 10/9 10/14 12/25 15/18
 17/10 28/22 28/23 30/7
 40/8 50/8 52/10 53/18
 55/11 61/24 62/1 63/18
 64/23
arbitrations [1]   13/25
arbitrator [4]   13/12 15/13
 17/23 18/9
arbitrator's [1]   63/6
arbitrators [7]   14/21
 18/12 25/5 25/7 33/19 40/4
 62/13
are [65]   3/24 4/9 5/1 6/12
 6/15 6/17 16/13 18/4 19/8
 19/11 21/5 21/25 22/3 23/7
 23/7 23/8 23/10 23/17 24/4
 24/8 24/14 25/4 25/5 25/14
 27/15 28/15 29/6 29/21
 31/1 31/11 32/6 34/2 35/3
 37/21 37/25 38/9 42/16
 42/16 44/12 46/18 47/11
 51/1 51/7 51/7 51/13 51/23
 52/1 52/9 53/2 53/18 53/19
 54/19 55/18 56/25 57/20
 58/4 58/19 59/2 59/3 60/14
 60/20 61/10 63/13 64/22
 66/24
area [4]   12/7 15/24 40/2
 59/10
arena [1]   38/22
Argentina [1]   23/12
arguably [2]   18/9 18/13
argue [7]   16/20 19/24
 34/22 43/5 47/15 48/11
 48/13
argued [1]   30/13
arguing [7]   16/24 24/15
 25/14 29/5 36/20 47/10
 47/13

argument [10]   7/21 7/21
 26/1 26/1 29/18 29/19
 44/11 44/22 48/24 53/7
arguments [15]   6/10 17/7
 19/15 19/16 26/14 36/24
 37/2 37/3 37/4 47/18 47/24
 53/1 53/2 53/24 60/9
arise [2]   67/5 67/6
armed [3]   35/16 36/15
 36/16
around [1]   59/3
art [4]   17/19 17/20 20/1
 22/13
article [14]   4/17 30/23
 31/6 31/15 32/1 56/4 56/12
 56/14 56/24 56/25 57/25
 59/1 62/23 63/15
articles [1]   16/15
as [71]
ask [3]   3/4 25/21 63/19
 63/19
asked [3]   7/23 58/8 60/20
asking [4]   13/7 13/17 24/1
 37/20
aspect [1]   47/1
asserted [1]   43/14
asserting [4]   23/7 23/9
 24/22 52/5
assertion [3]   10/19 25/24
 43/16
assertions [2]   38/4 39/13
assess [2]   55/16 59/7
assessing [1]   12/24
assessment [2]   13/4 57/17
Associates [3]   1/21 3/11
 3/12
assume [3]   24/17 49/23
 53/12
assumed [2]   24/24 60/20
assumes [1]   46/12
assurances [2]   36/12 58/3
at [72]
attention [1]   55/19
attorney's [3]   52/6 52/11
 52/19
attribute [1]   29/7
authorities [1]   55/4
authority [4]   9/9 14/9
 14/11 41/1
available [3]   11/15 58/3
 58/4
Avenue [3]   1/14 2/4 2/13
avoided [1]   49/2
award [41]   3/23 3/24 4/10
 5/23 5/24 9/20 10/22 11/7
 11/17 17/1 17/22 19/8 19/9
 19/17 23/8 24/4 24/14
 24/23 25/15 29/21 30/5
 34/1 34/2 36/2 39/1 39/8
 46/1 46/3 47/15 51/13
 51/22 52/10 52/15 53/22
 60/13 61/24 62/11 63/19
 64/10 65/21 66/8
award's [1]   13/15
awards [15]   5/1 5/25 6/2
 18/21 21/5 22/1 22/3 22/8
 24/8 24/10 39/2 60/15
 61/21 63/4 65/2
aware [5]   5/8 6/3 21/13
 21/25 22/7
away [3]   36/16 58/5 60/7

**B**

Baach [2]   1/14 3/8
back [10]   10/21 12/16
 18/15 23/2 33/17 46/3 51/5
 51/11 63/20 65/6
bad [7]   37/15 37/21 52/4
 52/10 53/14 53/17 62/20
Baker [1]   2/4
BALDWIN [2]   2/3 3/17
Bankruptcy [1]   2/13
bar [1]   33/13
BARRY [2]   1/20 3/10
based [1]   25/23
bases [6]   29/20 36/1 45/5
 51/12 52/15 65/6
basically [10]   3/22 5/3
 11/5 14/12 19/5 19/25
 36/19 38/22 61/21 62/14
basis [9]   5/4 5/12 35/18
 45/25 50/2 58/6 61/13
 65/24 66/8
BATES [1]   1/9
Bay [1]   1/18
be [90]
beat [1]   27/3
because [69]
becomes [5]   14/3 14/5 60/2
 60/18 60/19
been [12]   4/19 4/23 12/7
 18/16 23/16 33/23 47/16
 50/4 54/13 58/16 61/18
 64/3
before [15]   1/9 13/1 16/3
 29/19 30/4 36/24 39/4 43/9
 45/1 47/10 47/13 52/3
 53/21 64/4 64/19
beginning [1]   34/24
begins [1]   61/13
behalf [1]   3/17
behavior [5]   15/10 26/19
 59/4 59/5 62/4
being [7]   26/21 26/24
 31/11 44/12 48/24 51/22
 56/20
believe [16]   4/10 4/15 9/4
 9/9 9/17 9/18 12/22 18/19
 23/10 23/16 23/17 28/17
 34/10 46/2 50/13 50/25
below [7]   32/15 33/2 34/11
 36/4 38/9 40/24 42/8
beneficial [1]   6/25
benefit [3]   11/20 12/14
 32/20
benefitted [2]   41/11 49/6
best [2]   41/12 41/13
better [5]   25/8 31/25 44/8
 47/4 66/25
between [5]   7/6 20/5 21/2
 22/4 43/18
beyond [10]   5/3 7/22 13/14
 14/13 18/5 35/21 40/21
 44/14 46/23 55/21
binding [2]   22/3 66/16
bit [4]   10/17 14/19 40/14
 53/4
Bloor [1]   1/21
blow [1]   4/24
board [1]   44/19
body [3]   33/24 33/24 64/14
books [1]   38/13

boosted [1]   35/22
borders [1]   55/5
both [10]   10/7 10/11 17/5
 17/6 19/15 19/16 20/18
 30/3 64/7 66/12
bound [3]   23/17 24/14
 25/19
bounds [1]   14/9
breach [1]   38/16
breaches [2]   32/13 38/12
Brickell [1]   1/18
brief [6]   19/22 43/4 43/12
 43/13 49/15 49/15
briefed [2]   5/7 60/8
briefing [1]   60/9
briefly [3]   59/15 63/24
 64/1
briefs [3]   51/15 51/16
 52/8
bright [3]   54/17 55/18
 58/23
bring [3]   52/1 55/19 57/9
bringing [1]   46/18
brings [1]   36/15
broadening [1]   47/1
brought [2]   28/24 35/16
Brower [11]   5/10 11/8
 12/21 12/22 21/10 21/24
 50/13 50/20 58/7 58/12
 59/8
build [2]   36/13 36/13
built [1]   35/15
bunch [2]   36/14 51/17
burden [15]   4/17 7/22
 10/18 15/2 15/14 26/7
 26/19 27/2 40/2 40/6 40/7
 40/9 40/10 40/11 40/16
Bureau [1]   2/8
business [1]   36/21
businessdictionary.com [1]
 49/20
but [103]
But I [1]   52/15
buy [4]   22/25 23/1 48/16
 48/18
buying [7]   21/21 22/14
 22/18 63/11 63/12 63/14
 63/15

**C**

CAFTA [1]   43/14
call [2]   32/7 32/8
called [2]   32/12 49/22
came [5]   47/25 49/19 53/7
 60/12 62/6
can [40]   4/24 4/25 5/8
 5/25 8/8 8/10 9/20 10/2
 18/12 19/14 19/18 21/8
 21/15 23/17 27/22 28/7
 29/7 29/10 31/16 33/4
 42/15 45/9 47/2 49/10
 49/23 51/15 54/5 54/12
 55/1 56/5 56/9 56/15 57/5
 57/6 58/19 62/17 63/8
 63/24 64/1 65/15
can't [13]   14/18 16/11
 20/25 21/1 22/5 23/18 28/4
 28/8 35/7 55/16 63/7 63/9
 67/9
CANADA [36]   1/6 1/22 2/7
 2/9 3/4 3/11 3/18 3/19 5/5

5/12 9/3 10/20 12/14 16/19
 17/8 31/21 32/10 32/11
 32/18 32/19 36/12 36/15
 38/21 42/24 43/1 43/19
 44/7 53/23 53/23 54/23
 55/13 60/8 62/3 62/3 65/15
 65/21
Canada's [3]   7/4 12/5
 66/22
Canadian [1]   62/5
Canadians [1]   16/12
candid [3]   25/8 27/21 36/6
cannot [3]   11/17 18/21
 20/1
capacity [4]   11/14 11/14
 11/16 61/3
carve [2]   21/12 48/4
carving [1]   18/25
case [87]
cases [28]   9/19 9/19 18/4
 18/18 18/19 19/8 19/21
 19/23 21/11 21/12 21/25
 21/25 22/1 24/12 26/18
 31/8 34/21 39/2 39/23
 43/14 51/17 51/18 51/19
 51/20 52/1 55/14 61/19
 61/20
casino [1]   20/14
cede [1]   14/11
ceded [1]   62/14
ceding [1]   26/20
certain [5]   11/18 18/1
 19/17 31/1 31/2
certainly [10]   30/19 35/11
 39/1 39/7 42/18 50/20
 52/22 62/10 63/2 66/16
certify [1]   68/3
cetera [1]   64/14
chance [3]   55/20 61/19
 64/4
chances [1]   28/25
change [6]   17/24 17/25
 18/4 40/20 42/16 46/11
changed [1]   53/1
changes [1]   47/3
changing [2]   28/16 42/17
chapeau [2]   31/14 39/9
chapter [6]   8/16 22/21
 22/22 23/13 23/19 63/14
characterization [1]   53/13
charged [1]   29/12
Chevron [18]   5/13 5/16
 7/24 9/14 33/16 33/18
 33/20 33/22 34/17 41/1
 41/6 41/13 53/11 59/17
 60/1 60/3 60/10 60/17
Chief [1]   3/13
choice [4]   23/5 27/15
 29/16 53/2
chosen [1]   35/21
circuit [30]   17/22 20/10
 21/4 23/12 23/15 23/15
 23/16 23/18 23/20 23/21
 23/22 24/13 24/19 25/11
 25/20 25/20 27/16 27/22
 27/24 27/25 28/7 28/17
 28/20 28/20 29/9 29/10
 29/13 29/20 66/15 66/16
circuits [1]   28/1
circumstance [4]   28/9
 28/11 28/12 29/11

## C

circumstances [3]   28/5 42/14 42/15
cite [7]   18/2 18/19 51/16 51/17 51/19 51/23 61/18
cited [10]   5/13 9/19 15/12 22/6 26/18 30/5 30/6 59/24 60/17 61/20
citizen [1]   62/5
civil [2]   1/3 3/2
claimant [3]   6/25 20/16 40/8
claims [1]   46/18
clarity [1]   47/18
clause [2]   17/12 20/21
clear [10]   8/23 9/25 11/9 18/4 20/13 23/20 24/11 25/11 25/13 40/21
clearer [1]   14/19
clearly [4]   8/17 20/16 21/1 63/15
client [2]   7/15 12/2
clients [1]   60/23
closing [1]   51/6
co [1]   36/25
co-counsel [1]   36/25
Cole [1]   3/13
colleague [4]   3/20 16/4 54/6 55/19
collect [1]   21/19
COLUMBIA [1]   1/1
come [11]   11/12 14/14 14/16 36/13 37/2 43/9 45/4 53/21 59/25 60/1 60/14
comes [2]   30/20 42/19
comfortable [3]   27/21 28/15 28/16
comment [1]   63/24
commission [1]   12/2
commit [1]   26/17
committed [1]   14/17
communications [1]   51/21
comparative [2]   57/17 57/24
comparator [1]   58/1
compared [2]   57/17 62/8
comparison [1]   11/7
compelling [1]   51/21
compete [1]   60/24
complete [4]   39/5 40/6 47/4 66/22
completely [8]   25/15 38/23 51/1 51/2 52/1 58/7 62/1 62/12
complied [1]   62/11
comply [2]   10/6 48/18
computer [1]   1/25
computer-aided [1]   1/25
concede [2]   4/21 28/10
conceded [1]   29/9
concept [1]   35/2
concern [1]   28/19
concerning [1]   21/6
concluding [1]   19/17
conclusion [6]   7/4 12/23 12/24 14/14 14/16 47/25
conclusions [2]   26/6 26/6
condition [1]   31/24
conduct [2]   11/12 13/11
conducted [1]   51/9

confirm [1]   3/24
confirming [1]   17/22
conflicting [1]   21/5
conflicts [1]   35/1
Connecticut [1]   2/4
consider [4]   7/18 7/20 7/21 53/16
consideration [3]   32/5 32/8 33/14
considerations [6]   6/13 6/18 31/14 32/5 32/6 61/10
considered [1]   38/7
considering [2]   37/16 47/24
consistent [1]   58/20
consortium [3]   7/1 11/5 12/6
Constitution [1]   2/13
construction [1]   21/17
construing [2]   18/9 18/13
contending [1]   27/16
context [9]   19/18 26/15 30/18 30/20 35/20 41/14 46/12 47/21 59/8
contexts [1]   53/10
continued [3]   2/1 64/15 64/15
contract [17]   12/3 12/8 17/12 17/24 18/10 20/13 21/1 36/10 36/11 36/14 36/17 36/18 36/20 45/18 45/20 48/15 48/17
contracting [1]   11/25
contractor [3]   48/17 48/23 63/13
control [1]   67/4
convention [8]   23/9 24/7 24/8 24/10 24/11 24/25 25/5 25/9
convention's [1]   24/6
conveying [1]   7/2
convincing [1]   40/22
correct [10]   13/6 28/3 28/14 28/14 29/14 50/11 50/14 55/16 60/20 68/4
correctly [2]   25/6 63/21
correctness [4]   12/10 60/11 60/18 61/18
could [22]   8/10 13/10 19/6 22/17 27/3 27/3 33/17 34/10 37/8 37/22 38/12 39/3 40/25 44/18 47/16 48/11 48/13 48/24 53/19 59/22 61/1 66/7
counsel [8]   3/4 36/25 44/19 53/17 54/24 59/16 62/10 64/7
count [1]   42/1
counter [3]   42/24 42/25 43/1
counter-memorial [3]   42/24 42/25 43/1
countries [1]   16/11
country [1]   9/13
couple [1]   54/3
course [1]   7/18
court [38]   1/1 1/10 2/12 2/12 5/17 6/1 14/14 15/23 17/10 17/22 18/3 18/3 20/11 20/15 20/18 20/19 20/20 20/25 20/25 23/13

27/9 28/5 28/6 29/11 29/12 30/4 40/11 43/9 43/10 50/8 50/17 50/23 51/6 52/14 53/16 53/21 55/1 65/17
court did [1]   18/3
Court's [1]   5/8
courts [4]   2/13 18/2 40/3 61/20
Cove [1]   61/23
cover [1]   15/25
covered [1]   16/3
covers [1]   31/14
crack [3]   41/12 41/14 52/4
create [1]   41/23
created [1]   66/9
criminal [1]   14/18
critical [9]   5/23 12/4 12/12 12/15 15/15 15/16 58/12 58/14 60/16
CRONOGUE [2]   2/3 3/19
cross [6]   3/24 3/25 4/10 35/9 35/12 35/14
cross-motions [2]   3/24 3/25
cross-petitions [1]   4/10
crossed [1]   35/7
CSR [3]   2/12 68/3 68/10
customary [1]   30/24
customs [1]   21/19
cv [1]   1/4

## D

D.C [9]   3/9 23/12 23/18 25/11 25/20 27/22 28/17 28/20 29/19
damages [2]   19/4 19/13
DATE [1]   68/10
Davie [1]   19/12
day [2]   38/2 52/24
days [1]   39/20
DC [4]   1/5 1/15 2/5 2/14
dealing [1]   4/1
dealt [1]   66/11
debate [4]   16/7 20/2 21/20 22/4
decide [6]   33/14 35/25 43/10 51/4 67/4 67/10
decided [2]   17/23 26/12
deciding [3]   45/20 50/3 63/6
decision [11]   4/2 14/8 33/22 34/8 34/8 34/9 34/19 34/23 39/17 41/21 65/21
decisions [6]   6/1 38/22 38/23 39/6 42/5 50/23
defeating [1]   34/9
defer [2]   21/9 65/20
deference [127]
define [1]   41/14
defined [3]   59/1 59/1 62/23
defines [1]   22/21
definitely [1]   65/14
definition [7]   41/13 47/4 49/14 49/17 49/22 50/3 57/14
definitions [1]   50/1
definitions.com [1]   49/23
definitions.net [2]   49/23 49/25
degree [1]   11/18

**D**

deny [1]   52/21
Department [2]   3/19 48/14
describe [1]   49/21
description [1]   53/13
designed [2]   49/3 58/23
detail [2]   12/6 49/11
determination [4]   48/15
55/2 65/25 66/10
determinations [2]   38/11
39/22
determine [1]   7/3
determining [3]   33/23 38/6
53/16
did [54]   4/16 5/4 5/5 8/20
11/1 11/8 14/25 14/25
16/20 16/23 17/1 17/14
18/3 18/3 19/11 19/16
19/22 20/15 20/24 25/5
25/12 28/24 30/14 32/10
32/11 32/15 34/24 35/9
37/1 37/14 37/15 39/15
39/20 43/11 44/17 45/3
45/25 46/14 47/19 47/22
47/23 48/19 48/23 49/1
49/7 53/18 55/21 57/10
59/21 61/18 64/24 65/21
67/5 67/6
didn't [40]   12/9 12/13
17/8 17/17 17/18 19/24
25/7 29/23 31/20 39/16
39/24 42/6 42/18 43/7
44/17 44/23 47/8 49/7
49/17 49/24 53/3 53/10
55/20 59/10 59/11 59/17
59/18 59/25 60/1 60/6 61/3
61/15 61/19 62/10 62/14
62/22 63/1 64/4 64/21 65/5
difference [14]   5/2 16/22
17/11 17/13 20/3 21/2 21/3
21/4 22/13 25/17 43/18
44/1 46/6 63/12
different [11]   11/25 12/25
27/6 28/7 29/13 34/21 44/5
47/14 50/4 64/20 65/23
direct [1]   59/22
disagree [4]   8/24 9/2 26/5
55/8
disagreed [3]   14/21 14/21
64/8
discriminating [1]   59/6
discrimination [1]   57/25
discriminatory [1]   59/4
discuss [2]   42/22 63/2
discusses [1]   49/11
discussing [2]   19/16 64/12
discussion [8]   29/22 31/6
33/16 36/5 39/9 39/12
64/10 64/11
discussions [2]   39/8 64/8
disputing [2]   57/2 57/7
disregard [3]   27/23 29/1
66/13
disregarded [1]   44/13
dissent [5]   5/11 11/9
11/23 21/10 21/24
dissenting [2]   48/8 50/16
distinguished [1]   50/20
district [12]   1/1 1/1 1/10
2/13 13/15 15/12 20/18

20/24 23/12 28/5 28/6
29/11
disturb [2]   17/10 50/8
do [53]   4/21 5/15 5/20
8/13 8/23 12/19 12/21 13/7
14/12 15/20 20/24 20/25
21/1 25/10 30/2 31/24
32/22 32/23 35/18 35/21
35/23 36/10 37/8 39/3 42/7
43/7 43/14 46/11 49/4
51/13 51/21 51/23 52/17
52/17 52/19 53/22 54/7
56/5 56/6 56/9 57/5 57/10
58/1 58/15 58/19 59/8
61/14 61/15 62/14 63/6
64/25 65/15 66/19
doctrines [2]   34/18 42/3
does [25]   11/17 14/10 16/9
22/23 22/25 30/11 31/22
32/23 32/25 33/22 37/20
40/22 40/22 41/20 42/7
45/25 46/1 46/2 47/6 53/14
55/7 59/16 64/21 65/5 66/1
doesn't [22]   16/21 21/2
22/13 25/9 25/16 27/20
31/19 31/23 33/5 34/11
35/6 36/6 40/19 40/19
40/20 41/15 41/22 42/8
44/14 58/17 63/12 66/15
doing [2]   10/25 15/17
domestic [2]   53/10 55/4
domestically [1]   35/2
don't [48]   8/19 9/4 9/5
9/9 9/9 9/17 9/18 11/15
12/16 15/2 15/19 20/2 20/3
20/22 23/16 25/4 25/6
25/13 27/8 27/23 28/13
28/17 29/8 37/13 38/16
39/23 40/6 41/23 41/23
41/25 42/1 43/21 43/24
45/24 46/2 47/17 49/14
50/21 50/22 51/13 54/10
55/8 61/25 62/15 64/4
64/25 65/12 65/13
done [13]   4/12 6/21 31/5
33/15 34/8 39/2 40/4 59/18
61/12 61/16 64/19 64/19
65/1
doubt [10]   11/20 12/14
13/14 14/13 21/17 32/20
33/19 40/21 41/9 41/9
down [2]   33/4 52/3
dramatically [1]   53/1
draw [2]   19/9 19/9
drink [1]   65/22
Drive [2]   1/18 2/8
due [4]   10/13 37/12 56/22
57/1

**E**

Each [1]   38/7
easiest [1]   55/25
Eastern [1]   15/12
EDWARD [4]   1/17 2/3 3/10
3/17
effect [1]   3/24
effectively [1]   40/1
egregious [1]   67/2
Eighth [1]   17/22
electricity [1]   21/21
element [1]   27/23

Eleventh [9]   23/15 23/22
24/13 24/19 25/20 27/16
27/25 28/20 29/10
Elmo [1]   55/1
else [8]   24/9 34/17 36/21
41/6 57/17 57/18 65/1 66/8
employed [1]   30/10
employee [6]   13/9 13/10
14/15 14/17 19/6 63/7
employees [1]   20/15
employer [1]   13/9
employer-employee [1]   13/9
end [3]   50/7 65/17 65/21
ended [2]   51/22 64/11
energy [1]   11/15
engaged [2]   52/5 62/13
enough [1]   15/25
entered [1]   11/4
entering [1]   11/23
enterprise [13]   16/16
16/18 16/22 17/2 17/16
46/9 46/13 46/16 46/25
47/5 47/7 47/9 49/1
enterprise' [1]   46/9
entire [1]   38/14
entities [3]   46/10 46/16
46/20
entitle [2]   52/5 52/11
entitled [2]   32/6 68/5
entry [1]   7/14
equality [8]   10/1 13/17
13/18 14/3 14/5 57/1 57/4
57/6
equally [4]   10/2 10/15
13/20 13/21
equitable [6]   4/18 32/2
56/16 57/16 57/17 57/22
equitably [2]   32/3 57/20
equivalent [1]   5/16
erroneous [1]   34/15
error [4]   15/15 15/16
23/24 25/11
errors [1]   4/11
essence [3]   19/9 19/11
46/23
essentially [21]   6/5 7/13
8/19 9/11 13/9 14/2 15/6
15/13 15/17 16/20 17/15
17/16 19/4 20/14 22/9
22/14 24/7 25/7 26/22
33/12 44/6
established [1]   53/20
esteemed [2]   14/20 16/4
50/17 54/6
et [1]   1/5
even [27]   5/12 8/23 22/3
34/14 35/1 35/1 36/16 42/7
42/10 43/6 43/7 45/2 45/17
45/24 49/7 49/7 50/13 51/1
51/2 51/9 51/18 52/11 65/4
65/23 65/24 66/17 66/21
event [1]   46/13
ever [4]   59/18 61/12 62/11
64/19
every [3]   34/23 39/17 59/2
everything [1]   16/3
evidence [4]   16/12 26/1
29/8 62/20
ex [1]   51/21
exact [2]   25/6 41/4
exactly [10]   5/18 5/19

**E**

exactly... **[8]**   8/22 15/8
31/19 47/19 52/7 60/4
60/21 63/17
examine **[2]**   6/25 12/17
example **[23]**   8/6 8/7 8/9
8/9 13/5 17/21 18/17 20/9
21/16 26/22 30/2 32/17
35/12 35/15 35/18 35/19
35/20 36/8 56/12 57/11
66/14 67/2 67/5
examples **[2]**   28/13 37/23
exception **[7]**   16/16 16/17
22/11 45/16 48/5 49/3
50/21
exceptions **[2]**   16/13 16/14
excuse **[1]**   39/12
excused **[1]**   11/17
executives **[1]**   35/17
exemption **[1]**   20/14
Exhibit **[3]**   56/3 56/25
56/25
Exhibit 5 **[1]**   56/3
Exhibit 6 **[2]**   56/25 56/25
exhibits **[1]**   38/2
exists **[1]**   43/22
expecting **[1]**   60/23
experienced **[2]**   53/17 67/3
expert **[1]**   12/5
explain **[2]**   5/8 48/10
extends **[1]**   55/4
extensive **[6]**   30/5 43/4
47/22 47/22 53/23 60/8
extent **[8]**   6/1 14/2 14/11
15/6 26/9 27/2 28/18 56/10
extraordinary **[1]**   41/24
extreme **[2]**   35/18 35/19

**F**

FAA **[8]**   23/8 23/14 29/21
36/2 45/25 51/12 52/14
65/6
fact **[16]**   11/3 11/4 11/12
12/12 15/14 26/24 30/3
30/5 32/10 33/1 33/15
38/17 44/1 55/16 59/24
60/20
factor **[1]**   43/17
factory **[2]**   35/16 35/17
facts **[13]**   12/15 31/10
31/11 31/13 31/15 31/20
31/21 32/22 32/24 38/6
59/9 61/7 64/17
factual **[4]**   10/19 37/4
39/18 39/22
factually **[2]**   32/18 59/7
failed **[3]**   19/8 19/9 45/4
fair **[4]**   4/18 32/2 57/16
57/18
fairly **[4]**   28/9 32/3 57/13
57/20
fairness **[1]**   9/22
faith **[7]**   37/21 52/4 52/11
53/14 53/17 56/16 62/20
falls **[3]**   26/19 26/20 33/2
far **[7]**   11/25 15/9 18/6
35/6 37/8 37/9 38/19
fashion **[1]**   20/12
fate **[1]**   67/4
favor **[4]**   52/12 52/18

52/21 52/23
federal **[6]**   25/18 25/19
28/5 28/6 29/11 64/22
feel **[3]**   26/7 46/22 66/20
fees **[4]**   52/6 52/11 52/19
62/20
felt **[1]**   29/19
few **[1]**   54/12
figure **[2]**   40/23 63/6
figuring **[1]**   24/10
file **[2]**   29/3 29/4
filed **[2]**   28/6 29/12
fill **[1]**   38/13
find **[6]**   19/10 34/11 38/16
39/10 41/22 50/17
findings **[3]**   5/14 39/18
60/19
fine **[3]**   20/5 53/25 61/12
fired **[1]**   13/10
first **[14]**   4/4 4/15 10/4
10/11 20/10 21/4 42/25
48/16 54/21 55/24 57/23
60/12 64/21 65/13
fit **[11]**   5/7 9/8 11/6
11/25 12/20 48/18 51/13
57/20 60/23 66/7 66/15
fits **[1]**   43/23
five **[8]**   37/25 38/1 38/2
38/14 50/17 50/19 56/14
66/11
FL **[1]**   1/18
flavor **[1]**   44/6
floor **[2]**   1/18 32/14
Florida **[2]**   25/17 25/18
flour **[2]**   35/16 35/17
focused **[2]**   44/13 58/10
focuses **[1]**   46/7
follow **[5]**   10/10 23/18
25/7 25/11 31/7
foregoes **[1]**   36/15
foregoing **[1]**   68/4
foreign **[2]**   9/13 31/2
foresee **[1]**   42/15
form **[1]**   44/10
formalities **[5]**   8/9 8/11
8/13 56/4 56/6
formally **[1]**   8/5
forth **[6]**   6/9 10/5 21/10
26/7 49/16 52/1
forum **[1]**   28/20
forward **[2]**   26/3 61/3
found **[3]**   31/21 46/15 49/1
four **[4]**   7/16 30/6 50/18
50/19
framework **[1]**   43/23
free **[1]**   49/4
freedom **[1]**   49/5
friend **[1]**   57/15
friends **[3]**   36/9 44/6 58/9
frivolous **[1]**   62/21
full **[2]**   17/6 64/16
functions **[1]**   41/8
fundamental **[3]**   4/11 15/15
15/16
fundamentally **[3]**   4/16
55/7 58/2
further **[1]**   54/1
future **[1]**   67/11

**G**

gauged **[2]**   8/12 8/18

gauged by **[1]**   8/12
gave **[14]**   7/11 12/9 12/10
12/11 12/14 13/8 17/5
26/10 26/10 29/24 49/22
53/4 58/10 64/24
GEIA **[13]**   5/6 6/6 7/4 7/7
7/14 7/14 11/4 11/4 11/23
57/21 60/22 61/2 64/11
general **[3]**   10/24 39/14
44/2
generally **[2]**   53/5 55/4
geography **[1]**   17/24
GEORGE **[1]**   2/3
get **[16]**   4/25 6/1 12/3
19/11 20/22 21/15 33/17
33/21 37/9 41/15 45/2 45/5
45/13 55/20 61/19 66/13
gets **[2]**   13/22 41/10
getting **[5]**   11/2 38/20
46/3 51/20 66/24
give **[27]**   5/13 6/3 8/6
11/20 12/18 15/5 16/12
20/9 22/25 31/20 33/24
35/8 35/12 35/20 37/23
39/5 41/12 41/13 49/3
49/24 52/19 52/22 53/3
54/11 58/24 59/19 64/2
give to **[1]**   5/13
given **[19]**   4/22 5/1 5/15
9/21 9/22 10/20 11/18 15/3
19/18 34/17 34/20 34/20
35/3 36/8 36/10 36/12 50/1
57/20 65/10
gives **[2]**   32/19 36/18
giving **[7]**   4/19 8/18 8/20
32/18 35/18 36/21 59/7
Glanis **[1]**   61/23
gleaned **[1]**   38/19
Global **[1]**   2/7
go **[32]**   5/11 6/21 7/14
10/21 12/7 12/15 12/16
13/18 18/15 21/23 32/15
34/11 35/6 35/21 37/9
39/21 42/8 42/20 44/14
44/25 47/11 48/9 49/10
49/24 51/5 51/11 55/21
59/10 61/7 61/13 65/6
65/21
go into **[1]**   13/18
goes **[6]**   7/7 18/5 18/6
32/13 33/14 37/7
going **[35]**   5/5 6/14 6/20
8/21 9/13 11/15 11/19
11/20 12/16 12/17 12/17
13/13 14/14 14/16 14/17
15/7 17/23 17/25 18/20
18/22 20/21 20/22 20/23
20/23 33/4 38/22 39/13
45/10 46/23 58/4 58/15
60/10 66/19 66/21 67/4
gone **[1]**   15/9
good **[10]**   3/7 3/16 3/21
4/5 4/6 8/5 8/21 37/14
56/16 58/18
goods **[1]**   22/23
got **[6]**   28/23 36/3 51/24
60/13 62/17 63/6
gotten **[2]**   12/8 61/2
govern **[1]**   10/9
governing **[1]**   10/7
government **[44]**   1/6 3/3

**G**

government... [42]  3/17
6/18 16/6 16/14 17/20 20/1
21/6 21/14 21/18 21/22
22/2 22/12 22/18 22/19
22/22 22/23 22/25 34/9
34/13 34/19 34/20 35/8
37/1 37/8 40/24 42/1 42/2
42/7 44/21 46/19 48/21
48/22 48/24 53/22 55/15
56/5 59/5 61/10 62/23 63/9
63/14 63/16
government's [5]  22/14
38/23 42/3 42/4 42/6
governments [3]  5/2 35/3
56/9
GRAHAM [2]  2/3 3/19
granted [1]  7/1
great [1]  16/2
grid [1]  57/13
grounds [13]  23/7 23/8
23/9 23/13 24/4 24/7 24/9
24/11 24/13 24/22 25/2
25/4 67/7
GROUP [3]  1/3 3/3 3/14
guards [3]  35/16 36/16
36/16
guess [7]  3/22 10/23 34/4
41/20 50/10 55/1 65/18

**H**

hac'd [1]  54/13
had [26]  12/6 17/6 22/17
30/4 31/18 34/1 35/15 36/8
36/10 36/10 36/11 40/3
43/2 43/4 44/18 45/2 45/3
45/4 48/18 49/24 53/2 54/9
58/14 59/8 59/9 65/4
handled [1]  62/7
happen [4]  39/3 42/6 42/18
45/25
happened [10]  13/8 13/16
15/8 18/6 19/2 21/14 39/7
44/24 45/24 48/17
happening [1]  20/4
happens [3]  16/13 20/11
34/2
happy [1]  36/25
hard [3]  37/23 38/8 66/7
has [30]  4/19 4/23 6/21
7/24 8/12 8/18 9/5 9/6
9/18 15/23 17/24 22/19
23/16 23/18 27/9 28/1
32/21 33/3 33/10 41/10
41/11 44/5 50/20 51/23
52/5 57/10 64/18 64/19
65/1 65/9
have [69]
haven't [6]  25/1 25/3 25/8
38/19 60/13 62/9
having [6]  10/17 15/18
15/18 31/17 36/8 43/9
he [9]  11/11 11/16 11/18
11/22 11/24 12/6 13/11
55/20 59/9
he's [4]  21/24 50/20 54/13
63/6
hear [7]  4/3 15/20 59/17
59/18 62/10 62/15 64/5
heard [4]  60/13 60/14 62/9

64/7
hearing [5]  1/9 38/2 43/3
43/4 51/20
heck [2]  12/20 12/20
heightened [1]  40/21
help [1]  20/12
here [86]
here's [3]  7/2 36/14 56/11
high [1]  55/3
highly [1]  59/4
highway [1]  21/17
him [1]  51/15
his [3]  12/23 13/3 50/20
home [2]  23/15 65/22
Honor [73]
HONORABLE [1]  1/9
Hook [3]  2/12 68/3 68/10
hope [1]  58/22
hopefully [1]  31/25
Hoteles [1]  20/10
how [34]  4/12 4/25 5/2
15/11 15/19 17/7 18/12
19/14 19/18 20/21 21/12
26/12 27/8 32/2 32/7 32/9
32/25 43/6 43/23 43/24
46/1 47/21 51/8 54/7 55/21
57/12 57/19 62/7 62/18
64/8 64/13 64/21 64/25
66/7
hundred [2]  13/2 13/6
hundreds [1]  65/1
hurdles [1]  7/17

**I**

I'll [19]  20/9 31/24 33/18
33/21 34/16 35/23 41/18
43/12 45/15 46/21 49/13
51/5 54/11 55/18 61/23
62/19 64/2 64/14 65/13
I'm [30]  3/8 9/1 10/16
13/3 13/3 13/13 14/14
14/15 14/25 15/10 17/23
17/25 18/18 18/22 20/20
20/23 20/23 21/12 24/1
24/2 24/17 30/20 31/17
32/17 35/5 35/18 36/25
37/6 45/19 62/5
I've [3]  5/22 39/2 39/2
idea [13]  8/11 8/21 11/19
12/11 15/14 34/21 34/25
39/15 53/19 56/12 56/12
61/5 64/18
identified [1]  46/16
identifies [2]  46/19 46/20
identify [3]  3/5 46/10
54/17
identifying [2]  10/17
31/18
if [77]
if they [1]  45/3
ignore [2]  44/17 45/10
ignored [1]  19/13
ignoring [2]  4/13 44/15
imagine [2]  33/4 48/24
impair [2]  8/13 56/6
impenetrable [1]  4/18
impermissible [3]  5/21
7/11 8/2
important [4]  42/22 46/14
46/21 52/13
impose [1]  56/15

imprison [1]  35/17
improper [2]  29/7 43/8
in [240]
inapposite [2]  52/1 62/12
inappropriate [2]  59/4
61/16
include [3]  22/23 47/5
56/21
included [1]  47/7
including [3]  16/11 26/6
43/3
inconsistent [2]  56/11
56/20
incorporating [1]  34/21
increase [1]  28/25
indeed [1]  28/12
Industrial [1]  28/2
inequitable [1]  38/12
initial [1]  53/6
initially [1]  11/11
inquiry [1]  38/17
instance [1]  41/19
instead [6]  29/20 32/24
44/15 47/16 49/18 66/25
insurmountable [1]  27/2
intended [1]  16/7
intention [1]  24/6
interesting [2]  20/19 36/5
international [19]  9/12
10/13 30/23 30/24 30/25
31/7 33/8 34/25 41/8 41/19
44/7 53/8 53/20 55/3 55/11
55/12 58/25 62/1 62/3
internationally [1]  7/25
interpret [2]  17/15 63/21
interpretation [19]  13/5
17/4 17/9 21/3 25/19 30/1
43/22 44/15 44/23 44/25
45/4 45/6 49/18 50/9 50/12
51/1 51/3 51/8 64/9
interpreted [5]  17/7 20/21
44/12 44/21 47/20
interpreting [8]  17/12
18/5 18/14 19/19 20/6 20/8
22/12 47/25
interpretive [2]  50/5 50/6
into [16]  4/18 6/2 7/15
10/18 11/4 11/6 11/23 12/7
13/18 33/14 38/4 38/20
51/10 51/13 66/7 66/15
invested [2]  36/11 62/2
investment [1]  9/15
investments [1]  8/15
investor [2]  22/18 39/2
investors [7]  8/14 8/15
12/20 16/10 31/2 31/3 56/7
invests [1]  9/12
involved [1]  46/10
is [247]
is on [1]  39/12
isn't [5]  14/8 36/19 44/14
57/8 65/14
issue [37]  4/15 5/6 5/20
6/5 6/6 7/10 7/12 10/19
10/19 12/13 14/20 16/5
19/23 19/24 32/4 42/21
42/23 43/1 43/9 43/11
44/22 50/5 50/6 53/15
53/17 54/21 58/9 58/10
58/11 58/12 58/14 60/21
60/21 65/17 65/23 65/24

## I

issue... [1]   66/1
issue of [1]   66/1
issues [16]   6/10 15/4
15/20 19/22 29/15 30/11
34/2 34/3 42/13 46/23
47/10 47/13 47/15 47/15
50/5 54/19
it [286]
it's [101]
its [14]   18/21 19/9 19/16
26/19 32/15 38/21 41/8
42/24 44/10 46/5 46/5 46/6
51/9 55/17
itself [9]   8/6 8/7 10/11
22/21 22/24 34/6 45/1
46/12 56/20

## J

James [1]   19/5
Jeff [3]   2/12 68/3 68/10
job [3]   19/19 61/14 62/14
JOHN [1]   1/9
JORDAN [1]   1/13
judge [16]   1/10 5/10 11/8
12/21 12/22 12/25 21/9
21/24 50/13 50/19 58/7
58/12 59/8 62/4 66/24
67/10
judged [3]   15/11 34/23
55/16
judges [2]   14/21 38/10
judging [2]   15/10 62/4
judgment [1]   3/25
judgments [4]   34/14 42/11
42/12 42/13
jump [3]   11/6 11/12 12/7
June [1]   1/5
jurist [1]   50/21
jurists [1]   50/17
just [38]   7/23 9/18 10/4
10/24 11/19 13/12 13/25
14/11 15/9 16/2 16/4 17/21
18/1 20/7 21/12 21/15 23/3
26/12 36/17 39/13 40/10
41/15 47/14 48/2 48/10
51/5 52/21 55/19 59/5
59/11 59/15 61/19 62/21
63/3 63/10 63/17 67/4 67/6
Justice [1]   3/19
justification [2]   7/5 7/6

## K

K1A [1]   2/9
Kaufmann [2]   1/14 3/9
keep [1]   4/3
keeping [1]   65/6
kept [1]   61/5
key [6]   4/13 4/13 5/6 6/6
6/17 7/2
kind [9]   5/13 6/4 8/8 9/16
13/4 17/9 33/22 41/2 59/19
know [50]   8/11 13/13 15/19
15/19 16/21 17/23 18/22
20/2 20/9 21/11 24/3 25/13
26/5 26/16 27/8 28/13
29/22 30/16 32/10 32/11
33/20 34/5 34/17 35/25
36/9 37/20 37/21 38/18
39/16 40/6 40/20 42/13

45/15 45/18 45/23 46/20
47/22 48/16 51/3 51/11
52/14 52/14 53/4 53/4
53/19 62/15 64/25 65/1
66/18 66/18
knowledge [2]   28/3 58/14
known [1]   35/2
knows [1]   58/6
Korea [1]   36/22
Korean [3]   7/1 11/5 12/6

## L

lacked [1]   7/4
language [20]   4/13 4/13
5/11 5/12 6/17 7/3 8/23
16/19 16/21 17/13 17/24
18/5 18/8 18/14 19/3 19/10
19/15 19/17 19/20 25/6
large [1]   30/19
last [2]   51/5 52/24
lasted [1]   37/25
Latin [1]   55/14
law [42]   2/8 5/17 9/12
16/25 18/4 23/5 23/20
23/21 24/19 25/12 25/18
25/18 25/19 27/15 27/16
27/22 27/23 29/16 30/23
30/24 30/25 31/7 33/9 35/1
41/6 41/8 41/19 44/4 48/16
48/19 50/18 53/8 53/21
55/4 55/12 55/13 56/17
58/25 65/11 65/25 66/12
66/13
lead [2]   52/20 54/24
least [1]   48/11
lecturn [1]   3/5
leeway [3]   8/4 35/3 35/4
left [3]   15/20 45/2 54/10
legal [6]   31/22 31/23 32/8
32/24 33/6 38/13
length [1]   45/13
let [8]   6/22 8/5 20/23
23/2 25/21 37/11 39/10
48/10
let's [11]   29/15 30/8
53/12 53/25 53/25 54/21
55/14 55/24 64/23 64/23
65/21
level [7]   27/20 41/25 45/5
46/1 49/8 64/22 65/5
Lewis [2]   1/14 3/8
liability [3]   26/23 49/2
61/22
light [1]   55/3
like [17]   14/12 15/9 20/7
29/23 33/25 44/23 45/20
46/22 49/14 49/17 50/15
51/25 52/22 63/4 63/17
66/20 66/24
liking [1]   29/25
limit [1]   64/3
limitation [3]   17/25 18/1
19/13
limited [2]   11/13 11/14
limiting [5]   35/5 37/7
37/24 38/20 65/19
limits [2]   58/18 58/19
line [14]   11/13 12/7 20/5
35/6 35/7 35/10 35/13
35/14 36/4 52/21 54/17
55/18 58/23 60/7

listened [4]   17/5 39/19
51/14 66/12
listening [4]   19/15 29/18
29/19 47/23
litigate [1]   30/3
little [4]   10/17 14/19
40/14 53/4
LLC [2]   1/3 3/3
LLP [2]   1/17 2/4
local [1]   36/18
long [4]   16/23 53/22 57/6
65/16
longer [1]   14/5
look [52]   5/5 6/9 7/13
8/21 9/13 10/11 11/6 11/7
11/19 12/9 12/13 12/15
12/16 13/7 15/8 16/20 17/1
18/15 19/21 19/23 20/20
20/21 21/12 21/14 22/20
22/21 32/4 32/11 33/11
33/25 34/2 39/18 41/5
45/17 45/19 47/2 51/12
51/16 53/9 54/18 54/21
55/17 55/24 55/24 58/1
59/9 60/16 60/21 63/5
65/20 66/17 66/21
looked [3]   17/5 39/17
45/17
looking [6]   19/14 32/9
35/5 37/7 52/25 58/11
looks [2]   20/7 45/21
lot [7]   22/10 29/21 36/11
41/12 63/2 63/3 64/7
lots [2]   34/20 39/2

## M

M5S [1]   1/22
made [10]   23/20 36/23 37/3
44/21 48/15 51/7 51/10
55/2 58/4 65/4
majority [6]   4/13 6/12
12/23 14/25 30/10 46/3
make [19]   16/2 16/22 22/13
25/13 25/16 34/13 34/14
34/24 35/5 38/10 40/10
42/3 42/4 42/10 42/10
42/14 45/10 59/11 63/12
makes [5]   20/3 22/16 22/19
31/15 46/6
making [5]   13/3 26/1 37/3
50/25 51/3
mandate [1]   25/7
mandated [1]   10/10
manifest [4]   27/22 29/1
34/6 66/13
manner [6]   4/19 4/20 4/24
9/18 11/24 29/23
Manufacturing [1]   60/18
many [5]   31/8 39/13 39/23
42/14 50/22
materially [2]   8/13 56/6
matter [11]   4/1 9/12 13/17
17/18 37/5 45/22 45/24
50/7 52/6 67/9 68/5
mattered [1]   49/12
matters [1]   55/5
may [6]   6/12 6/17 12/22
20/12 38/20 61/9
maybe [6]   34/8 34/8 45/3
47/8 54/18 64/25
McKenzie [1]   2/4

**M**

me [27]   3/9 3/18 6/22 7/23
8/6 8/6 13/1 23/2 25/21
28/4 29/10 33/25 35/12
35/20 37/11 39/10 39/12
41/12 41/13 41/15 41/15
48/10 50/10 52/19 52/20
63/25 66/7
mean [18]   21/17 22/17
22/20 22/25 36/4 39/16
41/12 43/24 44/10 47/3
47/6 47/20 48/1 55/7 58/17
60/7 64/21 66/5
meaningful [1]   55/10
means [6]   23/1 41/22 49/9
58/17 61/11 61/12
measure [5]   32/11 32/11
32/13 40/23 55/3
measures [1]   56/15
meet [1]   67/7
megawatts [3]   6/8 12/1
12/8
memo [2]   59/25 60/2
memorial [3]   42/24 42/25
43/1
mention [2]   53/10 60/6
mentioned [4]   31/6 48/3
53/10 53/11
merely [1]   31/13
merit [1]   25/15
merits [1]   29/15
MESA [10]   1/3 3/3 3/13 4/3
32/18 36/10 36/10 36/14
50/14 52/5
met [1]   7/16
Miami [5]   1/18 3/10 25/17
28/21 28/23
Middlemiss [2]   1/14 3/9
might [15]   32/1 32/12 34/5
34/6 35/21 42/17 44/5 47/1
47/2 50/9 50/9 54/16 54/18
54/19 66/14
military [1]   57/9
mind [3]   4/3 42/16 42/17
minimum [21]   30/22 30/24
32/1 32/14 32/14 32/16
33/2 33/3 33/3 33/7 33/10
33/10 33/11 34/12 37/17
38/12 38/15 40/24 41/23
41/24 42/8
minority [2]   23/14 23/15
minute [2]   62/17 62/19
minutes [8]   4/2 4/7 54/3
54/9 54/10 54/11 54/12
64/2
misapplied [1]   53/3
misbehavior [1]   62/13
misconduct [3]   11/17 11/21
11/22
misjudgments [1]   42/10
misjudgments even [1]
42/10
Missouri [4]   17/21 18/7
18/17 19/2
mistake [3]   34/4 34/25
65/4
mistaken [1]   13/13
mistakes [7]   18/23 18/24
34/13 41/22 42/1 42/4
42/10

misunderstanding [1]   40/6
money [2]   36/11 36/14
more [13]   8/23 14/1 14/4
25/8 35/18 40/15 45/22
47/15 53/20 54/11 64/2
64/24 65/10
motion [1]   3/23
motions [3]   1/9 3/24 3/25
motive [2]   11/24 29/7
move [3]   33/5 44/8 48/2
Mr [1]   54/14
Mr. [7]   3/10 3/10 3/11
3/13 5/25 21/9 54/6
Mr. Appleton [3]   5/25 21/9
54/6
Mr. Barry [1]   3/10
Mr. Cole [1]   3/13
Mr. Edward [1]   3/10
Mr. Sean [1]   3/11
much [12]   15/19 20/7 27/9
27/12 43/25 53/4 54/7 61/3
63/8 63/22 65/10 67/8
MULLINS [2]   1/17 3/10
multiple [1]   43/2
must [6]   7/3 10/10 10/15
55/2 55/15 58/18
my [17]   3/7 3/16 3/20
12/25 13/5 16/3 23/14 28/3
36/9 36/25 54/5 54/6 55/19
57/15 61/8 61/8 65/23

**N**

NAFTA [28]   8/6 8/7 8/17
8/24 9/2 9/5 9/15 9/25
10/6 10/11 15/18 16/9
16/11 16/15 33/8 43/14
46/17 47/5 49/4 55/13
55/17 56/4 56/21 56/23
58/23 59/1 62/23 63/15
name [3]   3/8 3/16 32/15
national [2]   16/8 61/25
nature [2]   46/11 56/18
near [2]   27/20 45/5
necessarily [2]   34/7 47/7
need [4]   45/5 45/23 61/3
62/15
negated [1]   15/17
negates [1]   22/10
never [13]   4/19 4/23 39/3
42/23 43/11 43/15 55/10
55/11 55/14 58/9 58/16
61/18 67/5
new [9]   13/15 23/9 24/6
24/7 24/24 25/4 25/9 49/19
64/3
nice [1]   52/24
nine [1]   50/16
no [40]   1/4 7/7 7/24 14/5
15/1 15/25 16/6 21/17
21/20 22/16 22/19 24/1
27/3 28/8 29/9 29/11 31/12
31/12 32/21 35/11 39/16
41/9 41/9 44/3 44/21 45/13
46/6 50/15 52/22 53/2 53/9
53/13 54/2 58/14 60/8
61/12 61/16 62/20 64/2
65/19
nobody [3]   54/8 64/19 65/1
nondiscriminatory [1]
56/16
none [2]   36/2 51/23

norms [1]   57/25
not [170]
not a [1]   66/23
note [2]   43/12 49/13
noting [1]   11/17
now [7]   4/21 16/7 24/15
35/19 43/10 53/1 53/2
nowhere [1]   45/5
number [1]   9/19
NW [3]   1/14 2/4 2/13

**O**

obligated [1]   31/1
obligations [2]   56/21
56/22
obviously [9]   16/5 22/17
22/20 30/9 30/13 32/15
35/24 48/18 55/10
occasions [1]   40/3
occurred [1]   28/13
off [4]   45/3 64/21 65/13
66/3
offends [1]   57/3
offered [1]   49/19
Officer [1]   3/13
Official [1]   2/12
often [2]   43/13 59/4
Oftentimes [1]   50/17
Oh [4]   23/6 24/2 24/5
24/21
okay [17]   9/14 16/2 24/21
29/17 37/6 37/10 41/2 41/3
41/7 44/8 44/9 48/14 48/18
65/22 66/4 66/4 66/6
old [1]   60/24
on [65]   3/17 3/22 4/1 4/10
4/15 5/6 5/20 6/21 7/7
7/21 10/20 14/8 14/20
14/21 14/21 14/22 14/22
14/22 15/3 15/14 15/20
15/24 16/4 17/7 18/1 18/17
22/4 22/4 23/4 25/23 26/7
26/16 26/21 26/24 29/16
30/14 31/10 31/21 32/20
35/8 39/12 40/3 43/19
44/13 44/19 48/7 50/17
50/18 50/18 52/8 52/24
54/1 55/1 55/19 56/1 58/5
58/10 58/14 61/13 62/22
62/22 62/22 62/24 66/12
67/1
once [1]   50/25
one [51]   7/17 9/17 12/13
12/15 13/12 13/22 14/22
14/22 16/14 22/6 23/2 23/4
23/13 23/19 25/21 27/3
28/20 30/16 31/14 32/4
32/5 38/7 39/9 39/10 39/11
39/13 41/13 42/22 44/13
44/19 46/7 48/4 48/24
49/19 50/18 52/21 53/11
54/22 55/2 55/24 55/25
57/1 58/10 62/17 62/19
63/5 63/7 64/9 64/12 66/14
67/7
one's [1]   15/1
ones [1]   45/23
only [13]   9/3 20/14 21/8
21/20 23/17 30/5 32/5
41/18 44/13 49/23 55/6
62/21 66/14

# O

Ontario [13]   1/22 2/9 6/19 6/21 21/22 35/9 35/21 36/9 36/9 36/10 36/17 36/20 61/11
OPA [1]   60/24
operated [1]   14/9
operating [2]   3/13 55/13
operation [1]   7/13
opinion [2]   38/3 48/8
opinions [1]   50/16
opponents [1]   25/14
opportunities [2]   43/2 43/4
opportunity [2]   17/6 59/7
opposed [1]   47/12
opposition [2]   49/16 53/6
or [86]
organize [4]   56/10 56/20 57/8 58/19
originally [2]   28/6 29/12
other [29]   3/25 6/20 8/17 11/14 14/22 15/23 16/10 16/10 16/10 22/24 24/12 24/12 25/21 29/9 30/25 33/20 34/18 36/15 38/16 39/21 45/23 50/18 51/10 56/9 57/2 57/21 62/11 63/4 64/9
others [1]   66/25
otherwise [3]   32/1 56/11 56/20
Ottawa [1]   2/9
ought [1]   62/21
our [13]   6/10 7/15 12/2 12/7 12/8 27/18 28/16 44/6 50/16 52/23 53/6 58/9 60/23
out [46]   4/10 6/8 6/16 9/24 10/2 11/11 11/13 12/2 17/1 17/2 17/14 17/15 17/17 18/1 18/6 18/22 18/25 19/2 19/3 19/5 19/6 21/12 22/1 24/10 26/25 32/7 32/9 32/25 33/18 34/17 40/23 48/4 48/14 57/19 58/11 60/22 60/24 61/1 61/2 61/4 61/23 61/24 63/6 63/8 64/14 65/2
outside [2]   11/25 14/9
over [5]   9/24 16/3 49/10 64/8 67/4
overall [1]   39/9
own [7]   12/5 30/7 41/8 49/17 55/5 59/25 60/2
Oxford [3]   18/2 18/8 19/10

# P

p.m [2]   1/6 67/12
page [2]   38/3 64/15
pages [13]   7/18 34/1 45/6 45/9 45/13 47/16 47/16 49/11 52/7 52/8 54/25 63/2 63/3
paid [1]   43/16
painstaking [2]   45/14 49/11
painstakingly [2]   38/3 39/22
panel [3]   5/24 19/12 55/11

paper [1]   8/11
papers [2]   27/19 30/7
paragraph [6]   46/4 46/5 56/13 60/22 64/12 64/15
paragraphs [1]   6/11
Pardon [1]   63/25
part [6]   9/24 12/24 25/23 33/14 45/15 51/22
parte [1]   51/21
partially [1]   36/20
particular [6]   7/3 13/25 19/15 33/15 41/21 64/10
particularly [1]   20/13
parties [21]   8/24 9/2 9/23 10/1 10/4 10/6 10/12 10/15 13/19 19/22 19/24 22/4 46/19 47/23 52/8 57/2 57/4 57/7 66/2 67/1 67/3
parties' [1]   67/1
partner [1]   3/8
party [23]   8/14 8/15 8/15 9/5 12/1 13/22 15/13 16/11 16/16 16/18 16/22 17/2 17/16 37/21 46/8 46/9 46/12 46/16 46/25 47/6 48/25 56/7 56/8
past [1]   38/14
Pennsylvania [1]   1/14
people [10]   16/10 32/2 32/3 46/18 47/9 57/13 61/19 63/16 64/25 67/3
percent [2]   13/2 13/6
perfect [1]   23/6
perfectly [1]   25/8
perhaps [2]   33/20 35/21
permissible [6]   8/2 8/3 35/22 45/11 55/22 55/23
permitted [10]   14/1 14/4 25/24 26/13 29/3 29/4 29/6 29/23 57/7 65/10
person [2]   36/18 51/20
personally [1]   36/5
persons [1]   22/24
perspective [1]   30/9
perspectives [1]   48/7
petition [1]   49/16 52/9 52/24 53/6
petitioner [12]   1/4 1/13 30/2 34/22 42/23 43/2 44/18 44/20 46/4 49/14 49/15 51/14
petitioners [2]   28/21 29/18
petitions [1]   4/10
petroleum [1]   33/21
phrase [2]   46/8 46/24
picked [2]   66/25 67/3
pink [1]   8/11
place [2]   7/25 60/23
place internationally [1]   7/25
places [1]   30/16
play [1]   32/25
playing [1]   57/19
plays [2]   32/7 32/9
pleaded [1]   54/23
pleadings [1]   43/3
please [2]   3/4 3/6
PLOCHOCKI [2]   1/13 3/8
Plus [5]   13/8 14/12 14/13 15/1 15/9

PMA [1]   19/3
point [23]   6/16 6/22 9/24 10/2 10/22 11/2 16/5 22/1 28/4 29/10 33/18 34/16 47/19 60/16 60/22 60/24 61/8 61/8 61/23 63/13 64/14 65/9 65/23
pointed [4]   4/9 58/11 61/24 63/8
pointless [2]   61/6 62/2
points [2]   61/1 61/4
policies [1]   62/7
policy [9]   6/13 6/17 34/14 38/22 42/11 42/12 42/12 42/13 61/10
portion [1]   5/23
position [6]   9/5 9/6 23/23 24/3 25/23 28/16
positions [1]   43/19
post [1]   43/4
power [5]   1/3 3/3 3/14 4/4 11/14
powers [2]   26/20 62/14
precedent [4]   23/23 28/7 29/13 66/16
precise [1]   37/24
precisely [2]   10/17 47/25
precluded [1]   25/25
preferences [1]   16/12
prejudiced [1]   4/16
preponderance [1]   40/20
present [4]   17/6 25/24 26/14 65/22
presented [1]   44/11
presenting [3]   26/1 26/8 26/13
presumed [2]   61/12 61/22
presumed liability [1]   61/22
presuming [1]   26/23
presumption [7]   8/20 12/10 26/11 26/23 60/11 60/18 61/17
presumption of [1]   26/11
pretend [1]   43/10
pretty [4]   19/19 34/1 35/2 44/3
prevented [2]   26/2 26/8
previous [1]   6/11
previously [1]   58/16
principal [1]   30/4
principle [8]   10/12 31/7 31/9 38/20 40/11 53/8 53/20 65/9
prior [1]   21/5
priorities [1]   42/13
pro [1]   54/13
probably [4]   24/24 27/10 39/5 52/8
problem [3]   31/17 57/4 65/8
problems [1]   40/3
procedural [2]   66/1 66/9
procedurally [1]   51/10
procedure [1]   9/22
procedures [2]   30/20 62/7
proceed [1]   29/15
proceeding [4]   30/12 42/23 42/25 49/25
proceedings [4]   1/25 42/24 67/12 68/5

**P**

process [8] 10/13 55/10
56/22 57/1 57/3 57/5 57/10
57/11
procurement [46] 15/21
16/4 16/6 16/14 16/16
16/18 16/23 17/20 20/1
21/7 21/13 21/18 22/2
22/12 22/15 22/17 22/22
22/23 22/25 30/1 38/23
44/8 44/21 45/1 45/7 46/8
46/8 46/20 47/8 48/4 48/11
48/12 48/25 49/3 49/5
49/12 49/18 49/21 50/1
57/11 62/16 62/22 62/24
63/10 63/10 63/16
procurer [1] 47/1
procuring [1] 20/3
produced [1] 1/25
product [1] 48/21
program [9] 5/7 5/9 11/6
11/25 57/20 57/21 58/2
58/5 60/23
projects [1] 36/15
promise [1] 67/9
proof [19] 4/17 7/22 10/19
15/2 15/14 26/7 26/19 27/3
40/2 40/6 40/7 40/8 40/9
40/13 40/16 40/16 40/18
61/23 63/21
proper [1] 52/15
proposal [1] 43/15
proposition [2] 37/7 37/24
propositions [1] 35/5
protect [1] 38/22
protected [5] 18/21 18/23
18/24 18/25 59/3
protection [1] 56/22
protections [3] 8/14 16/8
56/7
prove [3] 13/14 40/9 40/12
provide [2] 8/8 31/1
provided [5] 5/21 8/12 9/7
56/6 58/20
provides [2] 57/6 63/20
province [1] 7/15
provision [12] 19/3 19/4
19/6 22/23 33/8 33/9 33/9
45/6 45/7 45/18 45/20
46/11
provisions [1] 45/19
proviso [1] 36/8
public [4] 57/10 57/11
58/2 58/3
pulling [1] 30/20
punitive [1] 19/13
purpose [4] 9/15 15/17
35/24 36/6
purposes [1] 24/10
pursuant [1] 8/16
pushed [1] 28/22
put [8] 5/22 26/15 26/21
26/24 42/2 46/4 49/16 55/1
putting [2] 26/2 48/14

**Q**

question [26] 6/21 8/5
19/10 22/3 22/7 25/21 27/1
27/6 27/8 31/25 37/12
37/16 39/15 43/20 43/21
51/25 54/16 55/8 57/9 58/2
58/8 58/22 59/16 59/22
60/20 67/6
questioning [2] 51/24 60/9
questions [3] 6/18 15/23
27/9
quite [1] 27/20
quote [4] 8/12 18/18 18/18
49/20
quotes [1] 12/6

**R**

raise [1] 49/8
raised [8] 25/1 42/23 43/1
43/9 54/16 58/9 58/12 64/3
random [2] 66/23 66/24
randomly [1] 67/9
rather [6] 6/22 6/24 20/16
40/16 57/25 59/6
rational [7] 5/4 5/12
12/11 15/7 27/4 59/11
61/13
Raymond [1] 19/5
re [1] 30/3
re-litigate [1] 30/3
reached [2] 14/7 26/6
reaching [1] 12/23
read [10] 6/14 10/22 18/18
20/20 24/6 24/12 34/1
39/20 49/10 51/15
real [1] 44/22
realized [1] 61/2
really [23] 16/7 16/21
20/22 22/9 22/10 25/14
26/21 26/24 29/8 30/2
32/24 33/5 34/22 37/18
45/23 45/24 46/22 49/7
51/7 52/9 53/2 55/8 66/14
realtime [1] 1/25
reason [5] 32/22 44/16
48/12 48/13 51/21
reasonable [12] 7/5 7/8
9/7 9/13 11/8 12/18 12/19
13/14 13/22 14/13 26/10
40/21
reasonableness [5] 7/9
59/20 60/3 60/5 60/11
reasons [1] 42/17
rebuttal [3] 4/7 27/11
54/4
receive [4] 35/13 37/9
37/13 37/14
reciprocity [1] 10/13
recognize [2] 5/1 23/14
recognized [2] 12/5 33/9
recognizing [1] 24/9
record [4] 54/19 54/22
54/25 68/4
recorded [1] 1/25
recover [1] 27/3
Reed [2] 1/17 3/10
reference [1] 55/6
referenced [1] 54/25
referencing [1] 56/15
referred [1] 32/2
reflected [1] 40/18
reframe [1] 37/11
refusal [3] 7/18 7/20 7/21
refused [1] 7/13
regard [6] 33/21 39/6
42/21 49/5 64/11 64/18

regulate [3] 5/2 8/5 55/5
regulation [1] 15/4
regulators [1] 42/9
regulatory [1] 41/20
rejected [3] 36/25 37/4
37/5
rejecting [1] 4/13
rejects [1] 11/19
relates [1] 50/5
relation [1] 54/23
relationship [12] 7/6 7/8
9/8 9/14 11/8 12/11 12/18
12/19 13/22 15/7 26/10
27/4
relevant [4] 47/2 47/3
47/4 54/20
relied [2] 62/22 62/24
relieved [1] 15/13
rely [1] 62/22
relying [1] 18/17
remember [2] 25/6 66/23
reminded [1] 35/24
rendered [3] 24/8 24/14
25/16
renewable [1] 11/15
repeated [1] 36/12
replied [1] 43/15
Reporter [2] 2/12 2/12
Republic [1] 23/12
request [2] 3/23 52/19
require [4] 10/1 13/14
40/19 40/19
required [1] 7/22
requirements [1] 37/22
reserve [1] 4/7
resolution [1] 50/8
resolve [3] 52/7 52/18
52/20
respect [3] 44/1 56/13
57/12
respective [1] 3/5
respond [2] 64/1 64/4
responded [1] 43/15
Respondent [2] 1/7 2/3
response [1] 54/25
rest [2] 27/11 30/6
result [2] 17/18 65/24
results [2] 13/1 51/18
reversed [1] 17/22
reversible [2] 23/24 25/10
review [1] 50/22
reviewed [1] 52/24
rewrite [2] 63/7 63/9
rewrites [1] 19/25
rewriting [5] 19/12 20/6
20/7 21/3 63/18
rewrote [3] 17/21 62/25
63/17
ridiculous [1] 61/5
right [17] 6/22 12/24 13/2
13/4 17/2 24/18 34/16
45/13 47/6 47/14 49/9 50/9
51/24 53/12 55/4 55/17
63/20
rip [1] 36/17
ripped [1] 36/20
rips [1] 36/17
rise [6] 27/20 41/23 41/25
46/1 64/21 65/5
Risk [1] 28/2
River [4] 17/21 18/7 18/17

# R

River... [1]   19/2
ROBERT [1]   2/3
Robertson [1]   3/13
Robins [1]   15/11
role [4]   12/23 12/25 13/5
64/13
Room [1]   2/14
routinely [1]   41/10
RPR [3]   2/12 68/3 68/10
rule [7]   10/14 10/14 13/11
22/11 52/12 52/18 62/6
rules [9]   9/25 10/7 10/8
10/9 10/10 28/18 53/11
56/24 57/14

# S

said [31]   5/3 5/10 7/23
9/8 16/21 17/17 18/2 20/19
20/25 20/25 21/4 21/24
23/19 39/24 44/19 44/20
45/7 46/22 47/20 47/21
49/17 53/9 55/15 57/15
59/8 59/9 59/21 60/1 60/2
65/20 66/21
same [21]   11/11 13/4 15/14
16/11 18/16 18/18 19/10
31/17 33/18 37/19 40/11
41/7 44/5 44/6 47/10 48/24
49/13 55/13 56/12 57/18
64/5
sat [3]   38/1 39/20 66/10
save [1]   27/10
saw [2]   31/8 51/14
say [47]   6/22 7/7 8/10
11/8 12/16 14/7 14/8 14/18
17/3 18/12 19/14 19/18
20/3 20/23 21/11 22/5
26/17 28/19 32/10 32/12
33/21 34/6 37/19 38/8 40/8
40/15 45/2 45/12 45/18
46/21 46/24 47/3 47/8
50/19 50/19 51/10 51/16
51/18 53/21 59/6 59/19
59/21 61/9 61/13 64/23
64/24 64/25
saying [23]   7/20 9/11 9/11
13/25 14/14 15/2 15/3 15/5
15/6 16/24 18/18 22/10
22/13 22/14 24/17 31/20
32/19 33/12 45/9 58/3 66/3
66/4 66/17
says [30]   6/12 8/17 10/15
11/10 11/16 11/23 11/24
12/21 13/13 16/15 16/18
16/19 18/22 19/6 20/20
21/2 21/10 22/22 22/25
32/18 32/18 45/21 55/15
56/5 56/13 58/18 59/5
59/16 61/25 63/15
scratch [1]   9/21
screen [1]   56/2
scrutiny [1]   38/24
SDMyers [1]   54/23
SEAN [2]   1/20 3/11
seat [2]   28/22 28/23
second [13]   8/7 16/4 21/15
23/3 23/20 30/9 34/4 41/20
48/2 50/10 55/24 58/8
65/18

Secondly [1]   6/21
secret [4]   36/24 39/24
58/5 61/6
secretly [1]   36/21
section [6]   36/1 49/13
51/11 64/14 64/16 65/6
sections [2]   30/3 30/5
see [8]   6/23 16/17 19/22
31/16 44/18 51/13 55/17
66/7
seeing [2]   6/11 61/15
seem [3]   8/24 9/2 41/15
seems [2]   48/6 53/4
seen [1]   39/3
seize [2]   35/16 57/9
selected [1]   67/10
selections [1]   67/1
self [2]   34/9 55/16
self-defeating [1]   34/9
self-judged [1]   55/16
selling [3]   48/20 48/22
48/23
sense [5]   22/16 22/19
44/21 48/12 58/24
sent [1]   63/20
sentence [1]   12/5
separate [2]   41/8 57/24
seriously [1]   25/14
seriousness [1]   25/10
serve [1]   36/6
served [1]   19/7
service [1]   48/21
services [1]   22/24
set [4]   10/5 21/10 33/2
33/3
setting [2]   6/9 17/10
settings [3]   4/1 4/22
65/16
seven [1]   44/11
shall [1]   10/12
SHANE [3]   2/7 3/18 37/1
shift [1]   40/2
shocked [2]   52/25 60/25
shoehorn [1]   51/9
shoes [1]   13/3
shopping [1]   28/21
shorthand [1]   1/25
should [21]   4/3 4/11 9/7
13/18 14/1 14/4 14/15 17/7
17/10 27/10 27/16 30/13
34/23 35/24 43/6 43/10
46/24 50/14 52/21 53/16
53/21
shouldn't [3]   34/22 43/5
66/18
show [7]   4/25 8/6 30/12
37/20 37/22 55/20 64/25
showing [1]   8/4
shown [1]   16/12
shows [2]   8/7 31/8
side [3]   14/22 14/23 50/18
side's [2]   19/15 19/16
sides [4]   10/7 17/6 17/6
66/12
signed [2]   47/6 60/22
similar [3]   3/25 4/22
7/24 14/6 15/1 15/3 25/5
41/4 41/5 42/2 47/13 51/18
51/19
similar arbitration [1]
4/22

simply [4]   18/5 18/22 37/3
61/17
since [1]   30/9
single [1]   46/7
sit [2]   50/22 52/3
situation [7]   7/20 13/10
15/1 21/20 38/20 60/19
62/12
situations [1]   51/19
six [2]   38/2 44/13
skipped [1]   9/24
slight [1]   45/16
slightly [1]   27/5
smart [2]   34/7 34/24
Smith [2]   1/17 3/10
so [63]   3/24 4/3 4/20 7/10
8/1 10/9 11/16 13/18 14/13
15/2 15/9 16/4 16/7 16/19
21/14 21/20 21/23 22/10
23/22 26/7 27/1 27/12
27/15 27/20 29/2 30/8 31/4
31/9 31/24 32/4 32/17 33/9
33/13 35/4 35/6 35/18
35/23 39/14 40/11 42/8
46/14 46/25 47/2 47/11
48/9 48/17 48/20 49/14
49/24 51/2 51/21 53/22
55/17 55/24 57/7 58/14
61/2 64/20 65/4 65/15
66/21 67/1 67/5
sole [1]   58/5
some [28]   4/24 5/1 6/16
26/5 30/13 31/11 33/25
34/3 34/4 34/18 35/3 35/4
35/4 36/21 37/23 38/15
38/16 38/19 40/3 40/20
42/9 42/13 47/18 48/12
55/18 62/6 64/9 66/24
somebody [6]   21/1 23/1
35/15 36/18 37/19 57/10
somehow [3]   32/19 39/16
62/11
someone [2]   36/21 57/18
something [17]   14/20 30/10
32/13 34/16 35/6 37/8
40/14 41/6 48/15 51/11
52/20 52/23 55/15 57/17
64/19 64/24 66/8
something a [1]   40/14
sometime [1]   67/10
somewhere [2]   24/9 33/3
sorry [2]   9/1 24/2
sort [7]   10/24 34/17 34/19
37/7 43/13 47/17 66/15
sounded [1]   33/25
source [1]   58/6
Southern [1]   13/15
sovereign [1]   11/18
space [1]   42/9
speaking [1]   43/25
speaks [1]   44/4
special [1]   8/10
specific [3]   38/17 39/12
50/5
specifically [3]   54/16
56/23 61/25
SPELLISCY [3]   2/7 3/18
37/1
spend [3]   45/9 47/9 63/8
spends [1]   36/14
spent [2]   45/6 47/13

**S**

split [2]   54/5 54/12
splitting [1]   54/8
spot [1]   54/22
Square [5]   13/8 14/12
14/13 15/1 15/9
stack [1]   38/13
stage [1]   21/23
stand [1]   27/18
standard [58]   7/23 7/24
9/16 13/16 14/18 15/10
18/16 18/16 26/10 26/17
30/22 30/24 31/2 31/23
32/1 32/8 32/14 32/14
32/16 32/24 33/2 33/3 33/6
33/7 33/10 33/12 33/13
34/12 36/3 37/17 38/9
38/12 38/15 40/7 40/13
40/16 40/17 40/21 40/24
41/23 41/24 41/25 42/8
58/24 58/25 59/17 60/2
60/3 60/3 60/10 60/12
60/15 60/17 60/17 61/21
61/22 62/12 63/21
standards [5]   8/18 31/22
61/25 62/4 64/22
stark [1]   11/7
starkest [1]   44/10
start [3]   11/3 27/15 54/13
started [3]   31/6 55/19
66/3
starts [2]   11/11 30/22
state [22]   16/16 16/18
16/22 17/2 17/16 35/15
35/16 39/2 39/23 41/21
46/8 46/9 46/12 46/13
46/16 46/25 47/5 47/6 47/8
48/25 58/18 58/19
stated [1]   53/8
statement [2]   10/25 11/9
statements [1]   39/20
states [17]   1/1 1/10 5/17
9/3 9/6 9/10 25/16 31/1
32/6 34/18 42/16 43/19
43/25 46/5 49/2 49/4 56/10
statute [1]   45/10
steel [1]   48/21
stenographic [1]   1/25
step [2]   23/2 23/4
STEPHENSON [2]   1/20 3/12
still [6]   10/16 25/14
27/16 31/17 34/11 37/6
stop [2]   6/5 61/11
stopping [1]   61/14
Street [1]   1/21
string [1]   18/19
stuff [3]   18/22 22/19 61/9
sub [2]   51/11 56/14
subcontractor [3]   48/19
48/23 63/13
subject [3]   53/22 53/23
56/20
submissions [2]   30/4 47/23
submitted [4]   31/8 43/12
52/8 67/9
substantive [2]   33/8 42/25
such [8]   8/13 11/24 15/5
15/6 34/6 38/17 56/6 67/2
sudden [1]   60/19
Suite [2]   1/15 1/21

summary [1]   3/25
summer [1]   52/24
superfluous [2]   17/3 19/18
supplied [1]   7/6
supplier [1]   48/22
supports [1]   16/25
suppose [1]   39/3
supposed [2]   50/2 61/14
Supreme [3]   18/3 50/17
50/22
sure [7]   4/8 5/22 15/22
16/3 25/22 35/5 54/7
surprised [1]   60/25
Sussex [1]   2/8
swallowing [1]   22/11
systems [1]   5/17

**T**

table [1]   3/18
tables [1]   3/6
take [15]   11/13 12/2 12/8
17/17 18/1 18/22 19/25
20/1 23/2 29/16 37/20
45/16 50/21 52/4 53/25
taken [4]   9/5 9/6 26/25
28/1
takes [1]   36/16
taking [5]   6/7 18/6 28/1
58/5 62/3
talk [9]   5/25 27/22 30/8
30/22 36/3 37/2 39/13
62/20 65/2
talked [3]   5/25 29/25 63/5
talking [18]   6/4 11/3 16/6
16/8 26/16 29/20 30/17
30/18 30/19 31/4 37/18
38/5 40/7 40/13 40/17
45/19 46/18 58/25
talks [4]   5/24 34/3 34/3
56/4
TARA [2]   1/13 3/8
taxes [1]   21/20
technically [1]   33/5
tell [9]   21/9 43/6 45/15
45/23 52/16 52/23 60/14
62/10 65/13
telling [12]   14/25 59/15
tenant [1]   61/5
tend [1]   57/24
term [7]   17/19 17/20 19/18
20/1 22/13 22/16 41/15
terminated [1]   14/15
TermoRio [1]   23/11
terms [9]   7/7 17/18 26/13
30/12 36/2 44/2 56/23
56/24 58/20
test [10]   8/21 9/8 9/14
11/8 12/18 27/4 54/17 55/9
55/18 59/20
tested [1]   15/18
testify [1]   61/20
testing [2]   62/5 62/6
text [2]   44/15 45/10
texts [2]   44/12 55/18
than [15]   12/25 14/1 14/19
17/14 24/13 33/20 40/16
45/22 50/4 54/11 58/1 59/7
64/24 65/10 66/25
thank [18]   3/14 3/20 27/6
27/12 27/13 29/17 50/24
52/2 54/2 54/3 54/15 59/12

59/13 63/21 63/23 65/7
67/8 67/11
that [438]
that's [96]
the court [1]   20/15
the New [1]   24/6
the tribunal [1]   30/17
their [32]   10/5 14/9 14/11
17/6 25/7 26/20 28/25 30/4
30/6 33/21 37/2 40/10
42/16 42/17 43/1 44/22
49/15 49/15 49/16 49/16
52/9 53/5 53/6 55/5 59/24
60/2 61/14 62/4 62/7 62/14
62/14 67/4
them [19]   11/20 12/18
17/17 22/5 22/6 29/8 30/13
37/4 37/5 37/9 38/5 40/19
40/19 43/8 44/13 49/24
51/4 51/21 59/7
themselves [1]   50/18
then [28]   7/7 7/14 10/5
10/8 10/13 11/23 12/2 15/8
20/16 22/5 28/22 28/23
32/12 32/23 36/15 38/6
38/20 39/10 43/8 49/21
51/16 51/17 51/19 52/18
58/4 61/8 61/13 66/17
there [71]
there's [37]   3/23 5/4 5/6
9/9 13/24 15/3 15/7 16/6
17/13 17/25 18/19 20/2
20/5 21/17 21/20 22/4
26/23 29/9 31/12 33/23
38/19 39/14 39/15 41/9
41/9 43/21 44/22 47/18
50/11 57/4 57/21 58/2 58/5
60/6 61/15 62/20 65/1
therefore [2]   25/19 37/10
these [37]   6/12 6/17 13/25
16/15 18/18 19/8 19/21
19/22 19/23 24/12 36/23
37/3 37/25 38/4 38/9 39/9
39/21 42/24 45/5 45/22
45/22 45/23 45/23 47/11
47/11 48/1 51/18 51/19
51/22 51/25 53/24 60/14
61/7 63/4 65/2 65/6 65/16
they [195]
they're [24]   9/11 9/11
12/19 22/9 22/12 26/20
29/3 29/4 29/5 32/9 34/15
36/19 37/3 37/12 39/12
40/7 40/13 40/17 42/14
51/2 51/3 55/13 61/14
66/17
they've [1]   15/17
thing [13]   6/15 33/18
36/24 41/7 41/22 42/22
46/14 46/21 49/19 51/5
53/5 60/25 62/8
things [9]   38/9 38/16
39/21 44/19 49/4 51/10
51/23 64/5 64/9
think [65]   4/2 4/3 5/7 5/8
5/15 5/18 5/19 5/20 5/23
7/10 7/11 9/6 9/9 10/18
10/20 11/6 11/9 13/12 18/9
20/3 20/7 22/9 25/4 25/10
25/15 27/5 27/8 27/10
27/19 27/23 28/24 28/25

**T**

**think... [33]**   30/1 30/15 33/16 33/17 34/5 35/23 36/5 36/6 36/8 37/11 37/23 39/4 40/5 40/15 41/6 42/22 43/16 43/21 44/3 45/17 45/21 46/21 50/11 52/2 52/20 53/16 54/7 54/18 54/19 59/11 64/7 65/22 66/14
**thinking [1]**   51/6
**third [1]**   12/1
**this [187]**
**thorough [1]**   19/19
**those [31]**   3/5 3/24 6/1 10/2 21/25 22/3 25/1 28/18 34/2 34/4 34/14 37/2 37/2 37/4 38/7 38/11 39/23 41/25 42/13 46/19 47/10 47/17 50/5 51/13 51/13 54/19 55/18 55/19 56/21 57/20 61/10
**though [3]**   14/25 18/23 45/15
**thought [8]**   27/7 39/5 43/6 47/20 49/21 54/9 54/15 59/15
**thousand [1]**   38/1
**three [2]**   14/22 56/13
**through [8]**   5/11 12/15 39/13 39/21 45/14 51/15 56/16 61/7
**Throughout [1]**   5/24
**throw [2]**   34/25 60/7
**thus [1]**   38/19
**time [14]**   15/19 15/25 27/9 27/11 29/16 30/6 30/16 41/18 54/1 54/5 54/7 60/12 63/8 63/22
**times [2]**   30/6 45/13
**today [1]**   3/14
**told [1]**   4/2
**too [8]**   33/9 35/6 37/8 37/9 45/16 48/19 53/4 65/9
**took [11]**   11/4 17/1 17/15 19/2 19/3 19/5 19/6 52/6 53/22 63/2 63/3
**Toronto [2]**   1/22 3/11
**total [1]**   58/11
**totally [1]**   65/13
**touch [1]**   26/7
**Toys [2]**   23/19 24/12
**Trade [1]**   2/8
**transcript [3]**   1/9 1/25 68/4
**transcription [1]**   1/25
**transfers [1]**   56/14
**transform [1]**   10/18
**transformed [1]**   4/17
**transmission [1]**   57/12
**transmissions [1]**   58/4
**Transportation [1]**   48/14
**treat [2]**   16/10 32/3
**treated [5]**   10/2 10/12 10/15 13/19 13/21
**treaties [2]**   57/24 59/2
**treating [1]**   57/19
**treatment [11]**   4/18 7/1 16/8 31/2 32/2 32/15 33/10 34/11 57/22 57/24 58/25

**treaty [17]**   4/14 9/16 16/9 17/2 17/13 17/14 18/10 19/1 22/21 22/24 30/25 42/18 56/11 58/21 59/2 63/17 63/21
**tribunal [101]**
**tribunal rewrote [1]**   62/25
**tribunal's [15]**   4/2 29/25 40/23 44/25 49/18 50/4 50/8 52/10 59/18 61/12 61/16 64/10 64/13 65/25 66/10
**tribunals [8]**   21/11 38/10 38/15 38/16 39/21 47/9 47/10 63/5
**tried [1]**   51/9
**trier [1]**   55/16
**trouble [1]**   10/17
**trump [1]**   8/19
**try [6]**   10/18 20/12 31/24 35/19 58/24 64/3
**trying [7]**   12/19 16/20 28/25 30/2 34/22 40/23 54/17
**tune [1]**   53/25
**turn [1]**   16/3
**two [6]**   14/20 14/22 30/15 39/8 54/19 64/2
**type [7]**   7/24 8/11 9/14 16/8 21/6 49/5 60/17
**types [1]**   30/25

**U**

**U.S [10]**   2/13 41/6 41/10 41/11 42/3 43/12 43/14 43/16 44/4 49/6
**ultimately [1]**   17/8
**UNCITRAL [5]**   9/25 10/7 10/14 56/24 57/23
**unclear [1]**   53/5
**under [27]**   4/17 9/20 10/5 10/12 12/17 16/9 22/22 23/8 23/9 23/11 25/9 27/19 29/21 30/23 30/24 31/15 31/24 36/1 55/12 55/13 56/24 57/5 62/13 62/14 64/22 65/6 65/11
**understand [3]**   10/16 37/6 47/5
**understanding [1]**   32/17
**understood [2]**   44/4 47/21
**undue [2]**   4/19 10/20
**unfair [3]**   38/11 51/10 59/3
**unfairness [1]**   66/10
**UNITED [11]**   1/1 1/10 5/17 9/3 9/6 9/10 25/16 34/18 43/19 43/25 49/2
**unless [5]**   13/11 15/23 27/9 38/19 66/8
**unlimited [1]**   11/16
**until [2]**   9/17 64/15
**unusual [3]**   28/9 28/11 64/20
**unwise [1]**   42/4
**up [30]**   5/22 10/22 10/23 30/12 30/21 33/4 36/17 36/17 36/20 37/2 38/13 44/19 46/4 49/19 50/7 50/10 51/3 51/14 51/22 53/14 55/2 56/1 59/25 60/1

60/12 61/7 62/6 64/15 66/4 66/4
**upholds [1]**   65/16
**upon [1]**   46/7
**ups [2]**   4/24 21/18
**urged [1]**   41/10
**us [9]**   3/14 7/23 23/19 24/12 41/16 45/23 52/13 53/19 62/10
**use [14]**   11/7 19/17 21/14 21/21 22/5 22/6 23/1 35/20 41/21 44/5 62/18 62/19 63/14 63/15
**used [7]**   18/16 22/8 41/1 49/20 54/11 60/4 60/15
**useful [1]**   33/17
**uses [1]**   26/18
**using [3]**   21/19 23/10 41/15
**usually [1]**   57/16

**V**

**vacate [9]**   3/23 9/20 23/13 24/13 49/16 52/10 53/21 66/8 67/7
**vacated [5]**   4/11 13/15 46/24 61/20 63/19
**vacating [10]**   23/8 24/4 24/11 24/23 29/21 36/2 46/1 49/8 51/12 52/15
**variety [1]**   48/6
**versus [2]**   3/3 28/20
**very [19]**   12/4 12/4 14/6 14/20 18/4 20/19 23/20 24/11 25/11 25/13 42/22 43/3 46/14 50/16 54/19 59/15 59/15 63/22 67/8
**view [8]**   23/14 23/15 27/19 28/1 46/5 46/6 50/7 52/9
**views [1]**   50/20
**violate [3]**   42/17 45/25 66/1
**violated [3]**   6/6 13/11 37/17
**violates [1]**   9/22
**violation [7]**   5/6 7/16 14/17 33/23 38/6 51/17 61/15
**Virginia [2]**   15/12 48/14

**W**

**walk [1]**   38/13
**wall [2]**   4/18 38/14
**want [20]**   6/16 15/20 22/5 36/12 36/13 36/13 48/2 49/24 52/3 52/18 52/19 56/5 56/9 56/15 57/5 57/8 58/19 62/19 63/9 64/4
**wanted [3]**   16/2 28/21 29/1
**wants [3]**   6/1 9/10 65/15
**was [139]**
**Washington [4]**   1/5 1/15 2/5 2/14
**wasn't [4]**   30/18 30/19 31/5 48/22
**way [16]**   6/7 7/2 16/15 22/12 26/2 26/8 34/6 42/2 44/20 45/1 46/23 47/2 57/18 58/16 58/23 64/20
**ways [1]**   22/10
**we [115]**

**W**

we'll [2]    5/11 54/13
we're [46]    3/22 5/5 6/3
6/20 7/20 8/18 8/20 9/13
11/19 11/20 12/16 12/16
12/17 13/7 13/13 13/17
15/3 15/5 15/7 15/10 16/6
16/8 16/24 16/24 20/21
22/7 25/17 25/18 27/21
28/16 28/16 31/4 37/18
45/9 46/17 49/25 56/14
58/24 59/5 62/2 62/3 62/4
62/6 66/18 66/19 66/21
we've [2]    9/19 62/2
website [1]    49/22
websites [2]    50/2 62/22
weight [1]    60/6
Welcome [1]    3/15
well [47]    3/21 8/10 12/22
13/19 17/4 27/18 30/15
32/10 32/12 34/1 34/7
35/25 36/6 36/23 37/20
37/22 38/8 38/25 43/15
44/3 44/16 45/12 45/18
45/21 48/4 48/10 49/1
53/13 53/15 53/19 53/20
54/9 54/10 54/24 57/23
58/9 59/5 59/16 59/21
59/24 60/20 60/21 62/17
62/19 63/4 65/1 66/5
well-established [1]    53/20
went [5]    5/3 38/4 45/14
61/3 66/9
were [34]    4/15 6/10 6/18
11/12 13/19 13/21 21/19
22/1 25/24 25/25 26/7 26/9
26/13 26/15 28/25 30/6
33/19 35/15 36/4 37/2
37/20 38/14 44/11 45/17
48/23 49/7 51/2 51/18
52/25 58/15 60/23 65/23
65/24 66/17
West [1]    1/21
what [162]
what's [8]    8/1 8/2 12/4
20/4 27/18 38/11 38/15
52/13
whatever [4]    33/4 52/7
56/5 65/15
whatsoever [1]    58/15
when [48]    10/25 11/6 11/7
12/15 13/18 15/5 17/12
17/14 18/4 18/15 18/20
18/20 19/21 20/19 22/5
22/20 26/18 26/20 29/17
30/17 30/22 31/5 31/15
32/4 32/9 33/1 33/23 40/23
42/7 42/17 43/11 44/4
44/18 45/8 50/11 51/6 51/9
51/20 52/23 57/3 57/4
60/13 60/16 61/2 61/21
64/12 66/13 67/9
where [66]    6/23 7/15 9/19
9/20 10/22 11/3 14/2 14/11
14/12 15/6 16/17 18/20
19/8 21/13 21/13 22/1 22/8
24/14 25/5 25/15 26/22
28/5 28/13 29/11 30/11
30/20 30/21 30/21 31/1
31/8 32/18 33/2 33/13

33/13 33/20 34/19 35/6
35/7 38/21 40/2 41/19
42/15 42/18 48/4 49/25
50/1 51/16 54/18 54/21
54/24 58/10 58/14 59/3
59/18 60/15 60/19 60/23
61/19 61/20 61/22 61/24
62/13 63/4 63/5 65/20 66/6
where they [1]    63/4
whether [30]    5/5 6/6 6/25
7/4 7/5 7/12 7/13 8/21
14/15 14/16 19/24 21/6
22/3 32/7 32/20 33/1 33/14
33/23 35/25 36/1 36/3 36/4
37/16 38/6 46/7 46/23
51/24 51/24 62/5 67/6
which [44]    4/17 5/7 7/24
9/8 10/14 11/9 14/20 15/8
15/11 15/12 19/1 20/2
20/16 20/24 20/24 29/23
30/5 31/8 35/25 35/25 36/2
36/9 38/3 39/10 39/11
40/14 41/22 43/13 46/12
46/17 51/7 51/23 53/6
55/12 56/25 58/22 61/23
62/23 65/2 65/5 65/9 66/14
66/15 66/24
who [9]    3/18 9/12 37/1
46/19 47/1 48/23 53/18
53/18 57/20
who's [4]    3/20 20/3 63/12
67/4
whole [5]    6/14 15/17 22/10
31/5 34/25
why [12]    17/9 24/5 37/25
43/7 44/14 44/14 44/16
48/10 48/11 49/12 49/12
65/13
will [15]    9/24 19/7 21/9
21/11 26/17 28/19 33/13
40/8 45/2 45/16 46/24
52/16 52/23 67/10 67/10
win [2]    50/14 62/21
winning [1]    28/25
wisdom [2]    41/20 41/21
wise [1]    34/24
wish [1]    62/18
withdraw [1]    12/1
within [1]    55/5
without [3]    25/15 35/17
58/11
witness [1]    39/20
witnesses [2]    26/16 39/19
won't [1]    49/10
word [3]    41/18 44/13 46/7
words [22]    6/20 8/17 11/14
17/14 17/15 18/6 18/25
19/1 22/24 25/8 34/4 44/5
44/11 45/22 45/22 45/22
46/9 46/15 47/20 48/1 56/9
58/6
work [1]    33/22
works [1]    3/18
world [1]    59/3
worry [1]    38/18
would [63]    3/4 6/4 9/15
10/9 12/8 17/13 19/1 21/19
23/23 23/24 24/3 24/22
25/10 29/12 32/8 33/20
34/25 35/1 35/8 35/12
35/14 35/14 35/21 36/9

37/9 37/19 37/19 37/22
37/23 38/13 39/4 39/4
40/10 41/2 41/7 45/4 47/7
47/9 47/14 47/15 50/3
50/15 52/5 52/11 52/20
52/22 55/9 55/10 55/11
55/13 55/14 57/12 57/12
57/14 58/2 60/12 63/20
65/22 66/4 66/5 67/5 67/6
67/7
wouldn't [14]    28/10 34/7
34/8 35/9 35/13 35/22 37/9
37/9 42/15 43/25 45/10
49/8 66/3 67/2
wound [1]    66/4
write [2]    17/14 40/1
written [2]    38/14 43/3
wrong [19]    12/23 14/8
15/10 20/17 20/19 24/4
24/5 24/5 26/18 36/4 49/8
50/9 51/1 51/3 58/7 61/17
61/21 61/22 64/23
wrote [2]    38/3 41/5

**Y**

year [1]    52/24
years [8]    18/17 37/25 38/1
38/15 47/9 47/9 47/12
66/11
yes [5]    10/21 23/6 26/16
27/2 36/12
York [7]    13/15 23/9 24/6
24/7 24/24 25/4 25/9
you [264]
you'd [1]    45/12
you'll [2]    19/23 31/16
you're going [1]    18/20

**Z**

zero [1]    32/22